**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

_____
                                                    )
LORI FREITAS and KAYLEE                   )
MCWILLIAMS individually and on          )
behalf of all others similarly situated,    )
                                                    )        Case No. 4:20-cv-01236-MWB
                    Plaintiffs,               )
                                                    )
                    v.                          )
                                                    )
GEISINGER HEALTH PLAN and           )
SOCRATES, INC.,                             )
                                                    )
                    Defendants.              )
_____ )

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

BUCHANAN INGERSOLL & ROONEY PC
Thomas G. Collins, Esq.
Adrian Zareba, Esq.
409 North Second Street, Suite 500
Harrisburg, PA  17101-1357
(717) 237-4800

Gretchen Woodruff Root, Esq.
501 Grant Street, Suite 200
Pittsburgh, PA  15219-4413
(412) 562-8800

*Counsel for Defendants,*
*Geisinger Health Plan and*
*SCIOinspire Corp. (f/k/a Socrates, Inc.)*

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

RELEVANT PROCEDURAL AND FACTUAL BACKGROUND .......................2

STATEMENT OF QUESTIONS INVOLVED.......................................................4

ARGUMENT .........................................................................................................5

I.  Plaintiffs Are Not Entitled To Recover "Benefits Due" Because
    Defendants Were Authorized To Assert Subrogation Claims With
    Respect To Plaintiffs' Tort Recoveries. ..........................................................5

    A.  An Insurer With Subrogation Rights Steps Into The Shoes Of
        An Insured And Acquires The Insured's Rights Against The
        Third-Party Tortfeasor............................................................................5

    B.  Geisinger Was Entitled To Assert Its Subrogation Claims And
        Obtain Reimbursement For The Medical Expenses It Paid On
        Plaintiffs' Behalf That Plaintiffs Recouped As Part Of Third-
        Party Settlements...................................................................................7

II.  Plaintiffs' Claims For Breach Of Fiduciary Duty (Counts 3, 4, 5, 7,
     10, 11, 12, And 14) Fail To The Extent They Are Based On The
     Faulty Premise That Defendants Could Not Seek Reimbursement
     Under Plaintiffs' Respective Plans. ...............................................................12

III.  Counts 1 And 8, Which Seek Declaratory Relief, Should Be
      Dismissed Because They Are Either Preempted By ERISA Or They
      Are Subsumed Into Plaintiffs' ERISA Claims. .............................................16

IV.  Counts 7 And 14, Which Seek Relief On The Basis That Defendants
     Did Not Follow Reasonable Claims Procedures, Should Be Dismissed
     Because ERISA Does Not Provide A Private Right Of Action Under
     29 U.S.C. § 1133...........................................................................................17

V.  Counts 6 And 13, Which Seek Relief On The Basis That Defendants
    Did Not Act In Accordance With ERISA Common Law, Should Be
    Dismissed Because Geisinger's Right To Recovery Is Governed By
    The Plans' Unambiguous Written Provisions. ...............................................18

VI.  Plaintiffs Are Not Entitled To Any Relief Under The Various Legal
     Doctrines They Rely Upon Throughout The Class Action Complaint. ........19

A.    Plaintiffs' Attempt To Impute Liability Onto Defendants Through Conclusory Allegations That Certain Settlements May Have Excluded Medical Expenses Or Through Application Of The Common Fund Doctrine Are Unavailing...................................20

B.    Plaintiffs Cannot Rely On The "Make Whole" Doctrine To Defeat Defendants' Subrogation Claims Because The Amounts For Which Plaintiffs Settled Their Actions Are Presumptively Commensurate With Their Losses. ....................................................21

CONCLUSION ......................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Associated Hosp. Service of Philadelphia v. Pustilnik*,
  396 A.2d 1332 (Pa. Super. 1979) .......................................................................21

*Bill Gray Enters. v. Gourley*,
  248 F.3d 206 (3d Cir. 2001) ..............................................................................19

*Burstein v. Ret. Account Plan for Emps. of
  Allegheny Health Educ. & Research Found.*,
  334 F.3d 365 (3d Cir. 2003) ..............................................................................13

*Chapman v. Klemick*,
  750 F. Supp. 520 (S.D. Fla. 1990) .....................................................................18

*Cohen v. Horizon Blue Cross Blue Shield of N.J.*,
  Case No. 2:13-CV-03057,
  2013 U.S. Dist. LEXIS 153438 (D.N.J. Oct. 25, 2013) ....................................17

*Electro-Mechanical Corp. v. Ogan*,
  9 F.3d 445 (6th Cir. 1993) ..............................................................................5, 9

*Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency, Inc.*,
  72 A.3d 36 (Conn. 2013) .....................................................................................6

*G.R. Herberger's v. Erickson*,
  17 F. Supp. 2d 932 (D. Minn. 1998)..................................................................20

*J.C. Penney Co. v. McNaul*,
  Case No. 87-0565-CV-W-JWO,
  1988 U.S. Dist. LEXIS 8606 (W.D. Mo. July 22, 1988) ..............................9, 19

*Medica, Inc. v. Atl. Mut. Ins. Co.*,
  566 N.W. 2d 74 (Minn. 1997) .............................................................................6

