**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

LORI FREITAS and KAYLEE          :
MCWILLIAMS individually          :
and on behalf of all others      :
similarly situated,              :
                                 :
      Plaintiffs,                :     No. 4:20-cv-1236 (MWB)
                                 :
      v.                         :
                                 :
GEISINGER HEALTH PLAN, and       :
SOCRATES, INC.                   :
                                 :
      Defendants.                :
                                 :
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, LORI FREITAS and KAYLEE MCWILLIAMS, individually and as class representatives for all similarly situated individuals who are covered by health insurance policies and have had liens and/or repayment demands asserted by Defendants, Geisinger Health Plan, ("Geisinger") and SOCRATES, INC. ("Socrates"), (hereinafter collectively referred to as "Defendants"), as against their personal injury recoveries, by and through their undersigned counsel, bring this Complaint and alleges as follows:

**INTRODUCTION**

1. This is an action arising under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq., ("ERISA"), to recover benefits due under an employees benefit plan, return of all monies recovered, payment of

extra-contractual bad faith damages, and to recover costs, attorneys fees and other relief as provided under ERISA and to the extent permitted by law.

2. Plaintiffs, and all other similarly situated members of the class she seeks to represent, were covered by health insurance plans issued by Geisinger Health Plan and sustained personal injuries for which they sought recovery and have had reimbursement demands asserted against them by the defendants. The Defendants violated the Plan's terms by asserting reimbursement demands and by securing payment from Plaintiffs' personal injury recoveries. As a consequence, the Plaintiffs, and other members of the class he seeks to represent, are entitled to recover from the Defendants their damages, attorney fees and all other lawful and available relief.

3. Plaintiffs, who were participants in the Plan during time periods relevant to this Complaint, bring this civil enforcement action under Section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a), for plan-wide relief on behalf of a class consisting of all current and former Participants in the Plan who were covered by health insurance plans issued by Geisinger under and subject to the laws of the State of Pennsylvania and who received health benefits from Geisinger as a result of personal injuries they sustained and as against whom the Defendants asserted reimbursement demands and from whom defendants secured repayment of the Class members in

violation of the terms of the Plan.

4. Plaintiffs bring this action on behalf of the Class pursuant to §502(a)(1), (2) and (3) of ERISA, 29 U.S.C. §1132. As more fully set forth below, Defendants also breached their fiduciary duties to the Participants, including those fiduciary duties set forth in ERISA Section 404, 29 U.S.C. § 1104, and Department of Labor Regulations, including 29 C.F.R. § 2550.

**PARTIES**

5. Plaintiff, LORI FREITAS, is an adult individual, who was insured under a policy of health insurance issued in and subject to the laws of Pennsylvania.

6. Plaintiff, KAYLEE MCWILLIAMS, is an adult individual, who was insured under a policy of health insurance issued in and subject to the laws of Pennsylvania.

7. Plaintiffs, and other similarly situated members of the proposed class they seek to represent, were covered by health insurance plans issued by Geisinger in and subject to the laws of Pennsylvania and sustained personal injuries for which they sought recovery and have had reimbursement demands asserted against them by the defendants and from whom repayment was secured.

8. Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated.

9. Geisinger is a Corporation duly authorized and licensed to issue insurance policies and conduct business in the State of Pennsylvania.

10. Socrates is a limited liability company duly authorized to conduct business in the State of Pennsylvania.

## FACTUAL ALLEGATIONS

11. GEISINGER specializes in offering a broad range of health insurance products and related services.

12. At all relevant times, GEISINGER exercised discretionary authority, control and/or responsibility for administration or management of the Plan and management or disposition of Plan assets within the meaning of ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

13. SOCRATES specializes in healthcare subrogation services. At all times relevant hereto, Socrates acted as an agent and servant on behalf of Geisinger.

14. At all relevant times, Defendant SOCRATES was a fiduciary of the Plan, as SOCRATES exercised discretionary authority, control or responsibility for administration or management of the Plan and/or management or disposition of Plan assets within the meaning of ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

15. At all relevant times, both GEISINGER and SOCRATES exercised final discretionary authority, control and/or

responsibility for administration or management of the Plan and management or disposition of Plan assets within the meaning of ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

16. Based on the specialized health insurance services and products they offer in Pennsylvania, Defendants knew or should have known that health insurance liens and reimbursement is not authorized by the terms of the insurance policy.

17. On or about April 9, 2017, LORI FREITAS was involved in an injury-causing event, wherein she sustained serious injuries and received benefits under a health insurance policy issued in and subject to the laws of Pennsylvania.

18. As a result of the injuries sustained in the above referenced accidents, LORI FREITAS sought and received medical benefits through non-ERISA pre-empted health insurance policies issued to her by defendant GEISINGER.

19. The defendant, GEISINGER, paid health benefits to LORI FREITAS in the amount of $17,590.83.

20. As a result of the injuries sustained in the injury-causing event, LORI FREITAS made a claim for recovery of damages against the tortfeasor.

21. LORI FREITAS filed civil lawsuits or made claim against the respective tortfeasors involved in the injury-causing event, asserting that such tortfeasors caused the injury-causing event and were thus liable to LORI FREITAS for her resulting damages.

22.   The insurer for the tortfeasor did resolve, settle and make payment to LORI FREITAS in compensation for the personal injuries she sustained in the injury-causing event.

23. LORI FREITAS did not receive compensation for medical expenses paid by defendant GEISINGER as part of her settlement with the tortfeasor.

24. On or about March 23, 2017, KAYLEE MCWILLIAMS was involved in an injury-causing event, wherein she sustained serious injuries and received benefits under a health insurance policy issued in and subject to the laws of Pennsylvania.

25. As a result of the injuries sustained in the above referenced accidents, KAYLEE MCWILLIAMS sought and received medical benefits through non-ERISA pre-empted health insurance policies issued to her by defendant GEISINGER.

26. The defendant, GEISINGER, paid health benefits to KAYLEE MCWILLIAMS in the amount of $43,934.76.

27.   As a result of the injuries sustained in the injury-causing event, KAYLEE MCWILLIAMS made a claim for recovery of damages against the tortfeasor.

28. KAYLEE MCWILLIAMS filed civil lawsuits or made claim against the respective tortfeasors involved in each  injury-causing event, asserting that such tortfeasors caused the injury-causing event and were thus liable to KAYLEE MCWILLIAMS for her resulting damages.

29.   The insurer for the tortfeasor did resolve, settle and make payment to KAYLEE MCWILLIAMS in compensation for the personal injuries she sustained in the injury-causing event.

30. KAYLEE MCWILLIAMS did not receive compensation for medical expenses paid by defendant GEISINGER as part of her settlement with the tortfeasor.

31. The defendants, GEISINGER and SOCRATES, are seeking reimbursement from the proceeds of the tort settlement payment to Plaintiffs pursuant to the Plan. See Exhibit "A".

32. The plan terms provide, in relevant part:

"8.3 Subrogation. The Plan has the right of subrogation to the extent permitted by the law against third parties that are legally liable for the expenses paid by the Plan under this Certificate. The Member shall do nothing to prejudice the subrogation rights of the Plan. The Plan may recover benefits amounts paid under this Certificate under the right of subrogation to the extent permitted by law."

See Freitas Plan, Exhibit "B"; McWilliams Plan, Exhibit "C".

33. Further, the plan terms state that the Plan has the right to subrogation only against "third parties that are legally liable for the expenses paid by the Plan[.]"

34. Accordingly, the plan terms provide for only a right of subrogation against the "third parties that are legally liable for the expenses paid by the Plan," i.e., the tortfeasor of the underlying personal injury case. The plan terms do not permit or authorize a right of reimbursement against the member or the member's personal injury recovery directly.

35. Nonetheless, the defendants, GEISINGER and SOCRATES, are seeking reimbursement from Plaintiffs for the benefits GEISINGER paid from the proceeds of their respective tort settlement.

36. Socrates, acting as an agent for Geisinger, has asserted, and continues to assert, reimbursement demands for the benefits which Geisinger paid as against Plaintiffs' personal injury recoveries.

37. Plaintiffs have, involuntarily and under protest, made payment to Defendants in response to Defendants' reimbursement demands.

38. Defendants actions were part of a purposeful practice and plan to collect money from insureds when such reimbursement demands was known to be improper.

39. The defendants' actions were pursuant to a common policy and practice with respect to the Plaintiffs and as to all other class members.

40. The defendants, GEISINGER and SOCRATES, have refused to withdraw their demands for reimbursement of benefits despite the request from Plaintiffs to do so.

41. As a result of defendants' demand, counsel for Plaintiffs was forced to refuse to distribute to Plaintiffs the money in dispute. Counsel is ethically bound to refuse to provide the funds to Plaintiffs. Further, the policy leaves Plaintiffs subject to suit and loss of benefits based on the dispute over the subject funds. Accordingly, Plaintiffs are denied the

payment, ownership and use of the dispute funds.

42. In consequence of the above, counsel for Plaintiffs has refused Plaintiffs the payment, ownership and use of their funds by paying those funds to Defendants.

43. Plaintiffs have been deprived of the ownership, possession and use of the from the proceeds of their respective tort settlements by reason of the assertion of the reimbursement demands of the defendants, GEISINGER and SOCRATES. Plaintiffs are further subject to suit and loss of future benefits as a result of the defendants' illegal assertion and claim for reimbursement.

44. It is believed, and therefore averred, that the defendants, GEISINGER and SOCRATES, have illegally asserted liens and claims for reimbursement or further collected monies from the tort settlement or verdicts recovered in tort claims against not only Plaintiffs herein, but also against other persons insured under an insurance policy issued by GEISINGER.

45. The defendants, GEISINGER and SOCRATES, have wrongfully asserted reimbursement demands and continue to assert reimbursement demands from the proceeds of settlement or verdict of tort claims contrary to the policy.

46. Furthermore, the defendants, GEISINGER and SOCRATES, wrongfully asserted claims for reimbursement, continue to wrongfully assert claims for reimbursement or have wrongfully secured payment in reimbursement from Plaintiffs and class plaintiffs who were injured and received health benefits from the

defendant as a result of an injury causing event for the health benefits it had paid to insureds from the insureds' tort recoveries contrary to the policies and law.

47. Furthermore, the defendants, GEISINGER and SOCRATES, wrongfully asserted claims for reimbursement, continue to wrongfully assert claims for reimbursement or have wrongfully secured payment in reimbursement from Plaintiffs and class plaintiffs who were injured and received health benefits from the defendant as a result of an injury causing event for the health benefits it had paid to insureds from the insureds' tort recoveries without reducing its reimbursement demand or recovery by the pro-rata share attorney fees and expenses that the Plaintiffs and class plaintiff insureds incurred in their underlying litigation contrary to the policies and law.

48. Furthermore, the defendants, GEISINGER and SOCRATES, wrongfully asserted claims for reimbursement, continue to wrongfully assert claims for reimbursement or have wrongfully secured payment in reimbursement from Plaintiffs and class plaintiffs who were injured and received health benefits from the defendant as a result of an injury causing event for the health benefits it had paid to insureds from the insureds' tort recoveries before the Plaintiffs and class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses contrary to the policies and law.

49. Furthermore, the defendants, GEISINGER and SOCRATES, wrongfully asserted claims for reimbursement, continue to wrongfully assert claims for reimbursement or have wrongfully secured payment in reimbursement from Plaintiffs and class plaintiffs who were injured and received health benefits from the defendant as a result of an injury causing event for the health benefits it had paid to insureds from the insureds' tort recoveries wherein the Plaintiffs and class plaintiff insureds had not recovered medical expenses in their underlying litigation.

50. As a result of defendants' wrongful reimbursement demands and actions, Plaintiff and class members suffered harm and damages which include, by way of exemplification and not in limitation, the loss of use of money, the loss of interest on money, the loss of possession of their funds; the loss  enjoyment of their funds, their losses in having to free their funds from defendants' encumbrances and payment of money from their tort recoveries to Defendants.

## CLASS ALLEGATIONS

51. Plaintiffs, on behalf of themselves and other persons similarly situated, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

**A.    DEFINITION OF THE CLASS**

52. Plaintiffs, and the other similarly situated individuals, constitute a class under the Pennsylvania Rules of Civil Procedure.

53. The Proposed Classes are defined as:

a)    All of those individuals who had health insurance coverage through non-ERISA pre-empted plans issued by Geisinger in and subject to the laws of Pennsylvania, were injured and received health benefits from the defendant as a result of an injury causing event, and from whom Geisinger directly, or indirectly through its agent, Socrates, has asserted liens and/or demands for reimbursement from insureds' personal injury recoveries for the health benefits Geisinger paid to insureds;

b)    All of those individuals who had health insurance coverage through non-ERISA pre-empted plans issued by Geisinger in and subject to the laws of Pennsylvania, were injured and received health benefits from the defendant as a result of an injury causing event, and from whom Geisinger directly, or indirectly through its agent, Socrates, asserted liens and/or demands for reimbursement from insureds' personal injury recoveries for the health benefits Geisinger paid to insureds and actually secured reimbursement from the insureds' personal injury recoveries contrary to the policies and law.

c)    All of those individuals who had health insurance coverage through non-ERISA pre-empted plans issued by Geisinger in and subject to the laws of Pennsylvania, were injured and received health benefits from the defendant as a result of an injury causing event, and from whom Geisinger directly, or indirectly through its agent, Socrates, has asserted liens and/or demands for reimbursement from insureds' personal injury recoveries for the health benefits Geisinger paid to insureds without reducing its reimbursement demand or recovery by the pro-rata share attorney fees and expenses that the class plaintiff insureds incurred in their underlying litigation;

d)    All of those individuals who had health insurance coverage through non-ERISA pre-empted plans issued by Geisinger in and subject to the laws of Pennsylvania,

were injured and received health benefits from the
defendant as a result of an injury causing event, and
from whom Geisinger directly, or indirectly through its
agent, Socrates, has asserted liens and/or demands for
reimbursement from insureds' personal injury recoveries
for the health benefits Geisinger paid to insureds
before the class plaintiff insureds had first been made
whole and fully compensated for all of their damages
and losses contrary to the policies and law;

e)   All of those individuals who had health insurance
coverage through non-ERISA pre-empted plans issued by
Geisinger in and subject to the laws of Pennsylvania,
were injured and received health benefits from the
defendant as a result of an injury causing event, and
from whom Geisinger directly, or indirectly through its
agent, Socrates, has asserted liens and/or demands for
reimbursement from insureds' personal injury recoveries
for the health benefits Geisinger paid to insureds
wherein the class plaintiff insureds had not recovered
medical expenses in their underlying litigation.

