## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____
                                  )

LORI FREITAS and KAYLEE        )
MCWILLIAMS individually and on    )
behalf of all others similarly situated,  )
                                    )    Case No. 4:20-cv-01236-MWB
           Plaintiffs,       )
                                    )
          v.                 )
                                    )
GEISINGER HEALTH PLAN and    )
SOCRATES, INC.,               )
                                    )
           Defendants.      )
_____ )

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS
## PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT

BUCHANAN INGERSOLL & ROONEY PC
Thomas G. Collins, Esq.
Adrian Zareba, Esq.
409 North Second Street, Suite 500
Harrisburg, PA  17101-1357
(717) 237-4800

Gretchen Woodruff Root, Esq.
501 Grant Street, Suite 200
Pittsburgh, PA  15219-4413
(412) 562-8800

*Counsel for Defendants,*
*Geisinger Health Plan and*
*SCIOinspire Corp. (f/k/a Socrates, Inc.)*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................1

RELEVANT PROCEDURAL AND FACTUAL BACKGROUND ........................2

STATEMENT OF QUESTIONS INVOLVED........................4

ARGUMENT ................................................5

    I.    Plaintiffs Are Not Entitled To Recover "Benefits Due" Because Defendants Were Authorized To Assert Subrogation Claims With Respect To Plaintiffs' Tort Recoveries. ........................5

        A.    An Insurer With Subrogation Rights Steps Into The Shoes Of An Insured And Acquires The Insured's Rights Against The Third-Party Tortfeasor. ........................5

        B.    Geisinger Was Entitled To Assert Its Subrogation Claims And Obtain Reimbursement For The Expenses It Paid On Plaintiffs' Behalf. ........................7

        C.    Plaintiffs Cannot Nullify Geisinger's Subrogation Rights By Designating Their Settlements As Precluding Payment for Medical Damages. ........................11

    II.    Plaintiffs' Claims For Breach Of Fiduciary Duty (Counts 2, 3, 4, 6, 8, 9, And 12) Fail To The Extent They Are Based On The Faulty Premise That Defendants Could Not Seek Reimbursement Under Plaintiffs' Respective Plans. ........................13

    III.    Counts 5 And 11, Which Seek Relief On The Basis That Defendants Did Not Act In Accordance With ERISA Common Law, Should Be Dismissed Because Geisinger's Right To Recovery Is Governed By The Plans' Unambiguous Written Provisions. ........................18

    IV.    Counts 6 And 12, Which Seek Relief On The Basis That Defendants Did Not Follow Reasonable Claims Procedures, Should Be Dismissed Because 29 U.S.C. § 1133 Does Not Provide A Private Right Of Action. ........................19

- i -

V.      Plaintiffs Are Not Entitled To Any Relief Under The "Common Fund" Or "Make-Whole" Doctrines, Which They Rely Upon Throughout Their Amended Complaint. ............................................ 20

      A.      Plaintiffs Cannot Rely On Conclusory Allegations. ................. 20

      B.      Plaintiffs Cannot Rely On The "Make Whole" Doctrine To Defeat Defendants' Subrogation Claims Because The Amounts For Which Plaintiffs Settled Their Actions Are Presumptively Commensurate With Their Losses. ................. 21

CONCLUSION ...................................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. States Ins. Co. v. Fletcher*,
  591 N.E.2d 320 (Ohio App. 1990) ....................................................12

*Associated Hosp. Service of Philadelphia v. Pustilnik*,
  396 A.2d 1332 (Pa. Super. Ct. 1979)................................................21

*Bill Gray Enters. v. Gourley*,
  248 F.3d 206 (3d Cir. 2001) ............................................................19

*Burstein v. Ret. Account Plan for Emps. of Allegheny Health Educ. &*
  *Research Found.*,
  334 F.3d 365 (3d Cir. 2003) ............................................................14

*Chapman v. Klemick*,
  750 F. Supp. 520 (S.D. Fla. 1990) ...................................................18

*Cohen v. Horizon Blue Cross Blue Shield of N.J.*,
  Case No. 2:13-CV-03057,
  2013 U.S. Dist. LEXIS 153438 (D.N.J. Oct. 25, 2013) ...................19

*Electro-Mechanical Corp. v. Ogan*,
  9 F.3d 445 (6th Cir. 1993) ...........................................................6, 9

*Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency, Inc.*,
  72 A.3d 36 (Conn. 2013) ..................................................................6

*J.C. Penney Co. v. McNaul*,
  Case No. 87-0565-CV-W-JWO,
  1988 U.S. Dist. LEXIS 8606 (W.D. Mo. July 22, 1988) .............9, 19

*Medica, Inc. v. Atl. Mut. Ins. Co.*,
  566 N.W. 2d 74 (Minn. 1997) ...........................................................6

*Meinhardt v. Unisys Corp.*,
  74 F.3d 420, 441 (3d Cir. 1996) ......................................................14