*Meinhardt v. Unisys Corp.*
  (In re Unisys Sav. Plan Litig.), 74 F.3d 420, 441 (3d Cir. 1996)......................13

*Minerley v. Aetna, Inc.*,
  Case No. 13-1377,
  2019 U.S. Dist. LEXIS 107771 (D.N.J. June 27, 2019)....................................16

*Minerley v. Aetna, Inc.*,
  801 F. App'x 861 (3d Cir. 2020) ........................................................16

*Newcomer v. Henkels & McCoy, Inc.*
  Case No. 1:16-cv-2119,
  2017 U.S. Dist. LEXIS 120427 (M.D. Pa. Aug. 1, 2017)................................13

*Novak v. TRW, Inc.*,
  822 F. Supp. 963 (E.D.N.Y. 1993) ......................................................7

*Pegram v. Herdrich*,
  530 U.S. 211 (2000)....................................................................13, 15

*Prof'l Flooring Co. v. Bushar Corp.*,
  152 A.3d 292 (Pa. Super. Ct. 2016)....................................................21

*Provident Life & Accident Ins. Co. v. Williams*,
  858 F. Supp. 907 (W.D. Ark. 1994) ....................................................11

*Rathbun v. Health Net of the Ne., Inc.*,
  110 A.3d 304 (Conn. 2015) ............................................................10

*Ryan by Capria-Ryan v. Fed. Express Corp.*,
  78 F.3d 123 (3d Cir. 1996) ............................................................18

*Santiago v. Warminster Twp.*,
  629 F.3d 121 (3d Cir. 2010) ..........................................................20

*Swanson v. Aetna Life Ins. Co.*,
  Case No. 15-cv-0785-WYD-CBS,
  2016 U.S. Dist. LEXIS 507 (D. Colo. Jan. 5, 2016) ..................................17

*U.S. Steel Homes Credit Corp. v. S. Shore Dev. Corp.*,
  419 A.2d 785 (Pa. Super. Ct. 1980)....................................................6, 8

*U.S. v. CITGO Asphalt Ref. Co.*,
  886 F.3d 291 (3d Cir. 2018) ..........................................................5

*United Nat'l Ins. Co. v. M. London*,
   23 Phila. 598 (Phila. Super. Ct. 1992) ...................................................................9

*US Airways, Inc. v. McCutchen*,
   569 U.S. 88 (2013) ...........................................................................................15

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) .........................................................................................12

*Waller v. Hormel Foods Corp.*,
   120 F.3d 138 (8th Cir. 1997) ...........................................................................18

*Wolff v. Aetna Life Ins. Co.*,
   Case No. 4:19-CV-01596,
   2020 U.S. Dist. LEXIS 57864 (M.D. Pa. Apr. 2, 2020) ....................................16

*Yonack v. Interstate Sec. Co.*,
   217 F.2d 649 (5th Cir. 1954) ..............................................................................6

**Statutes**

29 U.S.C. § 1001 *et seq.* ....................................................................................1

29 U.S.C. § 1002(16)(B) .......................................................................................2

29 U.S.C. § 1104(a)(1) ........................................................................................12

29 U.S.C. § 1132(a)(1)(B) ..............................................................................5, 13

29 U.S.C. § 1132(a)(3) ...............................................................................12, 13

29 U.S.C. § 1133 .......................................................................................4, 17, 18

## **INTRODUCTION**

This action pertains to certain benefits claimed to be due under employee welfare benefit plans governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA").  The plans were issued by the Geisinger Health Plan ("Geisinger") to the respective employers of Lori Freitas and Kaylee McWilliams (collectively, "Plaintiffs").  Geisinger paid Plaintiffs medical benefits under the plans for personal injuries caused by third-party tortfeasors.

Plaintiffs each filed civil lawsuits against the third-party tortfeasors for their personal injuries.  In conjunction with those lawsuits, Geisinger—through a third-party service provider, additional Defendant SCIOinspire Corp. f/k/a Socrates, Inc. ("SCIOinspire")—asserted subrogation claims to recover the medical expenses it had paid on Plaintiffs' behalf.  Plaintiffs had settled their claims in this regard, including those for medical expenses, with the third-party tortfeasors.  Plaintiffs filed this action in the Court of Common Pleas of Lycoming County, seeking to nullify Geisinger's subrogation rights.  Geisinger and SCIOinspire (collectively, "Defendants") timely removed this action to this Court.

Plaintiffs' Class Action Complaint fails to state a claim upon which relief may be granted.  As a preliminary matter, Plaintiffs' claims for (i) declaratory relief, (ii) a purported failure to act in accordance with ERISA common law, and (iii) a purported failure to follow certain claims procedures suffer fatal flaws that

cannot be cured with amendments.  These claims (Counts 1, 6, 7, 8, 13, 14) fail as a matter of law because they are duplicative of other claims Plaintiffs have asserted or because they impermissibly seek to enforce ERISA rights where no cause of action exists.  The remaining claims are predicated on the mistaken belief that Geisinger unlawfully sought subrogation and/or equitable reimbursement as to Plaintiffs' respective tort settlements *even though* under the plans at issue (1) Geisinger (and its agents) were legally and equitably permitted to assert subrogation claims, and (2) Plaintiffs were prohibited from engaging in conduct that would prejudice Geisinger's subrogation rights.  Because Plaintiffs' belief is patently wrong, Counts 2, 3, 4, 5, 9, 10, 11, 12 and 13 should be dismissed as well.