**B.   NUMEROSITY**

54. The Class is so numerous as to render joinder of all
members impracticable as Geisinger is one of the largest health
insurers in Pennsylvania. The identities of a majority of the
Class members are presently unknown but are ascertainable through
appropriate discovery.

**C.   EXISTENCE AND PREDOMINANCE OF COMMON ISSUES**

55. Common questions of law and fact are applicable to all
members of the Class.

56. The common questions of law and fact arise from and
concern the following facts and actions:

a.   all Class members are covered by non-ERISA pre-empted
health insurance plans issued by Geisinger under and
subject to the laws of the State of Pennsylvania;

b.   all Class members received health benefits from
     Geisinger as a result of personal injuries they
     sustained in injury-causing events; and

c.   the Defendants asserted liens and/or demands for
     reimbursement to all of the Class members in violation
     of the terms of Geisinger's insurance policies.

57. The questions of law and fact common to the members of
the Class, as above noted, predominate over any questions
affecting only individual members, and thus, this class action is
superior to other available methods for the fair and efficient
adjudication of this controversy.

**D.   TYPICALITY**

58. Plaintiffs' claims are typical of the claims of other
members of the Class. All such claims arise out of the
Defendants' wrongful assertion of reimbursement demands against
the personal injury recoveries of Plaintiffs and the proposed
Class members. Plaintiffs and the proposed Class members have
suffered a common injury arising out of the Defendants' common
course of conduct as alleged herein.

**E.   ADEQUATE REPRESENTATION**

59. Plaintiffs will fairly and adequately protect and
represent the interests of the Class and have no interest
antagonistic to, or in conflict with, those of other Class
members.

60. Plaintiffs have the time and resources to prosecute this action and have retained qualified counsel who have had extensive experience in matters involving the rights of insureds and federal court litigation. Plaintiffs intend to prosecute this action vigorously for the benefit of the Class.

**F.    SUPERIORITY**

61. A class action is superior to other available methods for a fair and efficient adjudication of this controversy because individual joinder of all members of the Class is impractical. Furthermore, damages suffered by members of the Class may be relatively small when compared to the expense and burden of individual litigation, which would make it difficult or impossible for individual members of the Class to obtain relief. The interests of judicial economy favor adjudicating the claims of the Class on a classwide basis rather than an individual basis.

**G. RISKS OF INCONSISTENT OR VARYING ADJUDICATION**

62. Class treatment is proper in this proceeding in order to avoid inconsistent or varying adjudications with respect to individual Class members. Separate actions by individual members of the Class would create a risk that adjudication of disputed issues of law or fact as to some of the former non-bargaining unit employees would be binding upon other Class members not

party to the adjudication, or would otherwise substantially impair or impede their ability to protect their interests.

## G. DEFENDANTS ARE SUBJECT TO INJUNCTIVE OR DECLARATORY RELIEF

63. Pursuant to Federal law, defendants are subject to injunctive or declaratory relief.

### COUNT I
### VIOLATION OF THE TERMS OF THE INSURANCE POLICY

### LORI FREITAS v. GEISINGER and SOCRATES

64. Plaintiffs, on behalf of themselves and other persons similarly situated, repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

65. SOCRATES, acting as an agent for GEISINGER, asserted and continues to assert, a lien, subrogation claim and/or demand for repayment for the benefits which GEISINGER paid as against Plaintiff's and Class Members' personal injury recoveries.

66. In asserting such reimbursement demands, SOCRATES acted at the direction and behest, and with the permission and consent, of GEISINGER.

67. In asserting such reimbursement demands, SOCRATES acted within the course and scope of its retention by, and agency of, GEISINGER.

68. The plan terms provide, in relevant part:

"8.3 Subrogation. The Plan has the right of subrogation to the extent permitted by the law against third parties that are legally liable for the expenses paid by the Plan under this Certificate. The Member shall do nothing to prejudice the subrogation rights of the Plan. The Plan may recover

benefits amounts paid under this Certificate under the right of subrogation to the extent permitted by law."

69. Further, the plan terms state that the Plan has the right to subrogation only against "third parties that are legally liable for the expenses paid by the Plan[.]"

70. Subrogation is the substitution of one person in the place of another with reference to a lawful claim, demand  or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies or securities. Black's Law Dictionary (6th ed. 1990).

71. Accordingly, the plan terms provide for a right of subrogation against the "third parties that are legally liable for the expenses paid by the Plan," i.e., the tortfeasor of the underlying personal injury case. The plan terms do not permit or authorize a right of reimbursement against the member or the member's personal injury recovery directly.

72. Defendants' assertion of reimbursement demands as against Plaintiff's and Class Members' personal injury recoveries is a violation of the plan terms.

73. By taking the actions described above, Defendants violated the rights of Plaintiffs. Specifically, under the Plan, Plaintiffs have rights to health benefits that are not subject to lien, subrogation and/or repayment. Accordingly, Defendants' demands for lien, subrogation and/or repayment infringes upon and is in derogation of those rights.

74. Defendants' repudiation of the terms of the employee welfare benefit plan is actionable in this Court under ERISA § 502, 29 U.S.C. § 1132, which allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

75. Additionally, a participant suing under this provision is entitled to interest on any retroactive amounts awarded.

76. Furthermore, the defendants, GEISINGER and SOCRATES, wrongfully asserted claims for reimbursement, continue to wrongfully assert claims for reimbursement or have wrongfully secured payment in reimbursement from LORI FREITAS and class plaintiffs who were injured and received health benefits from the defendant as a result of an injury causing event for the health benefits it had paid to insureds from the insureds' tort recoveries contrary to the policies and law.

77. Furthermore, the defendants, GEISINGER and SOCRATES, wrongfully asserted claims for reimbursement, continue to wrongfully assert claims for reimbursement or have wrongfully secured payment in reimbursement from LORI FREITAS and class plaintiffs who were injured and received health benefits from the defendant as a result of an injury causing event for the health benefits it had paid to insureds from the insureds' tort recoveries without reducing its reimbursement demand or recovery

by the pro-rata share attorney fees and expenses that the class
plaintiff insureds incurred in their underlying litigation
contrary to the policies and law.

78. Furthermore, the defendants, GEISINGER and SOCRATES,
wrongfully asserted claims for reimbursement, continue to
wrongfully assert claims for reimbursement or have wrongfully
secured payment in reimbursement from LORI FREITAS and class
plaintiffs who were injured and received health benefits from the
defendant as a result of an injury causing event for the health
benefits it had paid to insureds from the insureds' tort
recoveries before the class plaintiff insureds had first been
made whole and fully compensated for all of their damages and
losses contrary to the policies and law.

79. Furthermore, the defendants, GEISINGER and SOCRATES,
wrongfully asserted claims for reimbursement, continue to
wrongfully assert claims for reimbursement or have wrongfully
secured payment in reimbursement from LORI FREITAS and class
plaintiffs who were injured and received health benefits from the
defendant as a result of an injury causing event for the health
benefits it had paid to insureds from the insureds' tort
recoveries wherein the class plaintiff insureds had not recovered
medical expenses in their underlying litigation.

80.  The defendants, GEISINGER and SOCRATES, have no right
to reimbursement and may not assert any right of reimbursement on
the actions as set forth above.

81. As a result of defendants' wrongful reimbursement demands and actions, Plaintiff and class members suffered harm and damages which include, by way of exemplification and not in limitation, the loss of use of money, the loss of interest on money, the loss of possession of their funds; the loss  enjoyment of their funds, their losses in having to free their funds from defendants' encumbrances and payment of money from their tort recoveries to Defendants.

82.  As a result, the plaintiff, LORI FREITAS, and each GEISINGER insured and member of the class, is entitled to a declaration that the defendants, GEISINGER and SOCRATES:

a)    have no right of reimbursement from class plaintiffs who were injured and received health benefits from the defendant as a result of an injury causing event for the health defendant had paid to insureds from the insureds' tort recoveries contrary to the policies and law.

b)    have no right of reimbursement without reducing its reimbursement demand or recovery by the pro-rata share attorney fees and expenses that the class plaintiff insureds incurred in their underlying litigation contrary to the policies and law.

c)    have no right of reimbursement before the class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses contrary to law.

d)    have no right of reimbursement wherein the class plaintiff insureds had not recovered medical expenses in their underlying litigation.

83.  The controversy poses an issue for judicial determination under the Declaratory Judgment Act.

84. The controversy involves substantial rights of the parties to the action.

85. The controversy poses an issue for judicial determination by this Court at this time.

86. A judgment of this Court in this action will serve a useful purpose in clarifying and settling the legal relations at issue between the parties.

87. A judgment of this Court will determine, terminate and afford relief from the uncertainty and controversy giving rise to this action.

88. As a result of defendants' wrongful reimbursement demands and actions, Plaintiff and class members suffered harm and damages  which include, by way of exemplification and not in limitation, the loss of use of money, the loss of interest on money, the loss of possession of their funds, the loss  enjoyment of their funds, their losses in having to free their funds from defendants' encumbrances, and payment of money from their tort recoveries to the defendant.

89. The plaintiff, LORI FREITAS, and each GEISINGER insured and member of the class is entitled to a declaration as to the propriety of Defendants' actions alleged herein.

90. Further, as a result of Defendants' violation of the terms of the plan, Plaintiffs are entitled to relief under ERISA § 502(a)(1)(B)) as against the defendants.

## COUNT II
## BREACH OF FIDUCIARY DUTY - DUTY OF LOYALTY

### <u>LORI FREITAS v. GEISINGER and SOCRATES</u>

91. Plaintiffs, on behalf of themselves and other persons similarly situated, repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

92. At all relevant times, Defendants GEISINGER and SOCRATES were fiduciaries of the Plan, as Defendants exercised discretionary authority, control or responsibility for administration or management of the Plan and management or disposition of Plan within the meaning of ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

93. At all relevant times, both GEISINGER and SOCRATES exercised final discretionary authority, control and/or responsibility for administration or management of the Plan and management or disposition of Plan assets within the meaning of ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

94. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), imposes on Plan fiduciaries a duty of loyalty, that is, a duty to discharge her duties with respect to a Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries.

95. As fiduciaries of the Plan, Defendants GEISINGER and SOCRATES were obligated to discharge their duties solely in the

interests of Plaintiffs, who are Plan participants and
beneficiaries, and for the exclusive purpose of providing
benefits to participants and beneficiaries.

96. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3),
participants and beneficiaries may sue "to enjoin any act or
practice which violates any provision of this subchapter [e.g.,
fiduciary provisions] or the terms of the plan, or . . . to
obtain other appropriate equitable relief . . . to redress such
violations or . . . to enforce any provisions of this subchapter
or the terms of the plan."

97. Instantly, Defendants GEISINGER and SOCRATES exercised
discretionary authority, control or responsibility in their role
as fiduciaries for their own benefit, interest and advantage.

98. Further, Defendants GEISINGER and SOCRATES had a
conflict in that Defendants GEISINGER and SOCRATES, in the
exercise of their discretionary authority, control and
responsibility as fiduciaries with a fiduciary duty to the
Plaintiff and Class Members, placed themselves into position to
make decisions and take actions, and then did make decisions and
took actions, that pitted Defendants GEISINGER and SOCRATES'
interests against those of the Plaintiff and Class Members to
whom Defendants GEISINGER and SOCRATES owed a fiduciary duty.

99. Defendants GEISINGER and SOCRATES breached their duty to
avoid conflicts of interest by administering the Plan in a way
favorable to themselves and adversely to the participants and

beneficiaries and by otherwise placing their own interests above the interests of the participants and beneficiaries.

100. More specifically, if Defendants GEISINGER and SOCRATES pursued and secured reimbursement money from Plaintiff and Class Members, the reimbursement money Defendants GEISINGER and SOCRATES received from Plaintiff and Class Members would go to Defendants GEISINGER and SOCRATES. Accordingly, there was a "sum zero" scenario in which either Defendants GEISINGER and SOCRATES would take money or the Plaintiff and Class Members would keep money.

101. Defendants GEISINGER and SOCRATES placed themselves into a position to make decisions and to take actions whether reimbursement against the Plaintiff and Class Members was proper and then whether to pursue reimbursement against Plaintiff and Class Members.

102. In sum, in its role as a fiduciary to FREITAS, Defendants GEISINGER and SOCRATES had to decide who would get money - Defendants GEISINGER and SOCRATES or FREITAS - and Defendants GEISINGER and SOCRATES chose themselves.

103. Even further, Defendants GEISINGER and SOCRATES not only breached their duty to avoid conflicts of interest, Defendants GEISINGER and SOCRATES acted in actual conflict with Plaintiff and Class Members.

104. In that regard, Defendants GEISINGER and SOCRATES further breached their fiduciary duty of loyalty to FREITAS and

the class members by exercising discretionary authority, control and responsibility through their actions to pursue and recover reimbursement from Plaintiff and Class Members when such actions were in violation of the law and in violation of the Employee Welfare Benefit Plan.

105. Defendants GEISINGER and SOCRATES not only breached their duty to avoid conflicts of interest but acted in actual conflict with ERISA beneficiaries by demanding and taking money in reimbursement from ERISA beneficiaries wherein Defendants GEISINGER and SOCRATES did not reduce their reimbursement demand or recovery by the pro-rata share attorney fees and expenses that the class plaintiff insureds incurred in their underlying litigation in violation of the Employee Benefit Plan.

106. Defendants GEISINGER and SOCRATES not only breached their duty to avoid conflicts of interest but acted in actual conflict with ERISA beneficiaries by demanding and taking money in reimbursement from ERISA beneficiaries before the class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses.

107. Defendants GEISINGER and SOCRATES not only breached their duty to avoid conflicts of interest but acted in actual conflict with ERISA beneficiaries by demanding and taking money in reimbursement from ERISA beneficiaries wherein the class plaintiff insureds had not recovered medical expenses in their underlying litigation.