*Minerley v. Aetna, Inc.*,
  Case No. 13-1377,
  2019 U.S. Dist. LEXIS 107771 (D.N.J. June 27, 2019)....................................17

*Minerley v. Aetna, Inc.*,
  801 F. App'x 861 (3d Cir. 2020) .........................................................................17

*Newcomer v. Henkels & McCoy Inc.*,
  Case No. 1:16-cv-2119,
  2017 U.S. Dist. LEXIS 120427, at *14 (M.D. Pa. Aug. 1, 2017) .....................14

*Pegram v. Herdrich*,
  530 U.S. 211 (2000)......................................................................................14, 16

*Prof'l Flooring Co. v. Bushar Corp.*,
  152 A.3d 292 (Pa. Super. Ct. 2016)....................................................................22

*Provident Life & Accident Ins. Co. v. Williams*,
  858 F. Supp. 907 (W.D. Ark. 1994) ....................................................................11

*Rathbun v. Health Net of the Ne., Inc.*,
  110 A.3d 304 (Conn. 2015) .................................................................................10

*Ryan by Capria-Ryan v. Fed. Express Corp.*,
  78 F.3d 123 (3d Cir. 1996) ..................................................................................18

*Santiago v. Warminster Twp.*,
  629 F.3d 121 (3d Cir. 2010) ................................................................................20

*U.S. Steel Homes Credit Corp. v. S. Shore Dev. Corp.*,
  419 A.2d 785 (Pa. Super. Ct. 1980)...................................................................6, 8

*U.S. v. CITGO Asphalt Ref. Co.*,
  886 F.3d 291 (3d Cir. 2018) ..................................................................................5

*United Nat'l Ins. Co. v. M. London*,
  23 Phila. 598, 605 (Phila. Super. Ct. 1992) .........................................................9

*US Airways, Inc. v. McCutchen*,
  569 U.S. 88 (2013)...............................................................................................17

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996).............................................................................................13

*Waller v. Hormel Foods Corp.*,
  120 F.3d 138 (8th Cir. 1997) ...............................................................................18

*Wright v. Aetna Life Ins. Co.*,
  110 F.3d 762 (11th Cir. 1997) ..............................................................................12

*Yonack v. Interstate Sec. Co.*,
  217 F.2d 649 (5th Cir. 1954) ..................................................................................7

**Statutes**

29 U.S.C. § 1001 ...............................................................................................................1

29 U.S.C. § 1002(16)(B) ..................................................................................................3

29 U.S.C. § 1104(a)(1) ...................................................................................................13

29 U.S.C. § 1133 .........................................................................................................4, 19

**Other Authorities**

29 CFR § 2560.503-1 .......................................................................................................19

# INTRODUCTION

This action pertains to benefits claimed to be due under employee welfare benefit plans governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). The plans were issued by the Geisinger Health Plan ("Geisinger") to the respective employers of Lori Freitas and Kaylee McWilliams (collectively, "Plaintiffs"). Geisinger paid medical benefits under the plans for Plaintiffs' personal injuries caused by third-party tortfeasors.

Plaintiffs then each asserted and settled claims regarding their personal injuries against the third-party tortfeasors. In conjunction with those settlements, Geisinger—through a third-party service provider, additional Defendant SCIOinspire Corp. f/k/a Socrates, Inc. ("SCIOinspire")—asserted subrogation claims to recover amounts associated with the medical expenses paid on Plaintiffs' behalf. Plaintiffs admit that their plans contained subrogation provisions for the benefit of Geisinger, which entitled Geisinger to "step into the shoes" of Plaintiffs for purposes of recovery from the third-party tortfeasors. Plaintiffs nevertheless initiated this action seeking to nullify Geisinger's subrogation rights.

The Amended Class Action Complaint fails to state a claim upon which relief may be granted. Plaintiffs' claims are predicated on the mistaken belief that Geisinger unlawfully sought "reimbursement" with respect to Plaintiffs' settlements with the third-party tortfeasors. Subrogation, however, is a broad right

grounded in equitable principles—it is not, as Plaintiffs posit, mutually exclusive to reimbursement. Additionally, Plaintiffs were expressly prohibited by the express terms of their respective plans from taking any action that would prejudice Geisinger's subrogation rights, including the release of their personal-injury claims. Accordingly, Plaintiffs' attempt to recover benefits and assert claims for purported breaches of fiduciary duty fail as a matter of law.