## <u>RELEVANT PROCEDURAL AND FACTUAL BACKGROUND</u>

Defendants' Motion to Dismiss ("Motion") outlines the relevant procedural and factual background.  To avoid unnecessary duplication, and for this Court's convenience, Defendants incorporate that background information by reference and summarize the salient points below:

- Geisinger owns and operates a health maintenance organization ("HMO") that arranges for specified health services to its members on a prepaid basis.  Motion ¶ 3.  It contracts with Pennsylvania employers to provide comprehensive medical care for their employees.  Motion ¶ 5.  In many cases, the result is an employee welfare benefit plan governed by ERISA, with the employer serving as plan sponsor in accordance with 29 U.S.C. § 1002(16)(B).  *Id.*

- SCIOinspire is a company that specializes in subrogation services. Motion ¶ 6.  Geisinger contracts with SCIOinspire to enforce the subrogation provisions under its contracts with Pennsylvania employers.  *Id.*

- Plaintiffs, Lori Freitas and Kaylee McWilliams, allege that they were each enrolled in employee welfare benefit plans that were provided by Geisinger and governed by ERISA.  Motion ¶ 7.

- According to Plaintiffs, they each sustained personal injuries while enrolled in their respective welfare benefit plans.  Motion ¶ 8. Plaintiffs contend that Geisinger paid Lori Freitas $17,590.83 as a result of her injuries, and that Geisinger paid Kaylee McWilliams $43,934.76 as a result of her injuries.  *Id.*

- Plaintiffs admit that Geisinger paid the medical benefits that were associated with their personal injuries, and that Plaintiffs each subsequently filed civil lawsuits against third-party tortfeasors for their respective injuries.  Motion ¶ 11.

- Plaintiffs allege that the operative subrogation provision relevant to their respective claims states as follows:

  > **8.3 Subrogation.**   The Plan has the right of subrogation to the extent permitted by the law against third parties that are legally liable for the expenses paid by the Plan under this Certificate. The Member shall do nothing to prejudice the subrogation rights of the Plan.   The Plan may recover benefits amounts paid under this certificate under the right of subrogation to the extent permitted by law.

  Motion ¶ 22.

- Plaintiffs allege that Defendants asserted claims against each of them, seeking to be "reimbursed" from the proceeds of Plaintiffs' respective tort settlements as a result of the medical benefits that Geisinger had previously paid on Plaintiffs' behalf.  Motion ¶ 12.

## STATEMENT OF QUESTIONS INVOLVED

1.      Whether Plaintiffs can nullify Geisinger's subrogation rights by entering into settlements with their respective third-party tortfeasors, where under the plans at issue (1) Geisinger (and its agents) were legally and equitably permitted to assert subrogation claims to the extent permitted by law, and (2) Plaintiffs were prohibited from engaging in conduct that would prejudice Geisinger's subrogation rights.

*Suggested answer:  No.*

2.      Whether Plaintiffs can assert claims for breach of fiduciary duty when Defendants were authorized by the plans' plain language to seek subrogation and, as such, were under no obligation to act in the financial interests of Plaintiffs when asserting such claims.

*Suggested answer:  No.*

3.      Whether Plaintiffs' can state independent claims for declaratory relief when such claims are duplicative of their other ERISA claims?

*Suggested answer:  No.*

4.      Whether Plaintiffs' can enforce ERISA claims procedure rules under 29 U.S.C. § 1133 where that provision does not contain a private cause of action.

*Suggested answer:  No.*

5.      Whether Plaintiffs' can utilize federal common law to curtail Geisinger's subrogation rights where the plans' subrogation provision is unambiguous and Geisinger acted in accordance with such provision.

*Suggested answer:  No.*

6.      Whether Plaintiffs can save their claims by parroting various legal principles (*i.e.*, common fund doctrine) without alleging any substantive facts?

*Suggested answer:  No.*

## ARGUMENT

**I.      Plaintiffs Are Not Entitled To Recover "Benefits Due" Because Defendants Were Authorized To Assert Subrogation Claims With Respect To Plaintiffs' Tort Recoveries.**

In Counts 2 and 9, Plaintiffs seek to assert ERISA Section 502(a)(1)(B) claims to recover "benefits due" and to "enforce [their] rights under the terms of the plan."  Compl. ¶¶ 84, 232.  Plaintiffs, however, cannot nullify their plans' subrogation provisions.