108. Defendants GEISINGER and SOCRATES' pursuit, enforcement and collection of liens from ERISA beneficiaries as aforesaid violated its fiduciary duty to Plaintiffs with each act constituting its own violation and claim or cause of action in its own right.

109. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plaintiff and Class Members have already, and will continue to, suffer actual harm in the absence of relief.

110.  Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a), and ERISA §404, 29 U.S.C. §1104(a), Defendants in this Count are liable to restore the losses caused by their breaches of fiduciary duties.

111. As a result of defendants' violation of the fiduciary duty, Plaintiffs are entitled to relief as against the defendants.

112. The actions of the defendant are a breach of ERISA, the underlying policy and of the Employee Welfare Benefit Plan which has caused ERISA beneficiaries insureds to suffer losses as a result.

113. As a result of defendants' wrongful reimbursement demands and actions, Plaintiff and ERISA beneficiary class members suffered harm and damages which include, by way of exemplification and not in limitation, the loss of use of money, the loss of interest on money, the loss of possession of their

funds, the loss  enjoyment of their funds, their losses in having
to free their funds from defendants' encumbrances, and payment of
money from their tort recoveries to the defendant.

114. Each Defendant is jointly liable for the acts of the
other Defendants as a co-fiduciary.


**COUNT III**
**BREACH OF FIDUCIARY DUTY - DUTY TO DISCLOSE**

**LORI FREITAS v. GEISINGER and SOCRATES**

115. Plaintiffs, on behalf of themselves and other persons
similarly situated, repeat and re-allege the allegations of the
preceding paragraphs as if fully restated herein.

116. At all relevant times, Defendants GEISINGER and
SOCRATES were fiduciaries of the Plan, as they exercised
discretionary authority, control or responsibility for
administration or management of the Plan and management or
disposition of Plan within the meaning of ERISA. ERISA §
3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

117. At all relevant times, both GEISINGER and SOCRATES
exercised final discretionary authority, control and/or
responsibility for administration or management of the Plan and
management or disposition of Plan assets within the meaning of
ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-
(iii).

118. ERISA imposes a duty to Disclose Complete and Accurate
Information and to avoid misrepresentations.

119. ERISA fiduciaries have a duty to disclose complete and accurate information about benefits to plan beneficiaries.

120. ERISA fiduciaries may not affirmatively make material misrepresentations and may not strategically withhold material information.

121. A plan administrator may not materially misrepresent, either negligently or intentionally, modifications to an employee pension benefits plan. Put simply, when a plan administrator speaks, it must speak truthfully.

122. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), participants and beneficiaries may sue "to enjoin any act or practice which violates any provision of this subchapter [*e.g.*, fiduciary provisions] or the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations or . . . to enforce any provisions of this subchapter or the terms of the plan."

123. Defendants GEISINGER and SOCRATES made repeated and pervasive representations that Geisinger was legally entitled to lien, subrogation and/or repayment as from Plaintiff's personal injury recoveries.

124. Defendants GEISINGER and SOCRATES, through their conduct, actively, affirmatively and systematically misinformed the Geisinger insureds that it was entitled to reimbursement from the insureds' respective personal injury recoveries.

125. Defendants GEISINGER and SOCRATES, through their conduct, actively and systemically recovered from Geisinger insureds literally millions of dollars in repayments as to which Geisinger was not legally entitled.

126. The defendants, GEISINGER and SOCRATES, continuously, systematically, and inaccurately did not disclose to Plaintiff and Class Members that DEFENDANTS were not entitled to reimbursement: wherein the defendant did not reduce its reimbursement demand or recovery by the pro-rata share attorney fees and expenses that the class plaintiff insureds incurred in their underlying litigation in violation of the Employee Benefit Plan; before the class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses; and wherein the class plaintiff insureds had not recovered medical expenses in their underlying litigation in violation of the Employee Benefit Plan.

127. GEISINGER and SOCRATES's disclosures to LORI FREITAS and the class members were inaccurate as being both contrary to law and contrary to the Employee Welfare Benefits Plan.

128. Plaintiff LORI FREITAS and class ERISA beneficiaries are legally entitled to enjoin GEISINGER and SOCRATES's reimbursement actions and practices that violate ERISA and the Employee Welfare Benefit Plan (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)(a).

129. Furthermore, as an ERISA fiduciary with a duty to disclose complete and accurate information to ERISA beneficiaries, Defendants are required to notify and disclose to LORI FREITAS and all class ERISA beneficiaries against whom it asserted reimbursement or received reimbursement repayment, that GEISINGER and SOCRATES were not entitled to reimbursement: wherein the defendant did not reduce its reimbursement demand or recovery by the pro-rata share attorney fees and expenses that the class plaintiff insureds incurred in their underlying litigation in violation of the Employee Benefit Plan; before the class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses; and wherein the class plaintiff insureds had not recovered medical expenses in their underlying litigation in violation of the Employee Benefit Plan.

130. GEISINGER and SOCRATES's conduct, as set forth above, violated their fiduciary duty to Plaintiffs.

131. Pursuant to ERISA §404, 29 U.S.C. §1104(a), Defendants GEISINGER and SOCRATES are liable to restore the losses caused by their breaches of fiduciary duties.

132. The actions of Defendant are a breach ERISA which has caused LORI FREITAS and other class members to suffer losses as a result.

133. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plaintiffs will continue to

suffer actual harm in the absence of relief.

134. Each Defendant is jointly liable for the acts of the other Defendants as a co-fiduciary.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY – DUTY TO ACT IN ACCORDANCE WITH THE DOCUMENTS GOVERNING THE PLAN**

**LORI FREITAS v. GEISINGER and SOCRATES**

135. Plaintiffs, on behalf of themselves and other persons similarly situated, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

136. At all relevant times, Defendants GEISINGER and SOCRATES were fiduciaries of the Plan, as they exercised discretionary authority, control or responsibility for administration or management of the Plan and management or disposition of Plan within the meaning of ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

137. At all relevant times, both GEISINGER and SOCRATES exercised final discretionary authority, control and/or responsibility for administration or management of the Plan and management or disposition of Plan assets within the meaning of ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

138. Under ERISA, ERISA fiduciaries are specifically charged with the fiduciary duty to act in accordance with the documents governing the plan. ERISA § 404(a)(1)(D), 29 U.S.C. §

1104(a)(1)(D).

139. Defendants' failure to act in accordance with the documents governing the Plan ipso facto constitutes a violation of Defendants' fiduciary duty under ERISA § 404, 29 U.S.C. § 1104.

140. GEISINGER and SOCRATES's conduct, as set forth above, violated their fiduciary duty to Plaintiffs.

141. Pursuant to ERISA §404, 29 U.S.C. §1104(a), Defendants GEISINGER and SOCRATES are liable to restore the losses caused by their breaches of fiduciary duties.

142. The actions of Defendant are a breach ERISA which has caused LORI FREITAS and other class members to suffer losses as a result.

143. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plaintiffs will continue to suffer actual harm in the absence of relief.

144. Each Defendant is jointly liable for the acts of the other Defendants as a co-fiduciary.

### COUNT V
### BREACH OF FIDUCIARY DUTY - FAILURE TO ACT IN ACCORDANCE WITH ERISA COMMON LAW

### LORI FREITAS v. GEISINGER and SOCRATES

145. Plaintiff, on behalf of herself and other persons similarly situated, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

146. At all relevant times, Defendants GEISINGER and SOCRATES were fiduciaries of the Plan, as they exercised discretionary authority, control or responsibility for administration or management of the Plan and management or disposition of Plan within the meaning of ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

147. At all relevant times, both GEISINGER and SOCRATES exercised final discretionary authority, control and/or responsibility for administration or management of the Plan and management or disposition of Plan assets within the meaning of ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

148. Under ERISA, ERISA fiduciaries are specifically charged with the fiduciary duty to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

149. Further, under ERISA, ERISA fiduciaries are charged with the fiduciary duty to act in accordance with the provisions of ERISA.

150. Defendants failed to reduce their reimbursement demands or recoveries by the pro-rata share of attorney fees and expenses that the class plaintiff insureds incurred in their underlying

litigation contrary to law; by seeking recovery and collecting reimbursement before the class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses contrary to law; and by seeking recovery and collecting reimbursement for medical expenses even though the class plaintiff insureds had not recovered medical expenses in their underlying litigation, contrary to law.

151. GEISINGER and SOCRATES's conduct, as set forth above, violated their fiduciary duty to Plaintiffs.

152. Pursuant to ERISA §404, 29 U.S.C. §1104(a), Defendants GEISINGER and SOCRATES are liable to restore the losses caused by their breaches of fiduciary duties.

153. The actions of Defendant are a breach ERISA which has caused LORI FREITAS and other class members to suffer losses as a result.

154. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plaintiffs will continue to suffer actual harm in the absence of relief.

155. As a result of Defendants' violation of the fiduciary duty, Plaintiff and Class Members are entitled to relief as against Defendants.

156. Each Defendant is jointly liable for the acts of the other Defendants as a co-fiduciary.

**COUNT VI**
**BREACH OF FIDUCIARY DUTY – DEFENDANTS' FAILURE TO ESTABLISH**
**AND/OR FOLLOW REASONABLE CLAIMS PROCEDURES**

**<u>LORI FREITAS v. GEISINGER and SOCRATES</u>**

157. Plaintiffs, on behalf of themselves and other persons similarly situated, repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

158. At all relevant times, Defendants GEISINGER and SOCRATES were fiduciaries of the Plan, as they exercised discretionary authority, control or responsibility for administration or management of the Plan and management or disposition of Plan within the meaning of ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

159. At all relevant times, both GEISINGER and SOCRATES exercised final discretionary authority, control and/or responsibility for administration or management of the Plan and management or disposition of Plan assets within the meaning of ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

160. ERISA imposes a duty to disclose complete and accurate information.

161. Further, ERISA fiduciaries are specifically charged with the fiduciary duty to act in accordance with the documents governing the plan. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

162. Further, ERISA fiduciaries are specifically charged with the fiduciary duty to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

163. Further, ERISA fiduciaries are charged with the fiduciary duty to act in accordance with the provisions of ERISA.

164. Under ERISA, every employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations.

165. In that regard, in order for the appeals procedures to be deemed reasonable, every employee benefit plan must, among other requirements, contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants

166. Further, the claims procedures must not contain any provision, and must not be administered in a way, that requires a claimant to file more than two appeals of an adverse benefit determination prior to bringing a civil action under section

502(a) of the Act.

167. Further, to the extent that the plan offers any voluntary level of appeals, the claims procedures must provide that the plan waives any right to assert that a claimant has failed to exhaust administrative remedies because the claimant did not elect to submit a benefit dispute to any such voluntary level of appeal provided by the plan.

168. In the event that a plan fails to establish and follow reasonable claims procedures, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim. 29 CFR § 2560.503-1(l).

169. As demonstrated herein, the plan has failed to establish and follow reasonable claims procedures as it relates to the plan's claim for reimbursement against Plaintiff.

170. First, the plan did not establish reasonable claims procedures in violation of ERISA because the plan purports to require that Plaintiff exhaust three levels of appeal before pursuing her rights under ERISA.

171. The plan contains three levels of appeal: two internal appeals and an external appeal.

172. The plan does not indicate that any appeal procedure is voluntary. In fact, the plan states that an insured "has the

right to bring civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA) once **all** administrative remedies have been exhausted[].” Ex. B, p.46 (emphasis added).

173. Even though the plan language above indicates that all three levels of appeal are required before suit may be filed, to the extent that any appeal procedure is actually voluntary and not required to be exhausted prior to following suit, the plan does not state that the plan waives any right to assert that a claimant has failed to exhaust administrative remedies because the claimant did not elect to submit a benefit dispute to any such voluntary level of appeal provided by the plan.

174. Second, the plan did not follow its administrative processes or safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents.

175. As previously demonstrated, the plan documents provide only that the plan is permitted to assert a right of subrogation against a third party and do not permit claims for reimbursement directly against the insured.

176. The plan did not follow its administrative processes or safeguards designed to ensure that the plan complies with its own terms that it is only permitted to assert a subrogation claim against a third party and not a reimbursement claim directly against an insured.

177. Further, the plan documents do not permit any claim by the plan, whether through subrogation or otherwise, without first reducing the plan's claim by attorney fees and expenses, ensuring the insured was made whole through her personal injury recovery against the third-party, and ascertaining whether the insured had recovered medical expenses from the third party in her personal injury recovery.

178. The plan did not follow its administrative processes or safeguards designed to ensure that when the plan asserts any claim, whether through subrogation or otherwise, that the plan reduces its claim by attorney fees and expenses, ensures the insured was made whole through her personal injury recovery against the third-party, and ascertains whether the insured had recovered medical expenses from the third party in her personal injury recovery.

179. Instead, in determining whether to assert its claims for reimbursement against its own insureds, Defendants adhered to an across-the-board policy that it will pursue reimbursement directly against its insured rather than against the third party responsible for its insured's injury in accordance with the plan terms.

180. This policy to pursue reimbursement directly against its insured rather than against the third party responsible for its insured's injury is the result of Defendants' placement of its own financial interests before its insureds' financial

interests.

181. Specifically, Defendants' policy to pursue
reimbursement directly against its insured rather than against
the third party responsible for its insured's injury exists
solely because it is cheaper and easier for the plan to shift the
burden and expense of hiring counsel onto its own insureds than
it is for the plan to pursue the subrogation rights it bargained
for under the plan terms.

182. Accordingly, the plan did not follow its administrative
processes or safeguards designed to ensure and to verify that its
decision to seek reimbursement was made in accordance with
governing plan documents, but instead determined that it was
entitled to reimbursement against Plaintiff according to its own
motivation to place its own financial interests before its
insureds' financial interests

183. Third, the plan did not follow its administrative
processes when it failed to provide Plaintiff a Notice of Adverse
Benefits Determination as required by ERISA and federal
regulations.