Plaintiffs also attempt to bootstrap other claims to their theory of liability, including claims under federal common law and through regulations issued under ERISA. None of these claims provide Plaintiffs with a basis of relief, especially once the threshold subrogation issue is decided. Finally, Plaintiffs' claims regarding attorney fees and the "make whole" doctrine are either premised on conclusory allegations or are contrary to well-established Pennsylvania precedent. All Counts of this action should be dismissed.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

Defendants' Motion to Dismiss Plaintiffs' Amended Class Action Complaint [ECF 9] ("Motion") outlines the relevant procedural and factual background. To avoid unnecessary duplication, and for this Court's convenience, Defendants incorporate that background by reference and summarize the salient points below:

- Geisinger owns and operates a health maintenance organization ("HMO") that arranges for specified health services to its members on a prepaid basis. Motion ¶ 5. It contracts with Pennsylvania employers to provide comprehensive medical care for their

employees.  Motion ¶ 6.  In many cases, the result is an employee welfare benefit plan governed by ERISA, with the employer serving as plan sponsor in accordance with 29 U.S.C. § 1002(16)(B).  *Id.*

- SCIOinspire specializes in subrogation services.  Motion ¶ 7. Geisinger contracts with SCIOinspire to enforce the subrogation provisions under its contracts with Pennsylvania employers.  *Id.*

- Plaintiffs, Lori Freitas and Kaylee McWilliams, allege that they were each enrolled in employee welfare benefit plans that were provided by Geisinger and governed by ERISA.  Motion ¶ 8.

- According to Plaintiffs, they each sustained personal injuries while enrolled in their respective welfare benefit plans.  Motion ¶ 9. Plaintiffs contend that Geisinger paid Lori Freitas $17,590.83 as a result of her injuries, and that Geisinger paid Kaylee McWilliams $43,934.76 as a result of her injuries.  *Id.*

- Plaintiffs admit that Geisinger paid the medical benefits that were associated with their personal injuries, and that Plaintiffs each subsequently asserted and settled claims against third-party tortfeasors for their personal injuries.  Motion ¶ 12.

- Plaintiffs allege that the operative subrogation provision relevant to their respective claims states as follows:

  > **8.3 Subrogation.**  The Plan has the right of subrogation to the extent permitted by the law against third parties that are legally liable for the expenses paid by the Plan under this Certificate. The Member shall do nothing to prejudice the subrogation rights of the Plan.  The Plan may recover benefits amounts paid under this certificate under the right of subrogation to the extent permitted by law.

  Motion ¶ 19.

- Plaintiffs allege that Defendants asserted claims against each of them, seeking to be "reimbursed" from the proceeds of Plaintiffs'

respective tort settlements as a result of the medical benefits that Geisinger had previously paid on Plaintiffs' behalf. Motion ¶ 14.

## STATEMENT OF QUESTIONS INVOLVED

1.      Whether Plaintiffs can nullify Geisinger's subrogation rights – asserted in conjunction with settlements Plaintiffs entered into with their respective third-party tortfeasors – where under the plans at issue (1) Geisinger was legally and equitably permitted to assert subrogation claims related to Plaintiffs' personal injuries; and (2) Plaintiffs were prohibited from engaging in conduct that would prejudice Geisinger's subrogation rights.

*Suggested answer:  No.*

2.      Whether Plaintiffs can assert claims for breach of fiduciary duty when Defendants were authorized by the plans' plain language to seek subrogation and, as such, were under no obligation to act in the financial interests of Plaintiffs when asserting such claims.

*Suggested answer:  No.*

3.      Whether Plaintiffs' can utilize federal common law to curtail Geisinger's subrogation rights where the plans' subrogation provision is unambiguous and Geisinger acted in accordance with the provision.

*Suggested answer:  No.*

4.      Whether Plaintiffs' can enforce ERISA claims procedure rules under 29 U.S.C. § 1133, where that provision does not contain a private cause of action.

*Suggested answer:  No.*

5.      Whether Plaintiffs can save their claims by parroting various legal principles (*e.g.*, the "common-fund" doctrine) without alleging any substantive facts?

*Suggested answer:  No.*

6.      Whether Plaintiffs can curtail Geisinger's subrogation rights by averring that their losses were higher than the amounts for which they chose to settle their claims?

*Suggested answer:  No.*

### <u>ARGUMENT</u>

**I.      Plaintiffs Are Not Entitled To Recover "Benefits Due" Because Defendants Were Authorized To Assert Subrogation Claims With Respect To Plaintiffs' Tort Recoveries.**

In Counts 1 and 7, Plaintiffs seek to assert ERISA Section 502(a)(1)(B) claims to recover "benefits due" and to "enforce [their] rights under the terms of the plan."  Amended Class Action Complaint [ECF 7] (hereinafter, "Amended Compl.") ¶¶ 74, 214.  Plaintiffs, however, cannot nullify their plans' subrogation provisions.

**A.      An Insurer With Subrogation Rights Steps Into The Shoes Of An Insured And Acquires The Insured's Rights Against The Third-Party Tortfeasor.**

At its core, subrogation is a legal principle whereby a party is entitled to enforce the legal rights of another party.  *U.S. v. CITGO Asphalt Ref. Co.*, 886 F.3d

291, 309 (3d Cir. 2018). In the ERISA context, an insurer may assume the place of a beneficiary to recover a loss—*i.e.*, the amount the plan paid on the plan beneficiary's behalf to cover the beneficiary's medical expenses. *See Electro-Mechanical Corp. v. Ogan*, 9 F.3d 445 (6th Cir. 1993). Put another way, the insurer is permitted to "step into the shoes" of a beneficiary and acquire the rights that the beneficiary could have asserted against the third party, to the extent of the payments made by the plan. *See Medica, Inc. v. Atl. Mut. Ins. Co.*, 566 N.W. 2d 74 (Minn. 1997) (comparing the language of two policies, one with subrogation language and one without).