**A.      An Insurer With Subrogation Rights Steps Into The Shoes Of An Insured And Acquires The Insured's Rights Against The Third-Party Tortfeasor.**

At its core, subrogation is a legal principle whereby a party is entitled to enforce the legal rights of another party.  *U.S. v. CITGO Asphalt Ref. Co.*, 886 F.3d 291, 309 (3d Cir. 2018).  In the ERISA context, an insurer may assume the place of a beneficiary to recover a loss—*i.e.*, the amount the plan paid on the plan beneficiary's behalf to cover the beneficiary's medical expenses.  *See Electro-*

*Mechanical Corp. v. Ogan*, 9 F.3d 445 (6th Cir. 1993). Put another way, the insurer is permitted to "step into the shoes" of a beneficiary and acquire the rights that the beneficiary could have asserted against the third party, to the extent of the payments made by the plan. *See Medica, Inc. v. Atl. Mut. Ins. Co.*, 566 N.W. 2d 74 (Minn. 1997) (comparing the language of two policies, one with subrogation language and one without).

Courts routinely apply the doctrine of subrogation because, as a practical matter, it places the ultimate burden of debt upon the individual who in good conscience ought to pay it. *See U.S. Steel Homes Credit Corp. v. S. Shore Dev. Corp.*, 419 A.2d 785, 788 n.2 (Pa. Super. Ct. 1980). It acts as a legal fiction by force of which an obligation extinguished by payment made by a third party is considered as continuing to subsist for the benefit of that third person. *Id.* "Subrogation further promotes equity by preventing an insured from receiving more than full indemnification as a result of recovering from both the wrongdoer and the insurer for the same loss, which would unjustly enrich the insured." *Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency, Inc.*, 72 A.3d 36, 40 (Conn. 2013) (citation and internal quotations omitted). "Being founded on principles of natural reason and justice . . . [subrogation] is a highly favored doctrine and one which has been most liberally dealt with in the courts." *Yonack v. Interstate Sec. Co.*, 217 F.2d 649, 651 (5th Cir. 1954).

**B.     Geisinger Was Entitled To Assert Its Subrogation Claims And Obtain Reimbursement For The Medical Expenses It Paid On Plaintiffs' Behalf That Plaintiffs Recouped As Part Of Third-Party Settlements.**

Plaintiffs' own allegations make clear that Geisinger was permitted to assert its subrogation rights under their respective plans:

> **8.3 Subrogation.**  The Plan has the right of subrogation to the extent permitted by the law against third parties that are legally liable for the expenses paid by the Plan under this Certificate.  The Member shall do nothing to prejudice the subrogation rights of the Plan.  The Plan may recover benefits amounts paid under this certificate under the right of subrogation to the extent permitted by law.

Compl. ¶ 22.  And Plaintiffs admit that Geisinger paid medical expenses on their behalf and that Plaintiffs subsequently recouped those same expenses as part of a settlement with the third-party tortfeasors.  Compl. ¶¶ 17-22; 23-28; *see also Novak v. TRW, Inc.*, 822 F. Supp. 963, 974 (E.D.N.Y. 1993) ("this Court neither approves of double recoveries, nor does it approve of settlements in personal injury cases that purport to be for pain and suffering only.").  As discussed above, Geisinger was permitted pursuant to the express terms of Plaintiffs' respective plans—and as a matter of law and equity—to step into Plaintiffs' shoes to recover from the third-party tortfeasors the medical expenses Geisinger previously had paid on Plaintiffs' behalf.  That is precisely what Geisinger did.

Through SCIOinspire, Geisinger asserted a claim to the proceeds from settlements that were paid from *third-party tortfeasors*.  Compl. ¶¶ 29, 33.  These

settlements compensated Plaintiffs for their medical expenses.  Compl. ¶¶ 22, 28

("The insurer for the tortfeasor did resolve, settle and make payment to [Plaintiff]

in compensation for the personal injuries she sustained in the injury-causing

event.").  These medical expenses had already been paid by Geisinger, and

Geisinger sought to recover those expenses in conjunction with Plaintiffs' tort

settlements.  Compl. ¶¶ 19, 25, 29, 33.  So what is Plaintiffs' issue?

Plaintiffs do not allege that Geisinger or SCIOinspire sought to be paid any

monies from Plaintiffs personally.  Nevertheless, Plaintiffs take issue with

Defendants' actions, apparently, because the subrogation provision at issue refers

to "third parties," whereas Plaintiffs contend that Defendants took an adverse

action against *their* tort recoveries.  Compl. ¶ 84.  The fundamental disconnect here

is that Plaintiffs are assuming that the claims to medical expenses are *their* claims,

which would make the proceeds resulting from a settlement of those claims *their*

proceeds.  They are wrong.

Applying the doctrine of subrogation, each of Plaintiffs' claims to medical

expenses was "extinguished by payment made by a third party"—that is,

Geisinger.  *See U.S. Steel Homes*, 419 A.2d at 788 (citation omitted).  When those

claims were brought against third-party tortfeasors, they were "considered as

continuing to subsist for the benefit of that third person."  *Id.*  Plaintiffs cannot

escape this fact.