184. GEISINGER, which identifies itself as "the Plan" in the
Plan document and holds itself out to plan members as "the Plan"
(Group Subscription Certificate, p. i), is required under ERISA
to provide adequate notice in writing to any participant or
beneficiary whose claim for benefits under the plan has been
denied, setting forth the specific reasons for such denial,

written in a manner calculated to be understood by the
participant, and afford a reasonable opportunity to any
participant whose claim for benefits has been denied for a full
and fair review by the appropriate named fiduciary of the
decision denying the claim.

185. ERISA requires that, in the event the plan makes an
adverse benefits determination, the claimant must be provided a
written or electronic notification of any adverse benefit
determination with the following content:

(i) The specific reason or reasons for the adverse
determination;

(ii) Reference to the specific plan provisions on which the
determination is based;

(iii) A description of any additional material or
information necessary for the claimant to perfect the claim
and an explanation of why such material or information is
necessary;

(iv) A description of the plan's review procedures and the
time limits applicable to such procedures, including a
statement of the claimant's right to bring a civil action
under section 502(a) of the Act following an adverse benefit
determination on review;

(v) In the case of an adverse benefit determination by a
group health plan -

(A) If an internal rule, guideline, protocol, or other
similar criterion was relied upon in making the adverse
determination, either the specific rule, guideline,
protocol, or other similar criterion; or a statement
that such a rule, guideline, protocol, or other similar
criterion was relied upon in making the adverse
determination and that a copy of such rule, guideline,
protocol, or other criterion will be provided free of
charge to the claimant upon request;

29 CFR § 2560.503-1(g).

186. GEISINGER did not issue any notice of an adverse benefits determination in compliance with ERISA requirements.

187. SOCRATES, on behalf of GEISINGER, did not issue any notice of an adverse benefits determination in compliance with ERISA requirements.

188. Defendants did not issue any Notice of Adverse Benefits Determination at all.

189. The plan's claims appeal procedures contain two different appeals processes: one for Complaints, and one for Grievances. Complaints purportedly cover issues regarding coverage, Participating Providers, or the operations or management policies of the Plan. Grievances purportedly cover issues regarding denial of payment for a health care service based on Medical Necessity and appropriateness of care.

190. Defendants' decision to seek subrogation and/or reimbursement of benefits paid to Plaintiff from her tort recovery does not clearly fit into either appeal process.

191. Defendants did not provide any notice of adverse benefits determination informing Plaintiff which appeal process to use if she disputed Defendants' decision to seek subrogation and/or reimbursement of benefits paid to Plaintiff from her tort recovery.

192. Indeed, Defendants did not provide any notice or document to Plaintiff informing her that she was even permitted to appeal Defendants' decision to seek subrogation and/or

reimbursement of benefits paid to Plaintiff from her tort recovery.

193. Without being provided the proper notice of adverse benefits determination in accordance with ERISA, Plaintiff was not apprized of the proper procedures contained in the governing Plan document for appealing Defendants' decision to seek subrogation and/or reimbursement of benefits paid to Plaintiff from her tort recovery, which appeal process to use regarding her dispute of Defendants' decision to seek subrogation and/or reimbursement of benefits paid to Plaintiff from her tort recovery, or if an appeal was even required.

194. Accordingly, the plan failed to follow ERISA or the plan document's terms regarding adverse benefits determinations when it failed to issue a Notice of Adverse Benefits Determination to Plaintiff informing Plaintiff that the plan's appeal procedures were available to her, what those appeal procedures were, and the time limits applicable to those procedures.

195. In sum:

- The plan did not establish reasonable claims procedures because the plan impermissibly requires three levels of appeal prior to filing suit, in violation of 29 CFR § 2560.503-1(c)(2);

- The plan did not follow its administrative processes or safeguards designed to ensure and to verify that its decision to seek reimbursement was made in accordance with governing plan documents, in violation of 29 C.F.R. § 2560.503-1(b)(5);

- The plan did not follow ERISA or the plan document's terms regarding adverse benefits determinations when it failed to provide Plaintiff a Notice of Adverse Benefits Determination as required by ERISA and federal regulations. 29 C.F.R. § 2560.503-1(f).

196. Accordingly, for the aforementioned reasons, the plan failed to establish and/or follow reasonable claims procedures governing the notification of benefit determinations and the appeal of adverse benefit determinations under ERISA.

197. As previously stated, where a plan fails to establish and/or follow reasonable claims procedures, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act. 29 CFR § 2560.503-1(l).

198. As a result of the aforementioned violations of their fiduciary duty, Plaintiff has been denied meaningful access to the Plan's administrative procedures and denied a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision to seek subrogation and/or reimbursement of Plaintiff's benefits.

199. Further, as a result of Defendants' aforementioned actions and failures, Defendants have violated their fiduciary duties under ERISA of disclosing complete and accurate information, acting in accordance with the documents governing the plan, acting with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in

the conduct of an enterprise of a like character and with like aims, and acting in accordance with the provisions of ERISA.

200. Pursuant to ERISA §404, 29 U.S.C. §1104(a), Defendants GEISINGER and SOCRATES are liable to restore the losses caused by their breaches of fiduciary duties.

201. The actions of Defendant are a breach of ERISA which has caused LORI FREITAS and other class members to suffer losses as a result.

202. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plaintiffs will continue to suffer actual harm in the absence of relief.

203. Each Defendant is jointly liable for the acts of the other Defendants as a co-fiduciary.

## COUNT VII
## VIOLATION OF THE TERMS OF THE INSURANCE POLICY

### KAYLEE MCWILLIAMS v. GEISINGER and SOCRATES

204. Plaintiffs, on behalf of themselves and other persons similarly situated, repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

205. SOCRATES, acting as an agent for GEISINGER, asserted and continues to assert, a lien, subrogation claim and/or demand for repayment for the benefits which GEISINGER paid as against Plaintiff's and Class Members' personal injury recoveries.

206. In asserting such reimbursement demands, SOCRATES acted at the direction and behest, and with the permission and consent,

of GEISINGER.

207. In asserting such reimbursement demands, SOCRATES acted within the course and scope of its retention by, and agency of, GEISINGER.

208. The plan terms provide, in relevant part:

"8.3 Subrogation. The Plan has the right of subrogation to the extent permitted by the law against third parties that are legally liable for the expenses paid by the Plan under this Certificate. The Member shall do nothing to prejudice the subrogation rights of the Plan. The Plan may recover benefits amounts paid under this Certificate under the right of subrogation to the extent permitted by law."

209. Further, the plan terms state that the Plan has the right to subrogation only against "third parties that are legally liable for the expenses paid by the Plan[.]"

210. Subrogation is the substitution of one person in the place of another with reference to a lawful claim, demand  or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies or securities. Black's Law Dictionary (6th ed. 1990).

211. Accordingly, the plan terms provide for a right of subrogation against the "third parties that are legally liable for the expenses paid by the Plan," i.e., the tortfeasor of the underlying personal injury case. The plan terms do not permit or authorize a right of reimbursement against the member or the member's personal injury recovery directly.

212. Defendants' assertion of reimbursement demands as against Plaintiff's and Class Members' personal injury recoveries

is a violation of the plan terms.

213. By taking the actions described above, Defendants violated the rights of Plaintiffs. Specifically, under the Plan, Plaintiffs have rights to health benefits that are not subject to lien, subrogation and/or repayment. Accordingly, Defendants' demands for lien, subrogation and/or repayment infringes upon and is in derogation of those rights.

214. Defendants' repudiation of the terms of the employee welfare benefit plan is actionable in this Court under ERISA § 502, 29 U.S.C. § 1132, which allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

215. Additionally, a participant suing under this provision is entitled to interest on any retroactive amounts awarded.

216. Furthermore, the defendants, GEISINGER and SOCRATES, wrongfully asserted claims for reimbursement, continue to wrongfully assert claims for reimbursement or have wrongfully secured payment in reimbursement from KAYLEE MCWILLIAMS and class plaintiffs who were injured and received health benefits from the defendant as a result of an injury causing event for the health benefits it had paid to insureds from the insureds' tort recoveries contrary to the policies and law.

217. Furthermore, the defendants, GEISINGER and SOCRATES, wrongfully asserted claims for reimbursement, continue to wrongfully assert claims for reimbursement or have wrongfully secured payment in reimbursement from KAYLEE MCWILLIAMS and class plaintiffs who were injured and received health benefits from the defendant as a result of an injury causing event for the health benefits it had paid to insureds from the insureds' tort recoveries without reducing its reimbursement demand or recovery by the pro-rata share attorney fees and expenses that the class plaintiff insureds incurred in their underlying litigation contrary to the policies and law.

218. Furthermore, the defendants, GEISINGER and SOCRATES, wrongfully asserted claims for reimbursement, continue to wrongfully assert claims for reimbursement or have wrongfully secured payment in reimbursement from KAYLEE MCWILLIAMS and class plaintiffs who were injured and received health benefits from the defendant as a result of an injury causing event for the health benefits it had paid to insureds from the insureds' tort recoveries before the class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses contrary to the policies and law.

219. Furthermore, the defendants, GEISINGER and SOCRATES, wrongfully asserted claims for reimbursement, continue to wrongfully assert claims for reimbursement or have wrongfully secured payment in reimbursement from KAYLEE MCWILLIAMS and class

plaintiffs who were injured and received health benefits from the defendant as a result of an injury causing event for the health benefits it had paid to insureds from the insureds' tort recoveries wherein the class plaintiff insureds had not recovered medical expenses in their underlying litigation.

220. The defendants, GEISINGER and SOCRATES, have no right to reimbursement and may not assert any right of reimbursement on the actions as set forth above.

221. As a result of defendants' wrongful reimbursement demands and actions, Plaintiff and class members suffered harm and damages which include, by way of exemplification and not in limitation, the loss of use of money, the loss of interest on money, the loss of possession of their funds; the loss  enjoyment of their funds, their losses in having to free their funds from defendants' encumbrances and payment of money from their tort recoveries to Defendants.

222. As a result, the plaintiff, KAYLEE MCWILLIAMS, and each GEISINGER insured and member of the class, is entitled to a declaration that the defendants, GEISINGER and SOCRATES:

a) have no right of reimbursement from class plaintiffs who were injured and received health benefits from the defendant as a result of an injury causing event for the health defendant had paid to insureds from the insureds' tort recoveries contrary to the policies and law.

b) have no right of reimbursement without reducing its reimbursement demand or recovery by the pro-rata share attorney fees and expenses that the class plaintiff insureds incurred in their underlying litigation contrary to the policies and law.

c)    have no right of reimbursement before the class
      plaintiff insureds had first been made whole and fully
      compensated for all of their damages and losses
      contrary to law.

d)    have no right of reimbursement wherein the class
      plaintiff insureds had not recovered medical expenses
      in their underlying litigation.

223. The controversy poses an issue for judicial
determination under the Declaratory Judgment Act.

224. The controversy involves substantial rights of the
parties to the action.

225. The controversy poses an issue for judicial
determination by this Court at this time.

226. A judgment of this Court in this action will serve a
useful purpose in clarifying and settling the legal relations at
issue between the parties.

227. A judgment of this Court will determine, terminate and
afford relief from the uncertainty and controversy giving rise to
this action.

228. As a result of defendants' wrongful reimbursement
demands and actions, Plaintiff and class members suffered harm
and damages  which include, by way of exemplification and not in
limitation, the loss of use of money, the loss of interest on
money, the loss of possession of their funds, the loss  enjoyment
of their funds, their losses in having to free their funds from
defendants' encumbrances, and payment of money from their tort
recoveries to the defendant.

229. The plaintiff, KAYLEE MCWILLIAMS, and each GEISINGER insured and member of the class is entitled to a declaration as to the propriety of Defendants' actions alleged herein.

230. Further, as a result of Defendants' violation of the terms of the plan, Plaintiffs are entitled to relief under ERISA § 502(a)(1)(B)) as against the defendants.

## COUNT VIII
### BREACH OF FIDUCIARY DUTY - DUTY OF LOYALTY

### <u>KAYLEE MCWILLIAMS v. GEISINGER and SOCRATES</u>

231. Plaintiffs, on behalf of themselves and other persons similarly situated, repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

232. At all relevant times, Defendants GEISINGER and SOCRATES were fiduciaries of the Plan, as Defendants exercised discretionary authority, control or responsibility for administration or management of the Plan and management or disposition of Plan within the meaning of ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

233. At all relevant times, both GEISINGER and SOCRATES exercised final discretionary authority, control and/or responsibility for administration or management of the Plan and management or disposition of Plan assets within the meaning of ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

234. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), imposes on Plan fiduciaries a duty of loyalty, that is, a duty to discharge her duties with respect to a Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries.

235. As fiduciaries of the Plan, Defendants GEISINGER and SOCRATES were obligated to discharge their duties solely in the interests of Plaintiffs, who are Plan participants and beneficiaries, and for the exclusive purpose of providing benefits to participants and beneficiaries.

236. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), participants and beneficiaries may sue "to enjoin any act or practice which violates any provision of this subchapter [e.g., fiduciary provisions] or the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations or . . . to enforce any provisions of this subchapter or the terms of the plan."

237. Instantly, Defendants GEISINGER and SOCRATES exercised discretionary authority, control or responsibility in their role as fiduciaries for their own benefit, interest and advantage.

238. Further, Defendants GEISINGER and SOCRATES had a conflict in that Defendants GEISINGER and SOCRATES, in the exercise of their discretionary authority, control and responsibility as fiduciaries with a fiduciary duty to the

Plaintiff and Class Members, placed themselves into position to
make decisions and take actions, and then did make decisions and
took actions, that pitted Defendants GEISINGER and SOCRATES'
interests against those of the Plaintiff and Class Members to
whom Defendants GEISINGER and SOCRATES owed a fiduciary duty.

239. Defendants GEISINGER and SOCRATES breached their duty
to avoid conflicts of interest by administering the Plan in a way
favorable to themselves and adversely to the participants and
beneficiaries and by otherwise placing their own interests above
the interests of the participants and beneficiaries.

240. More specifically, if Defendants GEISINGER and SOCRATES
pursued and secured reimbursement money from Plaintiff and Class
Members, the reimbursement money Defendants GEISINGER and
SOCRATES received from Plaintiff and Class Members would go to
Defendants GEISINGER and SOCRATES. Accordingly, there was a "sum
zero" scenario in which either Defendants GEISINGER and SOCRATES
would take money or the Plaintiff and Class Members would keep
money.