Courts routinely apply the doctrine of subrogation because, as a practical matter, it places the ultimate burden of debt upon the individual who in good conscience ought to pay it. *See U.S. Steel Homes Credit Corp. v. S. Shore Dev. Corp.*, 419 A.2d 785, 788 n.2 (Pa. Super. Ct. 1980). It acts as a legal fiction by force of which an obligation extinguished by payment made by a third party is considered as continuing to subsist for the benefit of that third person. *Id.* "Subrogation further promotes equity by preventing an insured from receiving more than full indemnification as a result of recovering from both the wrongdoer and the insurer for the same loss, which would unjustly enrich the insured." *Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency, Inc.*, 72 A.3d 36, 40 (Conn. 2013) (citation and internal quotations omitted). "Being founded on principles of

natural reason and justice . . . [subrogation] is a highly favored doctrine and one which has been most liberally dealt with in the courts." *Yonack v. Interstate Sec. Co.*, 217 F.2d 649, 651 (5th Cir. 1954).

**B.**   **Geisinger Was Entitled To Assert Its Subrogation Claims And Obtain Reimbursement For The Expenses It Paid On Plaintiffs' Behalf.**

Plaintiffs' own allegations make clear that Geisinger was permitted to assert its subrogation rights under the following provision in their respective plans:

> **8.3 Subrogation.**  The Plan has the right of subrogation to the extent permitted by the law against third parties that are legally liable for the expenses paid by the Plan under this Certificate.  The Member shall do nothing to prejudice the subrogation rights of the Plan.  The Plan may recover benefits amounts paid under this certificate under the right of subrogation to the extent permitted by law.

Amended Compl. ¶ 32.  Plaintiffs also admit that Geisinger paid medical expenses on their behalf and that Plaintiffs subsequently settled their personal-injury claims with the responsible tortfeasors.  Amended Compl. ¶¶ 22, 29.  Geisinger was, thus, permitted under the express terms of Plaintiffs' respective plans—and as a matter of law and equity—to step into Plaintiffs' shoes to recover from the third-party tortfeasors the amounts that Geisinger had previously paid on Plaintiffs' behalf. Here, Plaintiffs had already settled with their respective tortfeasors.  Motion ¶ 12. Accordingly, Geisinger was forced to look to Plaintiffs for recovery of the amounts paid to Plaintiffs by the third-party tortfeasors.

Through SCIOinspire, Geisinger asserted a claim to the proceeds from settlements that were obtained by Plaintiffs from the third-party tortfeasors. Amended Compl. ¶ 35. These settlements compensated Plaintiffs for their personal-injury claims. Amended Compl. ¶¶ 22, 29 ("The insurer for the tortfeasor did resolve, settle and make payment to [Plaintiffs] in compensation for the personal injuries she sustained in the injury-causing event."). Geisinger thus sought to recover the expenses it had paid on Plaintiffs' behalf regarding their personal injuries in conjunction with Plaintiffs' settlements of claims associated with the very same personal injuries. So what is Plaintiffs' issue?

Plaintiffs do not allege that Geisinger or SCIOinspire sought to be paid any monies from Plaintiffs personally. Nevertheless, Plaintiffs take issue with Defendants' actions, apparently, because the subrogation provision at issue refers to "third parties," whereas Plaintiffs contend that Defendants took an adverse action against *their* tort recoveries. Amended Compl. ¶ 34. The disconnect here is that Plaintiffs are assuming that the claims associated with their personal injuries are exclusively *their* claims, which would make the proceeds resulting from a settlement of those claims *their* proceeds. They are wrong.

Applying the doctrine of subrogation, a portion of Plaintiffs' right to recovery was "extinguished by payment made by a third party"—that is, Geisinger. *See U.S. Steel Homes*, 419 A.2d at 788 (citation omitted). When Plaintiffs brought

- 8 -

their claims against the third-party tortfeasors, a portion of those claims was "considered as continuing to subsist for the benefit of that third person." *Id.* Plaintiffs cannot escape this fact.

Plaintiffs' attempt to extinguish Geisinger's subrogation rights by styling Geisinger's actions as for "reimbursement" misses the mark. As the terms "subrogation" and "reimbursement" are often used interchangeably by courts and practitioners, there is no bright-line rule separating the two doctrines. *See, e.g.*, *Electro-Mechanical Corp. v. Ogan*, 9 F.3d 445, 446 (6th Cir. 1993) (affirming grant of summary judgment holding that plan administrator could recoup subrogation claim against the settlement proceeds of a medical malpractice action brought by defendants); *United Nat'l Ins. Co. v. M. London*, 23 Phila. 598, 605 (Phila. Super. Ct. 1992) ("The doctrine of subrogation entitles an insurer to recover the amount of insurance proceeds it has paid from any settlement fund or judgment obtained by the insured from a third-party tortfeasor . . . [s]ubrogation rights rest upon a long standing policy against double recovery.").