Plaintiffs' attempt to extinguish Geisinger's subrogation rights by styling Geisinger's actions as for "reimbursement" also misses the mark.  As the terms "subrogation" and "reimbursement" are often used interchangeably by courts and practitioners, there is no bright-line rule separating the two doctrines.  *See, e.g.*, *Electro-Mechanical Corp. v. Ogan*, 9 F.3d 445, 446 (6th Cir. 1993) (affirming grant of summary judgment holding that plan administrator could recoup subrogation claim against the settlement proceeds of a medical malpractice action brought by defendants); *United Nat'l Ins. Co. v. M. London*, 23 Phila. 598, 605 (Phila. Super. Ct. 1992) ("The doctrine of subrogation entitles an insurer to recover the amount of insurance proceeds it has paid from any settlement fund or judgment obtained by the insured from a third-party tortfeasor . . . [s]ubrogation rights rest upon a long standing policy against double recovery.").

Indeed, principles of ***subrogation*** have been applied even where the plan's recovery rights against third-party sources can be supplied only by invoking equitable principles of unjust enrichment, like where a plan did not contain a conventional subrogation clause, but instead had only a "reimbursement" provision that was found inapplicable.  *See J.C. Penney Co. v. McNaul*, No. 87-0565-CV-W-JWO, 1988 U.S. Dist. LEXIS 8606 (W.D. Mo. July 22, 1988).  In that instance, recovery from the proceeds of a wrongful-death settlement was allowed notwithstanding the absence of plan language expressly creating rights against

third-party sources.  *Id.*  Significantly, Plaintiffs have already conceded that Geisinger has a *contractual* right to subrogation.  Ultimately, Plaintiffs errantly hang their hat on a perceived distinction between "subrogation" and "reimbursement" which simply does not exist in this circumstance.

Significantly, at least one court already has squarely addressed and allayed Plaintiffs' apparent concern.  In Connecticut, the Department of Social Services receives rights to "subrogation" by operation of statute against third parties who are legally responsible for the payment of the costs of medical care provided under the state Medicaid program.  *Rathbun v. Health Net of the Ne., Inc.*, 110 A.3d 304 (Conn. 2015).  There, as here, plaintiff posited that the "department *only* [had] the right to step into the recipient's shoes and to initiate proceedings against persons *other than* the recipient."  *Id.* at 311 (emphasis in original).  Rejecting plaintiff's argument, the Connecticut Supreme Court examined numerous treatises discussing the principles of subrogation and ultimately concluded that "[t]hese authorities provide strong support for the conclusion that the right to subrogation conferred . . . *includes the right to seek reimbursement from a Medicare recipient who has recovered damages for medical costs from a third party*."  *Id.* at 313 (emphasis added).  For the same reasons, Plaintiffs' efforts to distinguish subrogation from reimbursements here are also unavailing.

Finally, Plaintiffs blatantly ignore a key clause in the subrogation provision that undercuts their faulty argument: "The Member shall do nothing to prejudice the subrogation rights of the Plan."  Even if Plaintiffs could legally nullify Geisinger's subrogation rights by entering into settlements with their respective third-party tortfeasors, Geisinger could still assert a claim against Plaintiffs for repayment in such circumstances.

In fact, an "equitable right of reimbursement" is created in circumstances "when an insured settles with a tortfeasor and thereby destroys the insurer's subrogation interest." *See Provident Life & Accident Ins. Co. v. Williams*, 858 F. Supp. 907, 912 (W.D. Ark. 1994).  The contractual provision here provides even more justification for such enforcement of Geisinger's reimbursement right, especially when considering that, even without such a provision, "equitable rights of subrogation and reimbursement are frequently granted by the courts."  *Id.*  At bottom, Plaintiffs cannot escape the application of equitable principles expressly created by contract, which are designed to ensure that the appropriate party—the third-party tortfeasor—is ultimately held responsible for paying for their medical expenses.  Counts 2 and 9, therefore, must be dismissed as a matter of law.

**II.    Plaintiffs' Claims For Breach Of Fiduciary Duty (Counts 3, 4, 5, 7, 10, 11, 12, And 14) Fail To The Extent They Are Based On The Faulty Premise That Defendants Could Not Seek Reimbursement Under Plaintiffs' Respective Plans.**

The statutory basis for an ERISA breach of fiduciary duty claim is found at 29 U.S.C. § 1104(a)(1).  That provision specifies that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries."  29 U.S.C. § 1104(a)(1)(A)(i).  Additionally, a plan fiduciary must discharge duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B).

As an initial matter, Section 502(a)(3) of ERISA, the vehicle for Plaintiffs' breach of fiduciary duty claims, is a "general 'catchall' provision [that] . . . act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy."  *Varity Corp. v. Howe*, 516 U.S. 489, 490 (1996).  Therefore, the Supreme Court has held, "we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate."  *Id.* at 515.  Plaintiffs— whose "injury" created a cause of action under ERISA § 502(a)(1)(B)—cannot

simultaneously pursue those claims along with their ERISA § 502(a)(3) claims. *See Newcomer v. Henkels & McCoy*, Inc., No. 1:16-cv-2119, 2017 U.S. Dist. LEXIS 120427, at *14 (M.D. Pa. Aug. 1, 2017) (dismissing Plaintiff's ERISA Section 502(a)(3) claim as identical to his claim for benefits under Section 502(a)(1)(B)).