241. Defendants GEISINGER and SOCRATES placed themselves
into a position to make decisions and to take actions whether
reimbursement against the Plaintiff and Class Members was proper
and then whether to pursue reimbursement against Plaintiff and
Class Members.

242. In sum, in its role as a fiduciary to FREITAS,
Defendants GEISINGER and SOCRATES had to decide who would get

money - Defendants GEISINGER and SOCRATES or FREITAS - and
Defendants GEISINGER and SOCRATES chose themselves.

243. Even further, Defendants GEISINGER and SOCRATES not
only breached their duty to avoid conflicts of interest,
Defendants GEISINGER and SOCRATES acted in actual conflict with
Plaintiff and Class Members.

244. In that regard, Defendants GEISINGER and SOCRATES
further breached their fiduciary duty of loyalty to FREITAS and
the class members by exercising discretionary authority, control
and responsibility through their actions to pursue and recover
reimbursement from Plaintiff and Class Members when such actions
were in violation of the law and in violation of the Employee
Welfare Benefit Plan.

245. Defendants GEISINGER and SOCRATES not only breached
their duty to avoid conflicts of interest but acted in actual
conflict with ERISA beneficiaries by demanding and taking money
in reimbursement from ERISA beneficiaries wherein Defendants
GEISINGER and SOCRATES did not reduce their reimbursement demand
or recovery by the pro-rata share attorney fees and expenses that
the class plaintiff insureds incurred in their underlying
litigation in violation of the Employee Benefit Plan.

246. Defendants GEISINGER and SOCRATES not only breached
their duty to avoid conflicts of interest but acted in actual
conflict with ERISA beneficiaries by demanding and taking money
in reimbursement from ERISA beneficiaries before the class

plaintiff insureds had first been made whole and fully
compensated for all of their damages and losses.

247. Defendants GEISINGER and SOCRATES not only breached
their duty to avoid conflicts of interest but acted in actual
conflict with ERISA beneficiaries by demanding and taking money
in reimbursement from ERISA beneficiaries wherein the class
plaintiff insureds had not recovered medical expenses in their
underlying litigation.

248. Defendants GEISINGER and SOCRATES' pursuit, enforcement
and collection of liens from ERISA beneficiaries as aforesaid
violated its fiduciary duty to Plaintiffs with each act
constituting its own violation and claim or cause of action in
its own right.

249. As a direct and proximate result of the breaches of
fiduciary duties alleged herein, the Plaintiff and Class Members
have already, and will continue to, suffer actual harm in the
absence of relief.

250.  Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a), and
ERISA §404, 29 U.S.C. §1104(a), Defendants in this Count are
liable to restore the losses caused by their breaches of
fiduciary duties.

251. As a result of defendants' violation of the fiduciary
duty, Plaintiffs are entitled to relief as against the
defendants.

252. The actions of the defendant are a breach of ERISA, the underlying policy and of the Employee Welfare Benefit Plan which has caused ERISA beneficiaries insureds to suffer losses as a result.

253. As a result of defendants' wrongful reimbursement demands and actions, Plaintiff and ERISA beneficiary class members suffered harm and damages which include, by way of exemplification and not in limitation, the loss of use of money, the loss of interest on money, the loss of possession of their funds, the loss  enjoyment of their funds, their losses in having to free their funds from defendants' encumbrances, and payment of money from their tort recoveries to the defendant.

254. Each Defendant is jointly liable for the acts of the other Defendants as a co-fiduciary.

## COUNT IX
### BREACH OF FIDUCIARY DUTY - DUTY TO DISCLOSE

### KAYLEE MCWILLIAMS v. GEISINGER and SOCRATES

255. Plaintiffs, on behalf of themselves and other persons similarly situated, repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

256. At all relevant times, Defendants GEISINGER and SOCRATES were fiduciaries of the Plan, as they exercised discretionary authority, control or responsibility for administration or management of the Plan and management or disposition of Plan within the meaning of ERISA. ERISA §

3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

257. At all relevant times, both GEISINGER and SOCRATES exercised final discretionary authority, control and/or responsibility for administration or management of the Plan and management or disposition of Plan assets within the meaning of ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

258. ERISA imposes a duty to Disclose Complete and Accurate Information and to avoid misrepresentations.

259. ERISA fiduciaries have a duty to disclose complete and accurate information about benefits to plan beneficiaries.

260. ERISA fiduciaries may not affirmatively make material misrepresentations and may not strategically withhold material information.

261. A plan administrator may not materially misrepresent, either negligently or intentionally, modifications to an employee pension benefits plan. Put simply, when a plan administrator speaks, it must speak truthfully.

262. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), participants and beneficiaries may sue "to enjoin any act or practice which violates any provision of this subchapter [*e.g.*, fiduciary provisions] or the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations or . . . to enforce any provisions of this subchapter

or the terms of the plan."

263. Defendants GEISINGER and SOCRATES made repeated and pervasive representations that Geisinger was legally entitled to lien, subrogation and/or repayment as from Plaintiff's personal injury recoveries.

264. Defendants GEISINGER and SOCRATES, through their conduct, actively, affirmatively and systematically misinformed the Geisinger insureds that it was entitled to reimbursement from the insureds' respective personal injury recoveries.

265. Defendants GEISINGER and SOCRATES, through their conduct, actively and systemically recovered from Geisinger insureds literally millions of dollars in repayments as to which Geisinger was not legally entitled.

266. The defendants, GEISINGER and SOCRATES, continuously, systematically, and inaccurately did not disclose to Plaintiff and Class Members that DEFENDANTS were not entitled to reimbursement: wherein the defendant did not reduce its reimbursement demand or recovery by the pro-rata share attorney fees and expenses that the class plaintiff insureds incurred in their underlying litigation in violation of the Employee Benefit Plan; before the class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses; and wherein the class plaintiff insureds had not recovered medical expenses in their underlying litigation in violation of the Employee Benefit Plan.

267. GEISINGER and SOCRATES's disclosures to KAYLEE MCWILLIAMS and the class members were inaccurate as being both contrary to law and contrary to the Employee Welfare Benefits Plan.

268. Plaintiff KAYLEE MCWILLIAMS and class ERISA beneficiaries are legally entitled to enjoin GEISINGER and SOCRATES's reimbursement actions and practices that violate ERISA and the Employee Welfare Benefit Plan (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)(a).

269. Furthermore, as an ERISA fiduciary with a duty to disclose complete and accurate information to ERISA beneficiaries, Defendants are required to notify and disclose to KAYLEE MCWILLIAMS and all class ERISA beneficiaries against whom it asserted reimbursement or received reimbursement repayment, that GEISINGER and SOCRATES were not entitled to reimbursement: wherein the defendant did not reduce its reimbursement demand or recovery by the pro-rata share attorney fees and expenses that the class plaintiff insureds incurred in their underlying litigation in violation of the Employee Benefit Plan; before the class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses; and wherein the class plaintiff insureds had not recovered medical expenses in their underlying litigation in violation of the Employee Benefit Plan.

270. GEISINGER and SOCRATES's conduct, as set forth above, violated their fiduciary duty to Plaintiffs.

271. Pursuant to ERISA §404, 29 U.S.C. §1104(a), Defendants GEISINGER and SOCRATES are liable to restore the losses caused by their breaches of fiduciary duties.

272. The actions of Defendant are a breach ERISA which has caused KAYLEE MCWILLIAMS and other class members to suffer losses as a result.

273. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plaintiffs will continue to suffer actual harm in the absence of relief.

274. Each Defendant is jointly liable for the acts of the other Defendants as a co-fiduciary.


**COUNT X**
**BREACH OF FIDUCIARY DUTY - DUTY TO ACT IN ACCORDANCE WITH THE DOCUMENTS GOVERNING THE PLAN**

**KAYLEE MCWILLIAMS v. GEISINGER and SOCRATES**

275. Plaintiffs, on behalf of themselves and other persons similarly situated, repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

276. At all relevant times, Defendants GEISINGER and SOCRATES were fiduciaries of the Plan, as they exercised discretionary authority, control or responsibility for administration or management of the Plan and management or disposition of Plan within the meaning of ERISA. ERISA §

3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

277. At all relevant times, both GEISINGER and SOCRATES exercised final discretionary authority, control and/or responsibility for administration or management of the Plan and management or disposition of Plan assets within the meaning of ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

278. Under ERISA, ERISA fiduciaries are specifically charged with the fiduciary duty to act in accordance with the documents governing the plan. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

279. Defendants' failure to act in accordance with the documents governing the Plan ipso facto constitutes a violation of Defendants' fiduciary duty under ERISA § 404, 29 U.S.C. § 1104.

280. GEISINGER and SOCRATES's conduct, as set forth above, violated their fiduciary duty to Plaintiffs.

281. Pursuant to ERISA §404, 29 U.S.C. §1104(a), Defendants GEISINGER and SOCRATES are liable to restore the losses caused by their breaches of fiduciary duties.

282. The actions of Defendant are a breach ERISA which has caused KAYLEE MCWILLIAMS and other class members to suffer losses as a result.

283. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plaintiffs will continue to

suffer actual harm in the absence of relief.

284. Each Defendant is jointly liable for the acts of the other Defendants as a co-fiduciary.

**COUNT XI**
**BREACH OF FIDUCIARY DUTY - FAILURE TO ACT IN ACCORDANCE WITH ERISA COMMON LAW**

**<u>KAYLEE MCWILLIAMS v. GEISINGER and SOCRATES</u>**

285. Plaintiffs, on behalf of themselves and other persons similarly situated, repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

286. At all relevant times, Defendants GEISINGER and SOCRATES were fiduciaries of the Plan, as they exercised discretionary authority, control or responsibility for administration or management of the Plan and management or disposition of Plan within the meaning of ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

287. At all relevant times, both GEISINGER and SOCRATES exercised final discretionary authority, control and/or responsibility for administration or management of the Plan and management or disposition of Plan assets within the meaning of ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

288. Under ERISA, ERISA fiduciaries are specifically charged with the fiduciary duty to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a

prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

289. Further, under ERISA, ERISA fiduciaries are charged with the fiduciary duty to act in accordance with the provisions of ERISA.

290. Defendants failed to reduce their reimbursement demands or recoveries by the pro-rata share of attorney fees and expenses that the class plaintiff insureds incurred in their underlying litigation contrary to law; by seeking recovery and collecting reimbursement before the class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses contrary to law; and by seeking recovery and collecting reimbursement for medical expenses even though the class plaintiff insureds had not recovered medical expenses in their underlying litigation, contrary to law.

291. GEISINGER and SOCRATES's conduct, as set forth above, violated their fiduciary duty to Plaintiffs.

292. Pursuant to ERISA §404, 29 U.S.C. §1104(a), Defendants GEISINGER and SOCRATES are liable to restore the losses caused by their breaches of fiduciary duties.

293. The actions of Defendant are a breach ERISA which has caused KAYLEE MCWILLIAMS and other class members to suffer losses as a result.

294. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plaintiffs will continue to suffer actual harm in the absence of relief.

295. As a result of Defendants' violation of the fiduciary duty, Plaintiff and Class Members are entitled to relief as against Defendants.

296. Each Defendant is jointly liable for the acts of the other Defendants as a co-fiduciary.

### COUNT XII
### BREACH OF FIDUCIARY DUTY – DEFENDANTS' FAILURE TO ESTABLISH AND/OR FOLLOW REASONABLE CLAIMS PROCEDURES

### KAYLEE MCWILLIAMS v. GEISINGER and SOCRATES

297. Plaintiffs, on behalf of themselves and other persons similarly situated, repeat and re-allege the allegations of the preceding paragraphs as if fully restated herein.

298. At all relevant times, Defendants GEISINGER and SOCRATES were fiduciaries of the Plan, as they exercised discretionary authority, control or responsibility for administration or management of the Plan and management or disposition of Plan within the meaning of ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

299. At all relevant times, both GEISINGER and SOCRATES exercised final discretionary authority, control and/or responsibility for administration or management of the Plan and management or disposition of Plan assets within the meaning of

ERISA. ERISA § 3(21)(A)(i)-(iii), 29 U.S.C. § 1002(21)(A)(i)-(iii).

300. ERISA imposes a duty to disclose complete and accurate information.

301. Further, ERISA fiduciaries are specifically charged with the fiduciary duty to act in accordance with the documents governing the plan. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

302. Further, ERISA fiduciaries are specifically charged with the fiduciary duty to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

303. Further, ERISA fiduciaries are charged with the fiduciary duty to act in accordance with the provisions of ERISA.

304. Under ERISA, every employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations.

305. In that regard, in order for the appeals procedures to be deemed reasonable, every employee benefit plan must, among other requirements, contain administrative processes and safeguards designed to ensure and to verify that benefit claim

determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants.

306. Further, the claims procedures must not contain any provision, and must not be administered in a way, that requires a claimant to file more than two appeals of an adverse benefit determination prior to bringing a civil action under section 502(a) of the Act.

307. Further, to the extent that the plan offers any voluntary level of appeals, the claims procedures must provide that the plan waives any right to assert that a claimant has failed to exhaust administrative remedies because the claimant did not elect to submit a benefit dispute to any such voluntary level of appeal provided by the plan.

308. In the event that a plan fails to establish and follow reasonable claims procedures, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim. 29 CFR § 2560.503-1(l).

309. As demonstrated herein, the plan has failed to establish and follow reasonable claims procedures as it relates to the plan's claim for reimbursement against Plaintiff.

310. First, the plan did not establish reasonable claims procedures in violation of ERISA because the plan purports to require that Plaintiff exhaust three levels of appeal before pursuing her rights under ERISA.

311. The plan contains three levels of appeal: two internal appeals and an external appeal.

312. The plan does not indicate that any appeal procedure is voluntary. In fact, the plan states that an insured "has the right to bring civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA) once **all** administrative remedies have been exhausted[]." Ex. B, p.46 (emphasis added).