Indeed, principles of **subrogation** have been applied even where the plan's recovery rights against third-party sources can be supplied only by invoking equitable principles of unjust enrichment, like where a plan did not contain a conventional subrogation clause, but instead had only a "reimbursement" provision that was found inapplicable. *See J.C. Penney Co. v. McNaul*, No. 87-0565-CV-W-

JWO, 1988 U.S. Dist. LEXIS 8606 (W.D. Mo. July 22, 1988).  In that instance,

recovery from the proceeds of a wrongful-death settlement was allowed

notwithstanding the absence of plan language expressly creating rights against

third-party sources.  *Id.*  Significantly, Plaintiffs have already conceded that

Geisinger has a *contractual* right to subrogation.  Ultimately, Plaintiffs errantly

hang their hat on a perceived distinction between "subrogation" and

"reimbursement" which simply does not exist in the law.

Significantly, at least one court has already squarely rejected Plaintiffs'

argument.  In Connecticut, the Department of Social Services receives rights to

"subrogation" by operation of statute against third parties who are legally

responsible for the payment of the costs of medical care provided under the state

Medicaid program.  *See Rathbun v. Health Net of the Ne., Inc.*, 110 A.3d 304

(Conn. 2015).  There, as here, plaintiff posited that the "department *only* [had] the

right to step into the recipient's shoes and to initiate proceedings against persons

*other than* the recipient."  *Id.* at 311 (emphasis in original).  Rejecting plaintiff's

argument, the Connecticut Supreme Court examined numerous treatises discussing

the principles of subrogation and ultimately concluded that "[t]hese authorities

provide strong support for the conclusion that the right to subrogation conferred

. . . *includes the right to seek reimbursement from a . . . recipient who has*

*recovered damages for medical costs from a third party*."  *Id.* at 313 (emphasis

added).  For the same reasons, Plaintiffs' efforts to distinguish subrogation from reimbursement here are also unavailing.

In fact, an "equitable right of reimbursement" is created in circumstances "when an insured settles with a tortfeasor and thereby destroys the insurer's subrogation interest."  *See Provident Life & Accident Ins. Co. v. Williams*, 858 F. Supp. 907, 912 (W.D. Ark. 1994).  The contractual provision here provides even more justification for such enforcement of Geisinger's reimbursement right, especially when considering that, even without such a provision, "equitable rights of subrogation and reimbursement are frequently granted by the courts."  *Id.*  At bottom, Plaintiffs cannot escape the application of equitable principles expressly created by contract.

> **C. Plaintiffs Cannot Nullify Geisinger's Subrogation Rights By Designating Their Settlements As Precluding Payment for Medical Damages.**

As explained in Defendants' Motion, Geisinger's subrogation rights are not tied to any affirmation on Plaintiffs' part that their settlements encompassed payment for medical expenses.  *See* Motion ¶¶ 23-32.  The key is that Plaintiffs were settling the very claims that could have allowed for recovery of their medical expenses.

Geisinger's subrogation provision is comprised of three sentences, each of which confers a separate meaning.  The first sentence clarifies *when* Geisinger can

recover:  "The Plan has the right of subrogation to the extent permitted by the law against third parties that are legally liable for the expenses paid by the Plan under this Certificate."  *See* Motion ¶ 25.  This sentence indicates that Geisinger's subrogation rights are broadly construed and apply when there is a relationship between the recovery at issue and the third party legally liable for the medical expenses.  Whether Plaintiffs self-report to have received payment for medical expenses is beside the point.  *See Wright v. Aetna Life Ins. Co.*, 110 F.3d 762, 765 n.3 (11th Cir. 1997) ("Since [Defendant] was not a party to the settlement agreement, that agreement's purported allocation of damages does not govern the district court's determination . . . [t]o hold otherwise would allow [Plaintiff] and the third party to control [Defendant's] reimbursement rights.")

The conclusion that Plaintiffs cannot defeat Geisinger's subrogation rights by unilaterally settling claims is inescapable in light of the second sentence in the subrogation provision:  "The Member shall do nothing to prejudice the subrogation rights of the Plan."  *See* Motion ¶ 26.  Even if Plaintiffs could legally nullify Geisinger's subrogation rights, Geisinger could still assert a claim against Plaintiffs for repayment in such circumstances.  *Cf. Am. States Ins. Co. v. Fletcher*, 591 N.E.2d 320, 321 (Ohio Ct. App. 1990) (". . . an insured may not settle with a tortfeasor, giving a general release, and then collect medical expenses against his

own insurer when there is a subrogation clause for such payments since, in so doing, the insurer's right of subrogation is destroyed.").