Assuming that Plaintiffs could proceed on these two theories simultaneously, which Defendants dispute, and as relevant to this action, the Third Circuit has recognized the following discrete, though related, fiduciary duties:

- **Duty of Loyalty** (asserted in Counts 3 and 10):  When acting in a fiduciary capacity, an administrator must act solely and exclusively in the interests of plan participants and beneficiaries.  *See Pegram v. Herdrich*, 530 U.S. 211, 224 (2000).

- **Duty to Disclose** (asserted in Counts 4 and 11):  When acting in a fiduciary capacity, an administrator must "convey complete and accurate information when it speaks to participants and beneficiaries regarding plan benefits."  *Meinhardt v. Unisys Corp.* (In re Unisys Sav. Plan Litig.), 74 F.3d 420, 441 (3d Cir. 1996).

- **Duty to Avoid Misrepresentation** (asserted in Counts 5 and 12):  When acting in a fiduciary capacity, an administrator can be liable for a material misrepresentation if it is relied upon by plaintiff to his or her detriment.  *Burstein v. Ret. Account Plan for Emps. of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 384 (3d Cir. 2003).[1]

---

[1]     While Plaintiffs' attempt to enforce ERISA's claims management regulations in Counts 7 and 14 is addressed separately below, Plaintiffs there also allude to various fiduciary duties, making this section applicable to those Counts as well.

While these claims are conceptually distinct, Plaintiffs commit the same fatal flaw in each one. Plaintiffs start from the conclusion that Defendants were *not* authorized to pursue claims of "reimbursement," and from there allege that Defendants breached their fiduciary duties by seeking to be paid from monies out of Plaintiffs' respective tort settlements. *See* Motion ¶¶ 32-33 (outlining Plaintiffs' reliance on the faulty premise in each claim).

As a threshold matter, however, Defendants *were* authorized by the plain language in Plaintiffs' respective plans to assert subrogation claims and, accordingly, to make reimbursement demands regarding Plaintiffs' settlement of their tort claims. *See supra*, Section I. Plaintiffs' position amounts to a contention that an insurance company is prohibited from enforcing the terms of an insurance policy if those terms have an adverse effect on the insured. According to the Plaintiffs, insurance companies are prohibited from administering plans "in a way favorable to themselves[.]," Compl. ¶¶ 103, 248, and whenever presented with a choice as to "who would get money," Compl. ¶¶ 106, 251, insurance companies must each time choose their insureds. From an ERISA perspective, the premise underlying Plaintiffs' claims is that Defendants are plan fiduciaries for all purposes in all contexts, and, thus, have a fiduciary duty to act solely in Plaintiffs' economic interests, regardless of the governing policy's terms, and regardless of the context in which they are acting. Compl. ¶¶ 102-108; 247-253. From this premise,

Plaintiffs assert Defendants' recovery of subrogation amounted to a conflict of interest in breach of their fiduciary duties.  *Id.*

Plaintiffs' position, boiled down, is that Defendants' ERISA statutory duty was to ignore, not enforce, the plans' express subrogation terms, because those terms were financially unfavorable to Plaintiffs.  But Defendants were not acting in a fiduciary capacity when enforcing Geisinger's subrogation rights.

The Supreme Court dismissed similar claims in *Pegram v. Herdrich*, 530 U.S. 211 (2000), where a plaintiff alleged that an ERISA plan's health insurer had a conflict of interest when denying coverage for certain treatments, even though the insurer's actions were consistent with the terms of the plan policy.  The Supreme Court recognized that "under ERISA . . . a fiduciary may also have financial interests adverse to beneficiaries."  *Id.* at 225.  Indeed, allowing such claims to go forward would portend to "nothing less than elimination of the for-profit HMO" where "[r]ecovery would be warranted simply upon showing that the profit incentive . . . would generally affect . . . decisions, in derogation of the fiduciary standard to act solely in the interest of the [beneficiary] without possibility of conflict."  *Id.* at 232-33.

Adhering to the terms of an ERISA plan is not a breach of fiduciary duty, regardless of whether such adherence works to the financial detriment of a participant.  *See US Airways, Inc. v. McCutchen*, 569 U.S. 88 (2013) (holding that

-15-

employer was permitted to enforce the reimbursement provision in its plan, relying on principle that the terms of the ERISA plan govern).  In other words, "it cannot be a breach of the fiduciary duty of loyalty for an insurance company to enforce the terms of an insurance policy."  *Minerley v. Aetna, Inc.*, No. 13-1377, 2019 U.S. Dist. LEXIS 107771, at *26 (D.N.J. June 27, 2019).  Significantly, the Third Circuit has recently affirmed these principles.  *See Minerley v. Aetna, Inc.*, 801 F. App'x 861, 866 (3d Cir. 2020) ("[Plaintiff] claims that the defendants breached a duty of loyalty owed to him by seeking reimbursement, contrary to his interest as a beneficiary of and participant in . . . [the] employee benefit plan.  We are unconvinced.")  Dismissal of Plaintiffs' claims for breach of fiduciary duty here is equally warranted.

## III. Counts 1 And 8, Which Seek Declaratory Relief, Should Be Dismissed Because They Are Either Preempted By ERISA Or They Are Subsumed Into Plaintiffs' ERISA Claims.