313. Even though the plan language above indicates that all three levels of appeal are required before suit may be filed, to the extent that any appeal procedure is actually voluntary and not required to be exhausted prior to following suit, the plan does not state that the plan waives any right to assert that a claimant has failed to exhaust administrative remedies because the claimant did not elect to submit a benefit dispute to any such voluntary level of appeal provided by the plan.

314. Second, the plan did not follow its administrative processes or safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents.

315. As previously demonstrated, the plan documents provide only that the plan is permitted to assert a right of subrogation against a third party and do not permit claims for reimbursement directly against the insured.

316. The plan did not follow its administrative processes or safeguards designed to ensure that the plan complies with its own terms that it is only permitted to assert a subrogation claim against a third party and not a reimbursement claim directly against an insured.

317. Further, the plan documents do not permit any claim by the plan, whether through subrogation or otherwise, without first reducing the plan's claim by attorney fees and expenses, ensuring the insured was made whole through her personal injury recovery against the third-party, and ascertaining whether the insured had recovered medical expenses from the third party in her personal injury recovery.

318. The plan did not follow its administrative processes or safeguards designed to ensure that when the plan asserts any claim, whether through subrogation or otherwise, that the plan reduces its claim by attorney fees and expenses, ensures the insured was made whole through her personal injury recovery against the third-party, and ascertains whether the insured had recovered medical expenses from the third party in her personal injury recovery.

319. Instead, in determining whether to assert its claims for reimbursement against its own insureds, Defendants adhered to an across-the-board policy that it will pursue reimbursement directly against its insured rather than against the third party responsible for its insured's injury in accordance with the plan terms.

320. This policy to pursue reimbursement directly against its insured rather than against the third party responsible for its insured's injury is the result of Defendants' placement of its own financial interests before its insureds' financial interests.

321. Specifically, Defendants' policy to pursue reimbursement directly against its insured rather than against the third party responsible for its insured's injury exists solely because it is cheaper and easier for the plan to shift the burden and expense of hiring counsel onto its own insureds than it is for the plan to pursue the subrogation rights it bargained for under the plan terms.

322. Accordingly, the plan did not follow its administrative processes or safeguards designed to ensure and to verify that its decision to seek reimbursement was made in accordance with governing plan documents, but instead determined that it was entitled to reimbursement against Plaintiff according to its own motivation to place its own financial interests before its insureds' financial interests

323. Third, the plan did not follow its administrative processes when it failed to provide Plaintiff a Notice of Adverse Benefits Determination as required by ERISA and federal regulations.

324. GEISINGER, which identifies itself as "the Plan" in the Plan document and holds itself out to plan members as "the Plan" (Group Subscription Certificate, p. i), is required under ERISA to provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

325. ERISA requires that, in the event the plan makes an adverse benefits determination, the claimant must be provided a written or electronic notification of any adverse benefit determination with the following content:

> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v) In the case of an adverse benefit determination by a group health plan -

> (A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request;

29 CFR § 2560.503-1(g).

326. GEISINGER did not issue any notice of an adverse benefits determination in compliance with ERISA requirements.

327. SOCRATES did not issue any notice of an adverse benefits determination in compliance with ERISA requirements.

328. Defendants did not issue any Notice of Adverse Benefits Determination at all.

329. The plan's claims appeal procedures contain two different appeals processes: one for Complaints, and one for Grievances. Complaints purportedly cover issues regarding coverage, Participating Providers, or the operations or management policies of the Plan. Grievances purportedly cover issues regarding denial of payment for a health care service based on Medical Necessity and appropriateness of care.

330. Defendants' decision to seek subrogation and/or reimbursement of benefits paid to Plaintiff from her tort

recovery does not clearly fit into either appeal process.

331. Defendants did not provide any notice of adverse benefits determination informing Plaintiff which appeal process to use if she disputed Defendants' decision to seek subrogation and/or reimbursement of benefits paid to Plaintiff from her tort recovery.

332. Indeed, Defendants did not provide any notice or document to Plaintiff informing her that she was even permitted to appeal Defendants' decision to seek subrogation and/or reimbursement of benefits paid to Plaintiff from her tort recovery.

333. Without being provided the proper notice of adverse benefits determination in accordance with ERISA, Plaintiff was not apprized of the proper procedures contained in the governing Plan document for appealing Defendants' decision to seek subrogation and/or reimbursement of benefits paid to Plaintiff from her tort recovery, which appeal process to use regarding her dispute of Defendants' decision to seek subrogation and/or reimbursement of benefits paid to Plaintiff from her tort recovery, or if an appeal was even required.

334. Accordingly, the plan failed to follow ERISA or the plan document's terms regarding adverse benefits determinations when it failed to issue a Notice of Adverse Benefits Determination to Plaintiff informing Plaintiff that the plan's appeal procedures were available to her, what those appeal

procedures were, and the time limits applicable to those procedures.

335. In sum:

- The plan did not establish reasonable claims procedures because the plan impermissibly requires three levels of appeal prior to filing suit, in violation of 29 CFR § 2560.503-1(c)(2);

- The plan did not follow its administrative processes or safeguards designed to ensure and to verify that its decision to seek reimbursement was made in accordance with governing plan documents, in violation of 29 C.F.R. § 2560.503-1(b)(5);

- The plan did not follow ERISA or the plan document's terms regarding adverse benefits determinations when it failed to provide Plaintiff a Notice of Adverse Benefits Determination as required by ERISA and federal regulations. 29 C.F.R. § 2560.503-1(f).

336. Accordingly, for the aforementioned reasons, the plan fails to establish and/or follow reasonable claims procedures governing the notification of benefit determinations and the appeal of adverse benefit determinations under ERISA.

337. As previously stated, where a plan fails to establish and/or follow reasonable claims procedures, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act. 29 CFR § 2560.503-1(l).

338. As a result of the aforementioned violations of their fiduciary duty, Plaintiff has been denied meaningful access to the Plan's administrative procedures and denied a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision to seek subrogation and/or

reimbursement of Plaintiff's benefits.

339. Further, as a result of Defendants' aforementioned actions and failures, Defendants have violated their fiduciary duties under ERISA of disclosing complete and accurate information, acting in accordance with the documents governing the plan, acting with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and acting in accordance with the provisions of ERISA.

340. Pursuant to ERISA §404, 29 U.S.C. §1104(a), Defendants GEISINGER and SOCRATES are liable to restore the losses caused by their breaches of fiduciary duties.

341. The actions of Defendant are a breach ERISA which has caused KAYLEE MCWILLIAMS and other class members to suffer losses as a result.

342. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plaintiffs will continue to suffer actual harm in the absence of relief.

343. Each Defendant is jointly liable for the acts of the other Defendants as a co-fiduciary.


**RELIEF DEMANDED**

344. Plaintiffs, on behalf of themselves and other persons similarly situated, repeat and re-allege the allegations of the

preceding paragraphs as if fully restated herein.

WHEREFORE, Plaintiffs, individually and on behalf of a Class of Similarly Situated Persons, respectfully requests that this Court enter an Order:

A. Determining that this action is a proper class action, certifying the named Plaintiffs as class representatives for the classes alleged herein and Plaintiffs' counsel as Class Counsel;

B. Awarding judgment as to Count I in favor of LORI FREITAS and each Other Similarly Situated Individual and against Defendants GEISINGER and SOCRATES and declaring that Defendants GEISINGER and SOCRATES:

    (1)    Have no right of reimbursement from the proceeds of tort recovery of the injury causing event in connection with the long-term disability benefits paid to the plaintiff, LORI FREITAS, in connection with injuries sustained in the injury causing event;

    (2)    Have no right to reimbursement from class plaintiffs who were injured and received long-term disability benefits from the defendant as a result of an injury causing event for the disability benefits it had paid to insureds from the insureds' tort recoveries contrary to the policies and law;

    (3)    Have no right to reimbursement wherein the defendant did not comply with the policy to not subrogate against the class plaintiff insureds' personal injury recovery for pain and suffering;

    (4)    Have no right to reimbursement without reducing its reimbursement demand or recovery  by the pro-rata share attorney fees and expenses that the class plaintiff insureds incurred in their underlying litigation contrary to the policies and law;

    (5)    Have no right to reimbursement before the class plaintiff insureds had first been made whole and fully compensated for all of their damages and losses contrary to law;

(6)  Have no right to reimbursement wherein the class plaintiff insureds had not recovered disability losses or disability payments in their underlying litigation.

(7)  Awarding interest, counsel fees and costs;

(8)  Such other relief as the Court deems appropriate.

And further awarding judgment as to Count I in favor of LORI FREITAS and each Other Similarly Situated Individual and against Defendants GEISINGER and SOCRATES for:

(1)  All damages or permissible equitable or permissible monetary relief for benefits in favor of each named Plaintiff and each Other Similarly Situated Individual;

(2)  All damages or permissible equitable or permissible monetary relief for benefits in favor of each named Plaintiff and each Other Similarly Situated Individual in recovery of benefits due under the Plan and in enforcement of rights under the Plan;

(3)  All affirmative and negative injunctive and other permissible equitable or monetary relief for benefits in order to accord to the Plaintiff and each Other Similarly Situated Individual the full and complete measure of benefits which Plaintiff and each Other Similarly Situated Individual entitled to under the Plan and to remedy Defendants' breaches alleged above, as provided by any and all applicable provisions of ERISA;

(4)  Preliminary and permanent relief, including but not limited to enjoining Defendants' actions complained of herein;

(5)  Relief under ERISA § 502(a)(1), 29 U.S.C. § 1132(a)(1) to recover benefits due to him under the terms of her plan, to enforce her rights under the terms of the plan, or to clarify her rights to future benefits under the terms of the plan;

(6)  All harms and damages suffered by FREITAS and each Other Similarly Situated Individual which include, by way of exemplification and not in limitation, the loss of use of money and the loss of interest on money, arising from Defendants' actions;

(7)   Judgement declaring the contractual liens invalid as
      against personal injury recoveries and a judgment
      reimbursing all losses sustained by the Plaintiffs for
      all damages each sustained by the loss of use and
      possession of their funds; loss use and enjoyment of
      their funds and losses suffered in having to free their
      funds from defendants' encumbrances;

(8)   Judgment directing the return of all monies of which
      the named Plaintiff and each other Similarly Situated
      Individual have been dispossessed as a result of the
      reimbursement demands and actions by the defendant;

(9)   All harms and damages Plaintiffs and Class members have
      sustained as a result of Defendants' conduct as may be
      permitted under the relevant statutes and law;

(10)  All harms and damages arising from the improper
      reimbursement actions of the defendant;

(11)  The or release of all monies which have been taken,
      liened, charged, received or encumbered with such
      monies held, paid or otherwise liened, charged or
      encumbered be returned or released free of all claims,
      charges, holds, claims, demands, interest, liens,
      pretensions;

(12)  Judgment equal to the sum of the lien, reimbursement
      claim or reimbursement asserted by Defendants and any
      other damages incurred, related to such lien,
      reimbursement claim and/or repayment demand which
      judgement to be satisfied from monies recovered,
      encumbered, impleaded, held or taken;

(13)  Reasonable attorney fees and expenses, as provided by
      ERISA § 502(g), 29 U.S.C. §1132(g) the common fund
      doctrine, and other applicable law;

(14)  Taxable costs pursuant to 29 U.S.C. § 1132(g);

(15)  Interest on these amounts, as provided by law;

(16)  Punitive damages;

(17)  Punitive damages to the extent permitted by law;

(18)  Such other and further relief as this Court may deem
      just and proper.

C. Awarding judgment as to Count II in favor of LORI FREITAS and each Other Similarly Situated Individual and against Defendants GEISINGER and SOCRATES for:

(1)   All damages and permissible equitable or permissible monetary relief for defendant's breach of its fiduciary duties in favor of each named Plaintiff and each Other Similarly Situated Individual;

(2)   All permissible equitable or permissible monetary relief to remedy, redress, compensate, cease, prevent and atone for defendant's breach of its fiduciary duties in favor of each named Plaintiff and each Other Similarly Situated Individual;

(3)   Actual monetary damages to make good to the Plaintiffs for each and every type and measure of loss resulting from the breaches of fiduciary duties alleged above;

(4)   All relief and remedy to make good to the Plaintiffs for each and every type and measure of loss resulting from the breaches of fiduciary duties alleged above;

(5)   Affirmative and negative injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §409(a) and §502(a), 29 U.S.C. §1104(a) and §1132(a);

(6)   Affirmative and negative injunctive and other appropriate equitable relief to prevent breaches of fiduciary duty in the future;

(7)   Injunction on behalf of FREITAS and ERISA beneficiaries to enjoin Defendants' reimbursement actions and practices that violate ERISA and the Employee Welfare Benefit Plan (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)(a);

(8)   Disclosure and notice to FREITAS and the ERISA beneficiaries as to whom Defendants asserted subrogation or received subrogation repayment that Defendants were not entitled to subrogation as set forth herein.

(9)   Reasonable attorney fees and expenses, as provided by ERISA §502(g), 29 U.S.C. §1132(g), the common fund

doctrine, and other applicable law;

(10) Taxable costs pursuant to 29 U.S.C. §1132(g);

(11) Interest on these amounts, as provided by law;

(12) Surcharge;

(13) Monetary damages against a fiduciary;

(14) All damages Plaintiff and Class members have sustained
as a result of Defendants' breach of its Fiduciary Duty
as may be permitted under the relevant statutes and
law;

(15) Punitive damages;

(16) Punitive damages to the extent permitted by law;

(17) Such other and further relief as this Court may deem
just and proper.