The ultimate issue is whether Plaintiffs have settled their claims for the personal injuries associated with their medical expenses. And here, they have. Accordingly, Counts 1 and 7 must be dismissed as a matter of law.

## II. Plaintiffs' Claims For Breach Of Fiduciary Duty (Counts 2, 3, 4, 6, 8, 9, 10, And 12) Fail To The Extent They Are Based On The Faulty Premise That Defendants Could Not Seek Reimbursement Under Plaintiffs' Respective Plans.

The statutory basis for an ERISA breach of fiduciary duty claim is found at 29 U.S.C. § 1104(a)(1). That provision specifies that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i). Additionally, a plan fiduciary must discharge duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

As an initial matter, Section 502(a)(3) of ERISA, the vehicle for Plaintiffs' breach of fiduciary duty claims, is a "general 'catchall' provision [that] . . . act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v.*

*Howe*, 516 U.S. 489, 490 (1996). Therefore, the Supreme Court has indicated, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate." *Id.* at 515. Here, because Plaintiffs' "injuries" created causes of action under ERISA Section 502(a)(1)(B), Plaintiffs cannot simultaneously pursue claims under ERISA Section 502(a)(3). *See Newcomer v. Henkels & McCoy, Inc.*, No. 1:16-cv-2119, 2017 U.S. Dist. LEXIS 120427, at *14 (M.D. Pa. Aug. 1, 2017) (dismissing Plaintiff's ERISA Section 502(a)(3) claim as identical to his claim for benefits under Section 502(a)(1)(B)).

Assuming that Plaintiffs could proceed on these two theories simultaneously, which Defendants dispute, the Third Circuit has recognized the following fiduciary duties:

- **Duty of Loyalty** (asserted in Counts 2, 8, 4 and 10): When acting in a fiduciary capacity, an administrator must act solely and exclusively in the interests of plan participants and beneficiaries. *See Pegram v. Herdrich*, 530 U.S. 211, 224 (2000).

- **Duty to Disclose** (asserted in Counts 3 and 9): When acting in a fiduciary capacity, an administrator must "convey complete and accurate information when it speaks to participants and beneficiaries regarding plan benefits." *Meinhardt v. Unisys Corp.* (In re Unisys Sav. Plan Litig.), 74 F.3d 420, 441 (3d Cir. 1996).

- **Duty to Avoid Misrepresentation** (asserted in Counts 3 and 9): When acting in a fiduciary capacity, an administrator can be liable for a material misrepresentation if it is relied upon by plaintiff to his or her detriment. *Burstein v. Ret. Account Plan for Emps. of*

*Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 384 (3d Cir. 2003).[1]

While these fiduciary duties are conceptually distinct, Plaintiffs commit the same fatal flaw each time they assert a claim for breach of fiduciary duty. Plaintiffs start from the conclusion that Defendants were *not* authorized to pursue claims of "reimbursement" following their respective settlements with the third-party tortfeasors, and from there allege that Defendants breached their fiduciary duties by seeking to be paid out of Plaintiffs' respective tort settlements. *See* Motion ¶¶ 37-38 (outlining Plaintiffs' reliance on the faulty premise in each claim).

As a threshold matter, however, Defendants *were* authorized by the plain language in Plaintiffs' respective plans to assert subrogation claims and, accordingly, to make reimbursement demands regarding Plaintiffs' settlement of their tort claims. *See supra*, Section I. Plaintiffs' position amounts to a contention that an insurance company is prohibited from enforcing the terms of an insurance policy if those terms have an adverse effect on the insured. According to the Plaintiffs, insurance companies are prohibited from administering plans "in a way favorable to themselves[.]" Amended Compl. ¶¶ 99, 239. As such, whenever

---

[1]     Plaintiffs' further attempt to enforce ERISA's claims management regulations in Counts 6 and 12. Such argument is addressed separately below. Plaintiffs there also allude to various fiduciary duties, making this section applicable to those Counts as well.

presented with a choice as to "who would get money," Amended Compl. ¶¶ 102, 242, insurance companies must each time choose their insureds. From an ERISA perspective, the premise underlying Plaintiffs' claims is that Defendants are plan fiduciaries for *all* purposes in *all* contexts, and must accordingly act solely in Plaintiffs' economic interests, regardless of the governing policy's terms, and regardless of the context in which they are acting. Amended Compl. ¶¶ 102-104; 242-244. From this premise, Plaintiffs assert Defendants' recovery of subrogation amounted to a conflict of interest in breach of their fiduciary duties. *Id.*

Plaintiffs' position, boiled down, is that Defendants' ERISA statutory duty was to ignore, not enforce, the plans' express subrogation terms, because those terms were financially unfavorable to Plaintiffs. Notwithstanding the patent absurdity of such position, Plaintiffs' reasoning is further flawed in that Defendants were *not* acting in a fiduciary capacity when enforcing Geisinger's subrogation rights.