Plaintiffs seek a declaratory judgment in Counts 1 and 8 under the "Declaratory Judgment Act."  Compl. ¶¶ 88, 215.  Even though Plaintiffs fail to specify the precise act under which they seek the determination—*i.e.*, through Pennsylvania's declaratory judgment act, the federal declaratory judgment act, or ERISA itself—Plaintiffs cannot assert a viable claim for declaratory relief, under any act.  As explained in Defendants' Motion, such relief would be either preempted by ERISA or duplicative of Plaintiffs' other ERISA claims.  *See Wolff*

-16-

*v. Aetna Life Ins. Co.*, No. 4:19-CV-01596, 2020 U.S. Dist. LEXIS 57864 (J. Brann) (M.D. Pa. Apr. 2, 2020). Dismissal with prejudice of Plaintiffs' claims in Counts 1 and 8 is, thus, warranted.

**IV. Counts 7 And 14, Which Seek Relief On The Basis That Defendants Did Not Follow Reasonable Claims Procedures, Should Be Dismissed Because ERISA Does Not Provide A Private Right Of Action Under 2 9 U.S.C. § 1133.**

As explained in Defendants' Motion, Plaintiffs are essentially seeking in Counts 7 and 14 to enforce the terms of 29 U.S.C. § 1133 and its implementing regulations, which set forth the manner in which ERISA plans must adjudicate participant claims and appeals. Compl. ¶¶ 198, 343 (citing to 29 CFR § 2560.503-1(c)(2), (b)(5), and (f).) But there is no private cause of action to enforce the provisions of 29 U.S.C. § 1133. *See Cohen v. Horizon Blue Cross Blue Shield of N.J.*, Civil Action No. 2:13-CV-03057, 2013 U.S. Dist. LEXIS 153438, at *25 (D.N.J. Oct. 25, 2013).

Counts 7 and 14 should be dismissed for the additional reason that Plaintiffs have not alleged that their respective plans failed to provide notice or other information. *See Swanson v. Aetna Life Ins. Co.*, Civil Action No. 15-cv-0785, 2016 U.S. Dist. LEXIS 507, at *8 (D. Colo. Jan. 5, 2016) ("an alleged failure by the employer or the plan administrator to provide such notice and/or opportunity is not a violation of section 1133").

**V.     Counts 6 And 13, Which Seek Relief On The Basis That Defendants Did Not Act In Accordance With ERISA Common Law, Should Be Dismissed Because Geisinger's Right To Recovery Is Governed By The Plans' Unambiguous Written Provisions.**

Geisinger's rights as an insurer are governed by the terms of Plaintiffs' respective plans, which grant Geisinger the right of subrogation "to the extent permitted by law." *See Chapman v. Klemick*, 750 F. Supp. 520, 523 (S.D. Fla. 1990). As the Third Circuit has made clear, "while ERISA was enacted to provide security in employee benefits, it protects only those benefits provided in the plan . . . ERISA mandates no minimum substantive content for employee welfare benefit plans, and therefore a court has no authority to draft the substantive content in such plans." *Ryan by Capria-Ryan v. Fed. Express Corp.*, 78 F.3d 123, 126 (3d Cir. 1996).

Here, the grant of subrogation rights is clear and expansive in nature. *See Waller v. Hormel Foods Corp.*, 120 F.3d 138, 140 (8th Cir. 1997) ("[O]ne may presume that this term [subrogation] does not have great currency among laypersons, but this neither defeats reasonable expectations nor creates ambiguity."). And Plaintiffs themselves do not allege that the subrogation provision is ambiguous; as such, reliance on federal common law to interpret the plans' language is unnecessary. Indeed, the Third Circuit has been hesitant to adopt federal common law to import any principles to limit a plan's subrogation right, and previously rejected application of the "make whole" doctrine because

-18-

"importing federal common law doctrines to ERISA plan interpretation is generally inappropriate, particularly when the terms of an ERISA plan are clear and unambiguous."  *Bill Gray Enters. v. Gourley*, 248 F.3d 206, 220 n.13 (3d Cir. 2001).

Additionally, even if recourse to common law were necessary, Plaintiffs cannot ignore well-established Pennsylvania law in the hope that this Court will craft more favorable federal common law.  *See J.C. Penney Co. v. McNaul*, No. 87-0565-CV-W-JWO, 1988 U.S. Dist. LEXIS 8606, at \*17 (W.D. Mo. July 22, 1988) (giving "appropriate deference to state law" in applying principles of subrogation).  And, as explained below, Pennsylvania common law does not entitle Plaintiffs to any relief.  Accordingly, Counts 6 and 13, seeking to apply federal common law, must be dismissed as a matter of law.

## VI.  Plaintiffs Are Not Entitled To Any Relief Under The Various Legal Doctrines They Rely Upon Throughout The Class Action Complaint.

In a last-ditch effort to save their claims, Plaintiffs throughout their Class Action Complaint make reference to various legal principles in conclusory fashion. Plaintiffs, for example, refer to the "make whole" doctrine in no less than 12 out of 14 causes of action.  *See* Compl. ¶¶ 66, 91, 110, 130, 154, 181, 211, 236, 255, 275, 299, and 326.  None of these legal principles provide Plaintiffs with a basis for relief.