D. Awarding judgment as to Count III in favor of LORI

FREITAS and each Other Similarly Situated Individual and against

Defendants GEISINGER and SOCRATES for:

(1) All damages and permissible equitable or permissible
monetary relief for defendant's breach of its fiduciary
duties in favor of each named Plaintiff and each Other
Similarly Situated Individual;

(2) All permissible equitable or permissible monetary relief
to remedy, redress, compensate, cease, prevent and atone
for defendant's breach of its fiduciary duties in favor
of each named Plaintiff and each Other Similarly
Situated Individual;

(3) Actual monetary damages to make good to the Plaintiffs
for each and every type and measure of loss resulting
from the breaches of fiduciary duties alleged above;

(4) All relief and remedy to make good to the Plaintiffs
for each and every type and measure of loss resulting
from the breaches of fiduciary duties alleged above;

(5) Affirmative and negative injunctive and other
    appropriate equitable relief to remedy the breaches
    alleged above, as provided by ERISA §404(a) and §502(a),
    29 U.S.C. §1104(a) and §1132(a);

(6)  Injunction on behalf of FREITAS and ERISA beneficiaries
     to enjoin Defendants' reimbursement actions and
     practices that violate ERISA and the Employee Welfare
     Benefit Plan (ERISA § 502(a)(3), 29 U.S.C. §
     1132(a)(3)(a);

(7)  Disclosure and notice to FREITAS and the ERISA
     beneficiaries as to whom Defendants asserted
     subrogation or received subrogation repayment that
     Defendants were not entitled to subrogation as set
     forth herein.

(8) All harms and damages suffered by FREITAS and each Other
    Similarly Situated Individual which include, by way of
    exemplification and not in limitation, the loss of use
    of money and the loss of interest on money, arising from
    Defendants' actions;

(9) Judgement declaring the contractual liens invalid as
    against personal injury recoveries and a judgment
    reimbursing all losses sustained by the Plaintiffs for
    all damages each sustained by the loss of use and
    possession of their funds; loss use and enjoyment of
    their funds and losses suffered in having to free their
    funds from defendants' encumbrances;

(10) Judgment directing the return of all monies of which the
     named Plaintiff and each other Similarly Situated
     Individual have been dispossessed as a result of the
     subrogation demands and actions by the defendant;

(11) All harms and damages Plaintiffs and Class members have
     sustained as a result of Defendants' conduct as may be
     permitted under the relevant statutes and law;

(12) All harms and damages arising from the improper
     subrogation actions of the defendant;

(13) The or release of all monies which have been taken,
     liened, charged, received or encumbered with such monies
     held, paid or otherwise liened, charged or encumbered be
     returned or released free of all claims, charges, holds,
     claims, demands, interest, liens, pretensions;

(14) Judgment equal to the sum of the lien, subrogation claim

or reimbursement asserted by Defendants and any other
damages incurred, related to such lien, subrogation
claim and/or repayment demand which judgement to be
satisfied from monies recovered, encumbered, impleaded,
held or taken;

(15) Reasonable attorney fees and expenses, as provided by
ERISA § 502(g), 29 U.S.C. §1132(g) the common fund
doctrine, and other applicable law;

(16) Taxable costs pursuant to 29 U.S.C. § 1132(g);

(17) interest on these amounts, as provided by law;

(18) Monetary damages against a fiduciary;

(19) Punitive damages;

(20) Punitive damages to the extent permitted by law;

(21) Such other and further relief as this Court may deem
just and proper.

E. Awarding judgment as to Count IV in favor of LORI FREITAS
and each Other Similarly Situated Individual and against
Defendants GEISINGER and SOCRATES for:

(1) All damages and permissible equitable or permissible
monetary relief for defendant's breach of its fiduciary
duties in favor of each named Plaintiff and each Other
Similarly Situated Individual;

(2) All permissible equitable or permissible monetary relief
to remedy, redress, compensate, cease, prevent and atone
for defendant's breach of its fiduciary duties in favor
of each named Plaintiff and each Other Similarly Situated
Individual;

(3) Actual monetary damages to make good to the Plaintiffs
for each and every type and measure of loss resulting
from the breaches of fiduciary duties alleged above;

(4) All relief and remedy to make good to the Plaintiffs
for each and every type and measure of loss resulting
from the breaches of fiduciary duties alleged above;

(5) Affirmative and negative injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §404(a) and §502(a), 29 U.S.C. §1104(a) and §1132(a);

(6) Injunction on behalf of FREITAS and ERISA beneficiaries to enjoin Defendants' reimbursement actions and practices that violate ERISA and the Employee Welfare Benefit Plan (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)(a);

(7) All harms and damages suffered by FREITAS and each Other Similarly Situated Individual which include, by way of exemplification and not in limitation, the loss of use of money and the loss of interest on money, arising from Defendants' actions;

(8) Judgement declaring the contractual liens invalid as against personal injury recoveries and a judgment reimbursing all losses sustained by the Plaintiffs for all damages each sustained by the loss of use and possession of their funds; loss use and enjoyment of their funds and losses suffered in having to free their funds from defendants' encumbrances;

(9) Judgment directing the return of all monies of which the named Plaintiff and each other Similarly Situated Individual have been dispossessed as a result of the subrogation demands and actions by the defendant;

(10) All harms and damages Plaintiffs and Class members have sustained as a result of Defendants' conduct as may be permitted under the relevant statutes and law;

(11) All harms and damages arising from the improper subrogation actions of the defendant;

(12) The or release of all monies which have been taken, liened, charged, received or encumbered with such monies held, paid or otherwise liened, charged or encumbered be returned or released free of all claims, charges, holds, claims, demands, interest, liens, pretensions;

(13) Judgment equal to the sum of the lien, subrogation claim or reimbursement asserted by Defendants and any other damages incurred, related to such lien, subrogation claim and/or repayment demand which judgement to be satisfied from monies recovered, encumbered, impleaded, held or taken;

(14) Reasonable attorney fees and expenses, as provided by
ERISA § 502(g), 29 U.S.C. §1132(g) the common fund
doctrine, and other applicable law;

(15) Taxable costs pursuant to 29 U.S.C. § 1132(g);

(16) interest on these amounts, as provided by law;

(17) Monetary damages against a fiduciary;

(18) Punitive damages;

(19) Punitive damages to the extent permitted by law;

(20) Such other and further relief as this Court may deem
just and proper.


   F. Awarding judgment as to Count V in favor of LORI FREITAS

and each Other Similarly Situated Individual and against

Defendants GEISINGER and SOCRATES for:

(1) All damages and permissible equitable or permissible
monetary relief for defendant's breach of its fiduciary
duties in favor of each named Plaintiff and each Other
Similarly Situated Individual;

(2) All permissible equitable or permissible monetary relief
to remedy, redress, compensate, cease, prevent and atone
for defendant's breach of its fiduciary duties in favor
of each named Plaintiff and each Other Similarly Situated
Individual;

(3) Actual monetary damages to make good to the Plaintiffs
for each and every type and measure of loss resulting
from the breaches of fiduciary duties alleged above;

(4) All relief and remedy to make good to the Plaintiffs
for each and every type and measure of loss resulting
from the breaches of fiduciary duties alleged above;

(5) Affirmative and negative injunctive and other
appropriate equitable relief to remedy the breaches
alleged above, as provided by ERISA §404(a) and §502(a),
29 U.S.C. §1104(a) and §1132(a);

(6)  Injunction on behalf of FREITAS and ERISA beneficiaries
     to enjoin Defendants' reimbursement actions and
     practices that violate ERISA and the Employee Welfare
     Benefit Plan (ERISA § 502(a)(3), 29 U.S.C. §
     1132(a)(3)(a);

(8)  All harms and damages suffered by FREITAS and each Other
     Similarly Situated Individual which include, by way of
     exemplification and not in limitation, the loss of use
     of money and the loss of interest on money, arising from
     Defendants' actions;

(9)  Judgement declaring the contractual liens invalid as
     against personal injury recoveries and a judgment
     reimbursing all losses sustained by the Plaintiffs for
     all damages each sustained by the loss of use and
     possession of their funds; loss use and enjoyment of
     their funds and losses suffered in having to free their
     funds from defendants' encumbrances;

(10) Judgment directing the return of all monies of which the
     named Plaintiff and each other Similarly Situated
     Individual have been dispossessed as a result of the
     subrogation demands and actions by the defendant;

(11) All harms and damages Plaintiffs and Class members have
     sustained as a result of Defendants' conduct as may be
     permitted under the relevant statutes and law;

(12) All harms and damages arising from the improper
     subrogation actions of the defendant;

(13) The or release of all monies which have been taken,
     liened, charged, received or encumbered with such monies
     held, paid or otherwise liened, charged or encumbered be
     returned or released free of all claims, charges, holds,
     claims, demands, interest, liens, pretensions;

(14) Judgment equal to the sum of the lien, subrogation claim
     or reimbursement asserted by Defendants and any other
     damages incurred, related to such lien, subrogation
     claim and/or repayment demand which judgement to be
     satisfied from monies recovered, encumbered, impleaded,
     held or taken;

(15) Reasonable attorney fees and expenses, as provided by
     ERISA § 502(g), 29 U.S.C. §1132(g) the common fund
     doctrine, and other applicable law;

(16) Taxable costs pursuant to 29 U.S.C. § 1132(g);

(17) interest on these amounts, as provided by law;

(18) Monetary damages against a fiduciary;

(19)  Punitive damages;

(20)  Punitive damages to the extent permitted by law;

(21) Such other and further relief as this Court may deem
     just and proper.


  G. Awarding judgment as to Count VI in favor of LORI FREITAS

and each Other Similarly Situated Individual and against

Defendants GEISINGER and SOCRATES for:

(1)  A declaration that LORI FREITAS is not required to
     exhaust her administrative remedies and/or is deemed to
     have exhausted her administrative remedies prior to the
     filing of this suit;

(2)  Injunctive and other appropriate equitable relief to
     enjoin Defendants from engaging in the acts or
     practices as previously set forth which violate ERISA
     and the terms of the Plan;

(3)  Injunctive and other appropriate equitable relief to
     remedy the breaches alleged above, as provided by ERISA
     §404(a) and §502(a), 29 U.S.C. §1104(a) and §1132(a);

(4)  Injunctive and other appropriate equitable relief to
     enjoin Defendants' reimbursement actions and practices
     that are in violation of administrative processes and
     safeguards designed to ensure and to verify that
     benefit claim determinations are made in accordance
     with governing plan documents;

(5)  Reasonable attorney fees and expenses, as provided by
     ERISA § 502(g), 29 U.S.C. §1132(g) the common fund
     doctrine, and other applicable law;

(6)  Taxable costs pursuant to 29 U.S.C. § 1132(g);

(7)  interest on these amounts, as provided by law;

(8)  Surcharge;

(9)   Punitive damages;

(10)  Punitive damages to the extent permitted by law;

(11)  Such other and further relief as this Court may deem
      just and proper.


    H. Awarding judgment as to Count VII in favor of KAYLEE

MCWILLIAMS and each Other Similarly Situated Individual and

against Defendants GEISINGER and SOCRATES and declaring that

Defendants GEISINGER and SOCRATES:

(1)   Have no right of reimbursement from the proceeds of
      tort recovery of the injury causing event in connection
      with the long-term disability benefits paid to the
      plaintiff, KAYLEE MCWILLIAMS, in connection with
      injuries sustained in the injury causing event;

(2)   Have no right to reimbursement from class plaintiffs
      who were injured and received long-term disability
      benefits from the defendant as a result of an injury
      causing event for the disability benefits it had paid
      to insureds from the insureds' tort recoveries contrary
      to the policies and law;

(3)   Have no right to reimbursement wherein the defendant
      did not comply with the policy to not subrogate against
      the class plaintiff insureds' personal injury recovery
      for pain and suffering;

(4)   Have no right to reimbursement without reducing its
      reimbursement demand or recovery  by the pro-rata share
      attorney fees and expenses that the class plaintiff
      insureds incurred in their underlying litigation
      contrary to the policies and law;

(5)   Have no right to reimbursement before the class
      plaintiff insureds had first been made whole and fully
      compensated for all of their damages and losses
      contrary to law;

(6)   Have no right to reimbursement wherein the class
      plaintiff insureds had not recovered disability losses
      or disability payments in their underlying litigation.

(7)   Awarding interest, counsel fees and costs;

(8)   Such other relief as the Court deems appropriate.

And further awarding judgment as to Count VII in favor of
KAYLEE MCWILLIAMS and each Other Similarly Situated Individual
and against Defendants GEISINGER and SOCRATES for:

(1)   All damages or permissible equitable or permissible
      monetary relief for benefits in favor of each named
      Plaintiff and each Other Similarly Situated Individual;

(2)   All damages or permissible equitable or permissible
      monetary relief for benefits in favor of each named
      Plaintiff and each Other Similarly Situated Individual
      in recovery of benefits due under the Plan and in
      enforcement of rights under the Plan;

(3)   All affirmative and negative injunctive and other
      permissible equitable or monetary relief for benefits
      in order to accord to the Plaintiff and each Other
      Similarly Situated Individual the full and complete
      measure of benefits which Plaintiff and each Other
      Similarly Situated Individual entitled to under the
      Plan and to remedy Defendants' breaches alleged above,
      as provided by any and all applicable provisions of
      ERISA;

(4)   Preliminary and permanent relief, including but not
      limited to enjoining Defendants' actions complained of
      herein;

(5)   Relief under ERISA § 502(a)(1), 29 U.S.C. § 1132(a)(1)
      to recover benefits due to him under the terms of her
      plan, to enforce her rights under the terms of the
      plan, or to clarify her rights to future benefits under
      the terms of the plan;

(6)   All harms and damages suffered by MCWILLIAMS and each
      Other Similarly Situated Individual which include, by
      way of exemplification and not in limitation, the loss
      of use of money and the loss of interest on money,
      arising from Defendants' actions;

(7)   Judgement declaring the contractual liens invalid as
      against personal injury recoveries and a judgment
      reimbursing all losses sustained by the Plaintiffs for

all damages each sustained by the loss of use and possession of their funds; loss use and enjoyment of their funds and losses suffered in having to free their funds from defendants' encumbrances;

(8)   Judgment directing the return of all monies of which the named Plaintiff and each other Similarly Situated Individual have been dispossessed as a result of the reimbursement demands and actions by the defendant;

(9)   All harms and damages Plaintiffs and Class members have sustained as a result of Defendants' conduct as may be permitted under the relevant statutes and law;

(10)  All harms and damages arising from the improper reimbursement actions of the defendant;

(11)  The or release of all monies which have been taken, liened, charged, received or encumbered with such monies held, paid or otherwise liened, charged or encumbered be returned or released free of all claims, charges, holds, claims, demands, interest, liens, pretensions;

(12)  Judgment equal to the sum of the lien, reimbursement claim or reimbursement asserted by Defendants and any other damages incurred, related to such lien, reimbursement claim and/or repayment demand which judgement to be satisfied from monies recovered, encumbered, impleaded, held or taken;

(13)  Reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. §1132(g) the common fund doctrine, and other applicable law;

(14)  Taxable costs pursuant to 29 U.S.C. § 1132(g);

(15)  Interest on these amounts, as provided by law;

(16)  Punitive damages;

(17)  Punitive damages to the extent permitted by law;

(18)  Such other and further relief as this Court may deem just and proper.