The Supreme Court dismissed similar claims in *Pegram v. Herdrich*, 530 U.S. 211 (2000), where a plaintiff alleged that an ERISA plan's health insurer had a conflict of interest when denying coverage for certain treatments, even though the insurer's actions were consistent with the terms of the plan policy. The Supreme Court recognized that "under ERISA . . . a fiduciary may also have financial interests adverse to beneficiaries." *Id.* at 225. Indeed, allowing such

claims to go forward would portend to "nothing less than elimination of the for-profit HMO" where "[r]ecovery would be warranted simply upon showing that the profit incentive . . . would generally affect . . . decisions, in derogation of the fiduciary standard to act solely in the interest of the [beneficiary] without possibility of conflict." *Id.* at 232-33.

Adhering to the terms of an ERISA plan is not a breach of fiduciary duty, regardless of whether such adherence works to the financial detriment of a participant. *See US Airways, Inc. v. McCutchen*, 569 U.S. 88 (2013) (holding that employer was permitted to enforce the reimbursement provision in its plan, relying on principle that the terms of the ERISA plan govern). In other words, "it cannot be a breach of the fiduciary duty of loyalty for an insurance company to enforce the terms of an insurance policy." *Minerley v. Aetna, Inc.*, No. 13-1377, 2019 U.S. Dist. LEXIS 107771, at *26 (D.N.J. June 27, 2019). Significantly, the Third Circuit has recently affirmed these principles. *See Minerley v. Aetna, Inc.*, 801 F. App'x 861, 866 (3d Cir. 2020) ("[Plaintiff] claims that the defendants breached a duty of loyalty owed to him by seeking reimbursement, contrary to his interest as a beneficiary of and participant in . . . [the] employee benefit plan. We are unconvinced.") Dismissal of Plaintiffs' claims for breach of fiduciary duty here is equally warranted.

**III.  Counts 5 And 11, Which Seek Relief On The Basis That Defendants Did Not Act In Accordance With ERISA Common Law, Should Be Dismissed Because Geisinger's Right To Recovery Is Governed By The Plans' Unambiguous Written Provisions.**

Geisinger's rights as an insurer are governed by the terms of Plaintiffs' respective plans, which grant Geisinger the right of subrogation and recovery "to the extent permitted by law."  *See Chapman v. Klemick*, 750 F. Supp. 520, 523 (S.D. Fla. 1990).  As the Third Circuit has made clear, "while ERISA was enacted to provide security in employee benefits, it protects only those benefits provided in the plan . . . ERISA mandates no minimum substantive content for employee welfare benefit plans, and therefore a court has no authority to draft the substantive content in such plans."  *Ryan by Capria-Ryan v. Fed. Express Corp.*, 78 F.3d 123, 126 (3d Cir. 1996).

Here, the grant of subrogation rights is clear and expansive in nature.  *See Waller v. Hormel Foods Corp.*, 120 F.3d 138, 140 (8th Cir. 1997) ("[O]ne may presume that this term [subrogation] does not have great currency among laypersons, but this neither defeats reasonable expectations nor creates ambiguity.").  And Plaintiffs themselves do not allege that the subrogation provision is ambiguous or incomplete; as such, reliance on federal common law to interpret the plans' language is unnecessary.  Indeed, the Third Circuit has been hesitant to adopt federal common law to import any principles to limit a plan's subrogation right, and previously rejected application of the "make whole"

doctrine because "importing federal common law doctrines to ERISA plan interpretation is generally inappropriate, particularly when the terms of an ERISA plan are clear and unambiguous." *Bill Gray Enters. v. Gourley*, 248 F.3d 206, 220 n.13 (3d Cir. 2001).

Additionally, even if recourse to common law were necessary, Plaintiffs cannot ignore well-established Pennsylvania law in the hope that this Court will craft more favorable federal common law. *See J.C. Penney Co. v. McNaul*, No. 87-0565-CV-W-JWO, 1988 U.S. Dist. LEXIS 8606, at *17 (W.D. Mo. July 22, 1988) (giving "appropriate deference to state law" in applying principles of subrogation). And, as explained below, Pennsylvania common law does not entitle Plaintiffs to any relief. Accordingly, Counts 6 and 13, seeking to apply federal common law, must be dismissed as a matter of law.

## IV. Counts 6 And 12, Which Seek Relief On The Basis That Defendants Did Not Follow Reasonable Claims Procedures, Should Be Dismissed Because 29 U.S.C. § 1133 Does Not Provide A Private Right Of Action.

As explained in Defendants' Motion, Plaintiffs are essentially seeking in Counts 6 and 12 to enforce the terms of 29 U.S.C. § 1133 and its implementing regulations, which set forth the manner in which ERISA plans must adjudicate participant claims and appeals. Amended Compl. ¶¶ 195, 335 (citing to 29 CFR § 2560.503-1(c)(2), (b)(5), and (f)). But there is no private cause of action to enforce the provisions of 29 U.S.C. § 1133. *See Cohen v. Horizon Blue Cross Blue*

*Shield of N.J.*, Civil Action No. 2:13-CV-03057, 2013 U.S. Dist. LEXIS 153438, at *25 (D.N.J. Oct. 25, 2013).  Accordingly, Plaintiffs' claims in Counts 6 and 12 must be dismissed.