-19-

### A. Plaintiffs' Attempt To Impute Liability Onto Defendants Through Conclusory Allegations That Certain Settlements May Have Excluded Medical Expenses Or Through Application Of The Common Fund Doctrine Are Unavailing.

Plaintiffs contend without any context or elaboration that Defendants wrongfully asserted claims for the health benefits from insureds' tort recoveries even though "the class plaintiff insureds had not recovered medical expenses in their underlying litigation." Compl. ¶ 47. Curiously, despite seeking to represent a whole purported class of such individuals, neither Plaintiff alleges that she signed only a limited release in her underlying litigation that *excluded* her claims for medical expenses. *See also G.R. Herberger's v. Erickson*, 17 F. Supp. 2d 932, 936 (D. Minn. 1998) ("Where the subrogation clause of a plan states that it covers all rights of recovery, a defendant cannot defeat the plain language by designating, in the settlement, that the recovery precludes medical damages."). In any event, conclusory allegations are entitled to no weight in deciding a motion to dismiss, *Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010), and Plaintiffs' passing references to purported failures to settle medical expenses are insufficient.

In a similar vein, Plaintiffs contend that Defendants sought to be paid from tort recoveries "without reducing its reimbursement demand . . . by the pro-rata share of attorney fees and expenses that the class plaintiff insureds incurred . . ." Compl. ¶ 45. Again, "naked assertions devoid of further factual enhancement" and

-20-

"threadbare recitals . . . supported by mere conclusory statements" are insufficient to survive a motion to dismiss.  *Id.*

### B. Plaintiffs Cannot Rely On The "Make Whole" Doctrine To Defeat Defendants' Subrogation Claims Because The Amounts For Which Plaintiffs Settled Their Actions Are Presumptively Commensurate With Their Losses.

Finally, Plaintiffs assert that they must first be "made whole and fully compensated for all of their damages and losses" before Geisinger can receive payment on its subrogation claims.  Compl. ¶ 46.  But under long-standing Pennsylvania law, an insured cannot defeat a subrogation claim by, on the one hand, agreeing to accept a certain amount as settlement for damages and then, on the other hand, averring that losses were actually greater than the agreed upon amount.  *See, e.g.*, *Associated Hosp. Service of Philadelphia v. Pustilnik*, 396 A.2d 1332, 1337-1338 (Pa. Super. Ct. 1979) vacated on other grounds, 439 A.2d 1149 (Pa. 1981) ("When a subrogor settles, he waives his right to a judicial determination of his losses, and conclusively establishes the settlement amount as full compensation for his damages.").  Plaintiffs here did not test out what their full loss was by pressing their suits against the tortfeasors to verdict, and, therefore, cannot avail themselves of the principle they seek to invoke.  "It would never do in administering such an equitable doctrine as subrogation to permit the insured to defeat recovery of any sum from [her] by [her] insurer merely by making claim as to [her] total loss without having his loss ascertained."  *Prof'l Flooring Co. v.*

-21-

*Bushar Corp.*, 152 A.3d 292, 305 (Pa. Super. Ct. 2016) (citation and quotation marks omitted).  As such, Plaintiffs attempts to save their claims on this ground also fail.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss should be granted.

Dated: September 8, 2020          Respectfully submitted,

BUCHANAN INGERSOLL & ROONEY PC

By: */s/Thomas G. Collins*
Thomas G. Collins, Esq. (PA I.D. #75896)
Adrian Zareba, Esq. (PA I.D. #318649)
409 North Second Street, Suite 500
Harrisburg, PA  17101-1357
Phone:  (717) 237-4800
e-mail:  thomas.collins@bipc.com
e-mail:  adrian.zareba@bipc.com

Gretchen Woodruff Root, Esq. (PA I.D. #309683)
501 Grant Street, Suite 200
Pittsburgh, PA  15219-4413
Phone:  (412) 562-8800
e-mail:  gretchen.root@bipc.com

*Counsel for Defendants,*
*Geisinger Health Plan and*
*SCIOinspire Corp. (f/k/a Socrates, Inc.)*

## <u>CERTIFICATE OF LOCAL RULE 7.8(B)(2) COMPLIANCE</u>

It is hereby certified that Defendant's Brief in Support of its Motion to Dismiss contains 4,944 words (exclusive of tables of contents and authorities, signatures, and this certificate), according to the word processing system sued to prepare it, and that the brief therefore complies with the Local Rule.

*/s/Thomas G. Collins*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was transmitted to the Court electronically for filing and for electronic service upon the following attorneys of record this 8th day of September, 2020:

Charles Kannebecker, Esq.
Law Office of Kannebecker & Mincer, LLC
104 West High Street
Milford, PA 18337
kannebecker@wskllawfirm.com

*Counsel for Plaintiff*

/s/Thomas G. Collins

*Counsel for Defendants,*
*Geisinger Health Plan and*
*SCIOinspire Corp. (f/k/a Socrates, Inc.)*