I. Awarding judgment as to Count VIII in favor of KAYLEE MCWILLIAMS and each Other Similarly Situated Individual and against Defendants GEISINGER and SOCRATES for:

(1) All damages and permissible equitable or permissible monetary relief for defendant's breach of its fiduciary duties in favor of each named Plaintiff and each Other Similarly Situated Individual;

(2) All permissible equitable or permissible monetary relief to remedy, redress, compensate, cease, prevent and atone for defendant's breach of its fiduciary duties in favor of each named Plaintiff and each Other Similarly Situated Individual;

(3) Actual monetary damages to make good to the Plaintiffs for each and every type and measure of loss resulting from the breaches of fiduciary duties alleged above;

(4) All relief and remedy to make good to the Plaintiffs for each and every type and measure of loss resulting from the breaches of fiduciary duties alleged above;

(5) Affirmative and negative injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §409(a) and §502(a), 29 U.S.C. §1104(a) and §1132(a);

(6) Affirmative and negative injunctive and other appropriate equitable relief to prevent breaches of fiduciary duty in the future;

(7) Injunction on behalf of MCWILLIAMS and ERISA beneficiaries to enjoin Defendants' reimbursement actions and practices that violate ERISA and the Employee Welfare Benefit Plan (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)(a);

(8) Disclosure and notice to MCWILLIAMS and the ERISA beneficiaries as to whom Defendants asserted subrogation or received subrogation repayment that Defendants were not entitled to subrogation as set forth herein.

(9) Reasonable attorney fees and expenses, as provided by ERISA §502(g), 29 U.S.C. §1132(g), the common fund doctrine, and other applicable law;

(10)  Taxable costs pursuant to 29 U.S.C. §1132(g);

(11)  Interest on these amounts, as provided by law;

(12)  Surcharge;

(13)  Monetary damages against a fiduciary;

(14)  All damages Plaintiff and Class members have sustained
      as a result of Defendants' breach of its Fiduciary Duty
      as may be permitted under the relevant statutes and
      law;

(15)  Punitive damages;

(16)  Punitive damages to the extent permitted by law;

(17)  Such other and further relief as this Court may deem
      just and proper.


      J. Awarding judgment as to Count IX in favor of KAYLEE

MCWILLIAMS and each Other Similarly Situated Individual and

against Defendants GEISINGER and SOCRATES for:

(1)  All damages and permissible equitable or permissible
     monetary relief for defendant's breach of its fiduciary
     duties in favor of each named Plaintiff and each Other
     Similarly Situated Individual;

(2)  All permissible equitable or permissible monetary relief
     to remedy, redress, compensate, cease, prevent and atone
     for defendant's breach of its fiduciary duties in favor
     of each named Plaintiff and each Other Similarly
     Situated Individual;

(3)  Actual monetary damages to make good to the Plaintiffs
     for each and every type and measure of loss resulting
     from the breaches of fiduciary duties alleged above;

(4)  All relief and remedy to make good to the Plaintiffs
     for each and every type and measure of loss resulting
     from the breaches of fiduciary duties alleged above;

(5)  Affirmative and negative injunctive and other
     appropriate equitable relief to remedy the breaches

alleged above, as provided by ERISA §404(a) and §502(a), 29 U.S.C. §1104(a) and §1132(a);

(6)   Injunction on behalf of MCWILLIAMS and ERISA beneficiaries to enjoin Defendants' reimbursement actions and practices that violate ERISA and the Employee Welfare Benefit Plan (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)(a);

(7)   Disclosure and notice to MCWILLIAMS and the ERISA beneficiaries as to whom Defendants asserted subrogation or received subrogation repayment that Defendants were not entitled to subrogation as set forth herein.

(8)   All harms and damages suffered by MCWILLIAMS and each Other Similarly Situated Individual which include, by way of exemplification and not in limitation, the loss of use of money and the loss of interest on money, arising from Defendants' actions;

(9)   Judgement declaring the contractual liens invalid as against personal injury recoveries and a judgment reimbursing all losses sustained by the Plaintiffs for all damages each sustained by the loss of use and possession of their funds; loss use and enjoyment of their funds and losses suffered in having to free their funds from defendants' encumbrances;

(10) Judgment directing the return of all monies of which the named Plaintiff and each other Similarly Situated Individual have been dispossessed as a result of the subrogation demands and actions by the defendant;

(11) All harms and damages Plaintiffs and Class members have sustained as a result of Defendants' conduct as may be permitted under the relevant statutes and law;

(12) All harms and damages arising from the improper subrogation actions of the defendant;

(13) The or release of all monies which have been taken, liened, charged, received or encumbered with such monies held, paid or otherwise liened, charged or encumbered be returned or released free of all claims, charges, holds, claims, demands, interest, liens, pretensions;

(14) Judgment equal to the sum of the lien, subrogation claim or reimbursement asserted by Defendants and any other damages incurred, related to such lien, subrogation

claim and/or repayment demand which judgement to be
satisfied from monies recovered, encumbered, impleaded,
held or taken;

(15) Reasonable attorney fees and expenses, as provided by
ERISA § 502(g), 29 U.S.C. §1132(g) the common fund
doctrine, and other applicable law;

(16) Taxable costs pursuant to 29 U.S.C. § 1132(g);

(17) interest on these amounts, as provided by law;

(18) Monetary damages against a fiduciary;

(19)  Punitive damages;

(20)  Punitive damages to the extent permitted by law;

(21) Such other and further relief as this Court may deem
just and proper.

    K. Awarding judgment as to Count X in favor of KAYLEE

MCWILLIAMS and each Other Similarly Situated Individual and

against Defendants GEISINGER and SOCRATES for:

(1) All damages and permissible equitable or permissible
monetary relief for defendant's breach of its fiduciary
duties in favor of each named Plaintiff and each Other
Similarly Situated Individual;

(2) All permissible equitable or permissible monetary relief
to remedy, redress, compensate, cease, prevent and atone
for defendant's breach of its fiduciary duties in favor
of each named Plaintiff and each Other Similarly
Situated Individual;

(3) Actual monetary damages to make good to the Plaintiffs
for each and every type and measure of loss resulting
from the breaches of fiduciary duties alleged above;

(4) All relief and remedy to make good to the Plaintiffs
for each and every type and measure of loss resulting
from the breaches of fiduciary duties alleged above;

(5)   Affirmative and negative injunctive and other
      appropriate equitable relief to remedy the breaches
      alleged above, as provided by ERISA §404(a) and §502(a),
      29 U.S.C. §1104(a) and §1132(a);

(6)   Injunction on behalf of MCWILLIAMS and ERISA
      beneficiaries to enjoin Defendants' reimbursement
      actions and practices that violate ERISA and the
      Employee Welfare Benefit Plan (ERISA § 502(a)(3), 29
      U.S.C. § 1132(a)(3)(a);

(7)   All harms and damages suffered by MCWILLIAMS and each
      Other Similarly Situated Individual which include, by
      way of exemplification and not in limitation, the loss
      of use of money and the loss of interest on money,
      arising from Defendants' actions;

(8)   Judgement declaring the contractual liens invalid as
      against personal injury recoveries and a judgment
      reimbursing all losses sustained by the Plaintiffs for
      all damages each sustained by the loss of use and
      possession of their funds; loss use and enjoyment of
      their funds and losses suffered in having to free their
      funds from defendants' encumbrances;

(9)   Judgment directing the return of all monies of which the
      named Plaintiff and each other Similarly Situated
      Individual have been dispossessed as a result of the
      subrogation demands and actions by the defendant;

(10)  All harms and damages Plaintiffs and Class members have
      sustained as a result of Defendants' conduct as may be
      permitted under the relevant statutes and law;

(11)  All harms and damages arising from the improper
      subrogation actions of the defendant;

(12)  The or release of all monies which have been taken,
      liened, charged, received or encumbered with such monies
      held, paid or otherwise liened, charged or encumbered be
      returned or released free of all claims, charges, holds,
      claims, demands, interest, liens, pretensions;

(13)  Judgment equal to the sum of the lien, subrogation claim
      or reimbursement asserted by Defendants and any other
      damages incurred, related to such lien, subrogation
      claim and/or repayment demand which judgement to be
      satisfied from monies recovered, encumbered, impleaded,
      held or taken;

(14) Reasonable attorney fees and expenses, as provided by
ERISA § 502(g), 29 U.S.C. §1132(g) the common fund
doctrine, and other applicable law;

(15) Taxable costs pursuant to 29 U.S.C. § 1132(g);

(16) interest on these amounts, as provided by law;

(17) Monetary damages against a fiduciary;

(18)  Punitive damages;

(19)  Punitive damages to the extent permitted by law;

(20) Such other and further relief as this Court may deem
just and proper.


L. Awarding judgment as to Count XI in favor of KAYLEE

MCWILLIAMS and each Other Similarly Situated Individual and

against Defendants GEISINGER and SOCRATES for:

(1) All damages and permissible equitable or permissible
monetary relief for defendant's breach of its fiduciary
duties in favor of each named Plaintiff and each Other
Similarly Situated Individual;

(2) All permissible equitable or permissible monetary relief
to remedy, redress, compensate, cease, prevent and atone
for defendant's breach of its fiduciary duties in favor
of each named Plaintiff and each Other Similarly
Situated Individual;

(3) Actual monetary damages to make good to the Plaintiffs
for each and every type and measure of loss resulting
from the breaches of fiduciary duties alleged above;

(4) All relief and remedy to make good to the Plaintiffs
for each and every type and measure of loss resulting
from the breaches of fiduciary duties alleged above;

(5) Affirmative and negative injunctive and other
appropriate equitable relief to remedy the breaches
alleged above, as provided by ERISA §404(a) and §502(a),
29 U.S.C. §1104(a) and §1132(a);

(6)   Injunction on behalf of MCWILLIAMS and ERISA
      beneficiaries to enjoin Defendants' reimbursement
      actions and practices that violate ERISA and the
      Employee Welfare Benefit Plan (ERISA § 502(a)(3), 29
      U.S.C. § 1132(a)(3)(a);

(8)   All harms and damages suffered by MCWILLIAMS and each
      Other Similarly Situated Individual which include, by
      way of exemplification and not in limitation, the loss
      of use of money and the loss of interest on money,
      arising from Defendants' actions;

(9)   Judgement declaring the contractual liens invalid as
      against personal injury recoveries and a judgment
      reimbursing all losses sustained by the Plaintiffs for
      all damages each sustained by the loss of use and
      possession of their funds; loss use and enjoyment of
      their funds and losses suffered in having to free their
      funds from defendants' encumbrances;

(10)  Judgment directing the return of all monies of which the
      named Plaintiff and each other Similarly Situated
      Individual have been dispossessed as a result of the
      subrogation demands and actions by the defendant;

(11)  All harms and damages Plaintiffs and Class members have
      sustained as a result of Defendants' conduct as may be
      permitted under the relevant statutes and law;

(12)  All harms and damages arising from the improper
      subrogation actions of the defendant;

(13)  The or release of all monies which have been taken,
      liened, charged, received or encumbered with such monies
      held, paid or otherwise liened, charged or encumbered be
      returned or released free of all claims, charges, holds,
      claims, demands, interest, liens, pretensions;

(14)  Judgment equal to the sum of the lien, subrogation claim
      or reimbursement asserted by Defendants and any other
      damages incurred, related to such lien, subrogation
      claim and/or repayment demand which judgement to be
      satisfied from monies recovered, encumbered, impleaded,
      held or taken;

(15)  Reasonable attorney fees and expenses, as provided by
      ERISA § 502(g), 29 U.S.C. §1132(g) the common fund
      doctrine, and other applicable law;

(16)  Taxable costs pursuant to 29 U.S.C. § 1132(g);

(17) interest on these amounts, as provided by law;

(18) Monetary damages against a fiduciary;

(19)  Punitive damages;

(20)  Punitive damages to the extent permitted by law;

(21) Such other and further relief as this Court may deem
     just and proper.


    M. Awarding judgment as to Count XII in favor of KAYLEE

MCWILLIAMS and each Other Similarly Situated Individual and

against Defendants GEISINGER and SOCRATES for:

   (1)  A declaration that KAYLEE MCWILLIAMS is not required to
        exhaust her administrative remedies and/or is deemed to
        have exhausted her administrative remedies prior to the
        filing of this suit;

   (2)  Injunctive and other appropriate equitable relief to
        enjoin Defendants from engaging in the acts or
        practices as previously set forth which violate ERISA
        and the terms of the Plan;

   (3)  Injunctive and other appropriate equitable relief to
        remedy the breaches alleged above, as provided by ERISA
        §404(a) and §502(a), 29 U.S.C. §1104(a) and §1132(a);

   (4)  Injunctive and other appropriate equitable relief to
        enjoin Defendants' reimbursement actions and practices
        that are in violation of administrative processes and
        safeguards designed to ensure and to verify that
        benefit claim determinations are made in accordance
        with governing plan documents;

   (5)  Reasonable attorney fees and expenses, as provided by
        ERISA § 502(g), 29 U.S.C. §1132(g) the common fund
        doctrine, and other applicable law;

   (6)  Taxable costs pursuant to 29 U.S.C. § 1132(g);

   (7)  interest on these amounts, as provided by law;

   (8)  Surcharge;

(9)   Punitive damages;

(10)  Punitive damages to the extent permitted by law;

(11)  Such other and further relief as this Court may deem
      just and proper.



                        Respectfully Submitted,

                        LAW OFFICE OF KANNEBECKER & MINCER, LLC



Dated: September 10, 2020

                        _____/s/_____
                        Charles Kannebecker, Esq.
                        PA Bar ID No. 58612
                        104 W. High St.
                        Milford, PA 18337

                        *Attorney for Plaintiffs*