**V.    Plaintiffs Are Not Entitled To Any Relief Under The "Common Fund" Or "Make-Whole" Doctrines, Which They Rely Upon Throughout Their Amended Complaint.**

In a last-ditch effort to save their claims, Plaintiffs throughout their Class Action Complaint make reference to legal principles in conclusory fashion. Plaintiffs, for example, refer to the "make whole" doctrine in no less than 10 out of 12 causes of action.  *See, e.g.*, Amended Compl. ¶¶ 78, 106, 126, 150, 177, 218, 246, 266, 290, and 317.  None of these legal principles, however, provide Plaintiffs with a basis for relief.

**A.    Plaintiffs Cannot Rely On Conclusory Allegations.**

Conclusory allegations are entitled to no weight in deciding a motion to dismiss.  *Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010).  Here, Plaintiffs boldly assert throughout their Amended Complaint—without any elaboration or context—that Defendants improperly asserted reimbursement demands: (1) without first reducing the demands by the pro-rata share attorney fees and expenses that the class plaintiff insureds incurred in their underlying litigation and (2) without having first made sure that the insureds were "made whole and fully compensated."  *See, e.g.*, Amended Compl. ¶¶ 47, 48.  These conclusory

allegations merely parrot various legal principles and provide no basis for Plaintiffs' recovery in this action.

**B. Plaintiffs Cannot Rely On The "Make Whole" Doctrine To Defeat Defendants' Subrogation Claims Because The Amounts For Which Plaintiffs Settled Their Actions Are Presumptively Commensurate With Their Losses.**

Finally, Plaintiffs assert that they must first be "made whole and fully compensated for all of their damages and losses" before Geisinger can receive payment on its subrogation claims. *See, e.g.*, Amended Compl. ¶ 48. But under long-standing Pennsylvania law, an insured cannot defeat a subrogation claim by, on the one hand, agreeing to accept a certain amount as settlement for damages and then, on the other hand, averring that losses were actually greater than the agreed upon amount. *See, e.g.*, *Associated Hosp. Service of Philadelphia v. Pustilnik*, 396 A.2d 1332, 1337-1338 (Pa. Super. Ct. 1979) vacated on other grounds, 439 A.2d 1149 (Pa. 1981) ("When a subrogor settles, he waives his right to a judicial determination of his losses, and conclusively establishes the settlement amount as full compensation for his damages.").

Plaintiffs here did not test out what their full loss was by pressing their suits against the tortfeasors to verdict, and, therefore, cannot avail themselves of the principle they seek to invoke. "It would never do in administering such an equitable doctrine as subrogation to permit the insured to defeat recovery of any sum from [her] by [her] insurer merely by making claim as to [her] total loss

without having [her] loss ascertained." *Prof'l Flooring Co. v. Bushar Corp.*, 152

A.3d 292, 305 (Pa. Super. Ct. 2016) (citation and quotation marks omitted).  As

such, Plaintiffs attempts to save their claims on this ground also fail.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss should be

granted.


Dated: October 8, 2020                    Respectfully submitted,

BUCHANAN INGERSOLL & ROONEY PC

By: */s/Thomas G. Collins*
Thomas G. Collins, Esq. (PA I.D. #75896)
Adrian Zareba, Esq. (PA I.D. #318649)
409 North Second Street, Suite 500
Harrisburg, PA  17101-1357
Phone:  (717) 237-4800
e-mail:  thomas.collins@bipc.com
e-mail:  adrian.zareba@bipc.com

Gretchen Woodruff Root, Esq. (PA I.D. #309683)
501 Grant Street, Suite 200
Pittsburgh, PA  15219-4413
Phone:  (412) 562-8800
e-mail:  gretchen.root@bipc.com

*Counsel for Defendants,*
*Geisinger Health Plan and*
*SCIOinspire Corp. (f/k/a Socrates, Inc.)*

## CERTIFICATE OF LOCAL RULE 7.8(B)(2) COMPLIANCE

It is hereby certified that Defendant's Brief in Support of its Motion to Dismiss Plaintiffs' Amended Class Action Complaint contains 4,918 words (exclusive of tables of contents and authorities, signatures, and this certificate), according to the word processing system used to prepare it, and that the brief therefore complies with the Local Rule.

*/s/Thomas G. Collins*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was transmitted to the Court electronically for filing and for electronic service upon the following attorneys of record this 8th day of October, 2020:

Charles Kannebecker, Esq.
Law Office of Kannebecker & Mincer, LLC
104 West High Street
Milford, PA 18337
kannebecker@wskllawfirm.com

*Counsel for Plaintiff*


*/s/Thomas G. Collins*

*Counsel for Defendants,*
*Geisinger Health Plan and*
*SCIOinspire Corp. (f/k/a Socrates, Inc.)*