**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LORI FREITAS and KAYLEE MCWILLIAMS individually and on behalf of all others similarly situated, | : : : : : | |
| Plaintiffs, | : : | No. 4:20-cv-1236 (MWB) |
| v. | : : | |
| GEISINGER HEALTH PLAN, and SOCRATES, INC. | : : : | |
| Defendants. | : : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**


::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

Charles Kannebecker, Esq.
Pa. Bar ID No. 58612
THE LAW OFFICE OF KANNEBECKER & MINCER, LLC
104 W. High St.
Milford, PA 18337
(570) 296-6471
kannebecker@wskllawfirm.com

*Attorney for Plaintiffs*

# Table of Contents

**Page**

PROCEDURAL AND FACTUAL BACKGROUND ......................... 1

ARGUMENT ................................................. 2

    I.    The Plan Does Not Grant Defendants a
          Right to Reimbursement .......................... 2

          A.    Overview of Subrogation and
                Reimbursement ............................... 2

          B.    Subrogation and Reimbursement are
                Separate and Distinct Doctrines ............. 4

          C.    The Plan's Terms Clearly and Distinctly
                Confer Upon Defendants the Right of
                Subrogation, not Reimbursement ............. 6

          D.    Subrogation Rights Against a Third Party
                 Do Not Confer Reimbursement Rights
                Against the Plaintiff ...................... 10

                i.    Common law principles cannot add
                      to or expand existing plan terms ....... 10

                ii.   The Plan does not provide Plaintiffs
                      any notice of a right of
                      reimbursement against them or
                      their tort recoveries ................. 15

                iii. Defendants' claim that they were
                      "prejudiced" by Plaintiffs' settling
                      of their personal injury claims is
                      not appropriate on a Motion to
                      Dismiss .............................. 16

    II.   Defendants' Conduct Breached Their Fiduciary
          Duties to Plaintiffs Under ERISA ................ 18

    III. Defendants Violated Well-Established ERISA
          Common Law ...................................... 20

    IV.  Plaintiffs' Claims that Defendants Did Not
          Follow Reasonable Claims Procedures Are
          Actionable Under ERISA § 502(a)(3) .............. 22

CONCLUSION ............................................... 23

# Table of Authorities

**Case**                                                                   **Page**

*Arkansas Dept. of Health & Human Services v. Ahlborn*,
547 U.S. 268 (2006) ........................................ 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................ 17

*Bill Gray Enterprises, Inc. v. Gourley*,
248 F.3d 206 (3d Cir. 2001) ............................... 18

*Broadcom Corp. v. Qualcomm Inc.*,
501 F.3d 297 (3d Cir. 2007) ............................ 1, 16

*Coventry Health Care of Mo., Inc. v. Nevils*,
137 S. Ct. 1190 (2017) .................................. 3, 5

*Curtiss-Wright Corp. v. Schoonejongen*,
514 U.S. 73 (1995) ..................................... 6, 15

*Daniel v. Master Health Plan, Inc.*,
864 F. Supp. 1399 (S.D. Ga. 1994) ........................ 15

*Elliott Industries Ltd. P'ship v.*
*BP America Production Co.*,
407 F.3d 1091 (10th Cir. 2005) ........................... 10

*Fidelity Guar. Ins. v. American Bldgs. Co.*,
14 F. Supp. 2d 704 (M.D. Pa. 1998) ........................ 3

*Harris v. Harvard Pilgrim Health Care*,
208 F.3d 274 (1st Cir. 2000) .............................. 5

*Harrow v. Prudential Insurance Company of America*,
279 F.3d 244 (3d Cir. 2002) ........................... 19-20

*Health Cost Controls v. Wardlow*,
825 F. Supp. 152 (W.D. Ky. 1993) ......................... 11

*Lenco Excavation, Inc. Emp. Benefit Plan v. Miller*,
No. 11-cv-34 (E.D. Ky. Jul. 11, 2012) ..................... 5

*Manning v. Sanofi-Aventis, U.S. Inc.*,
No. 11-1134 (M.D. Pa. Aug. 14, 2012) ..................... 17

*McIntosh v. Pacific Holding Co.*,
992 F.2d 882 (8th Cir.) ................................... 5

<u>**Case**</u>                                                                                                          <u>**Page**</u>

*Member Services Life Ins. Co. v.*
*American Nat'l Bank and Trust Co.*,
130 F.3d 950 (10th Cir. 1997) ........................ 12, 14, 15

*Provident Life and Acc. Ins. v. Williams*,
858 F. Supp. 907 (W.D. Ark. 1994) ........................ 5

*Rathbun v. Health Net of the Ne., Inc.*,
110 A.3d 304 (Conn. 2015) ................................ 12-13

*Remy v. Michael D's Carpet Outlets*,
391 Pa. Super. 436 (Pa. Super. Ct. 1990) ................. 3

*Ryan by Capria-Ryan v. Fed. Express Corp.*,
78 F.3d 123 (3d Cir. 1996) ............................... 10, 13

*Sereboff v. Mid Atlantic Medical Services, Inc.*,
547 U.S. 356 (2006) ...................................... 11

*Somalakis v. United Healthgroup, Inc.*,
No. 06-cv-116 (D.N.M. Feb. 20, 2007) ................... 8-10, 15

*SR Int. Bus. Ins. v. World Trade Ctr. Properties*,
No. 01-cv-9291 (S.D.N.Y. Jun. 10, 2008) ................. 5

*Sunbeam-Oster Co. Group Ben. v. Whitehurst*,
102 F.3d 1368 (5th Cir. 1996) ........................... 14

*Thomas v. Independence Township*,
463 F.3d 285 (3d Cir. 2006) ............................. 17

*U.S. Airways, Inc. v. McCutchen*,
569 U.S. 88 (2013) .................... 3, 6, 10, 11, 18, 20, 21

*Valora v. Pennsylvania Employees Benefit Trust Fund*,
595 Pa. 574 (Pa. 2007) .................................. 18

*Wolff v. Aetna Life Ins. Co., et al.*,
No. 19-cv-1596 (August 17, 2020) ....................... 14 n.1

## Table of Authorities, cont.

**Statute & Regulation**                                    **Page**

29 CFR § 2560.503-1(l) ................................... 23

29 U.S.C. § 1132(a)(1)(B) ............................... passim

29 U.S.C. § 1132(a)(3) .................................. passim

42 U.S.C. § 1396a (a)(25) ............................... 13

**PROCEDURAL AND FACTUAL BACKGROUND**

Initially, Defendants exceed the scope of a Motion to Dismiss. On a Motion to Dismiss, the court is required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 306 (3d Cir. 2007). Thus, certain matters raised in Defendants' motion are inappropriate.

First, Defendants state that they were "forced" to seek repayment from Plaintiffs because they "had already settled with their respective tortfeasors." Def. Br. p.7. However, Socrates had sent repayment demand letters to Plaintiffs starting in March 2018. Complaint, Ex. A. Frietas settled her tortfeasor case later in 2018 and McWilliams settled her case in 2019. Thus, Geisinger's excuse fails as is it impossible Socrates was "forced" to seek reimbursement from Plaintiffs because Plaintiffs settled their cases when Socrates had made demands for repayment from Plaintiffs <u>before</u> Plaintiffs had settled their cases.

Second, defendants raise an affirmative fact-based defense of "prejudice." At this juncture, the record is completely devoid of any evidence that Defendants ever sought subrogation against the tortfeasors who caused Plaintiffs' injuries. In fact, the record contains only Defendants' reimbursement demands from Plaintiffs. Likewise, there is nothing of record demonstrating

1

that Plaintiffs prejudiced Defendants' subrogation rights against any tortfeasor. The record contains no evidence that:

    1) Plaintiffs prejudiced Defendants' subrogation rights;

    2) Defendants did not waive their subrogation rights;

    3) Defendants did not consent to Plaintiffs' settlements; or

    4) Defendants' subrogation claims were actually prejudiced.

Third, Defendants argue that they never actually sought to be paid money directly from Plaintiffs. However, demanding and taking $17,590.83 of Frietas' money she recovered in her tort case is taking money from Frietas. Demanding and taking $43,934.76 of McWilliams' money she recovered in her tort case is taking money from McWilliams. Defendants cannot faithfully characterize their actions as not taking money from Plaintiffs.

Fourth, Defendants assert that "Plaintiffs initiated this action seeking to nullify Geisinger's subrogation rights." As is clear in Plaintiffs' Complaint, Plaintiff does not seek to affect Defendants' subrogation rights against third parties. Plaintiffs' Complaint, instead, seeks to enforce clear Plan terms and prevent Defendants from asserting reimbursement claims directly against its insureds.

**ARGUMENT**

**I.   The Plan Does Not Grant Defendants a Right to Reimbursement**

    **A.   Overview of Subrogation and Reimbursement**

Subrogation and reimbursement, while both legal doctrines, are distinct remedies.

"Subrogation [] means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against" a third party. *U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 97 n.5 (2013). The Supreme Court has further explained that "[r]eimbursement requires an insured employee who receives payment from another source (e.g., the proceeds yielded by a tort claim) to return healthcare costs earlier paid out by the carrier. Subrogation involves transfer of the right to a third-party payment from the insured employee to the carrier, who can then pursue the claim against the third party." *Coventry Health Care of Mo., Inc. v. Nevils*, 137 S. Ct. 1190, 1194 (2017).

"By definition, subrogation can arise only with respect to the rights of an insured against third persons[]." *Remy v. Michael D's Carpet Outlets*, 391 Pa. Super. 436, 447 (Pa. Super. Ct. 1990). It logically follows, and is well established, "that an insurer cannot recover by means of subrogation against its own insured." *Id.*; *see also Fidelity Guar. Ins. v. American Bldgs. Co.*, 14 F. Supp. 2d 704, 706 (M.D. Pa. 1998). Simply, because subrogation lies only against the third party who injured the insured, subrogation cannot lie against the insured.

Accordingly, the doctrine of subrogation may be easily illustrated as follows:

- A, through his negligence, causes harm to B, who incurs medical expenses resulting from the harm A caused to B.

- C, who is contracted with B to pay for medical expenses B incurs, pays those medical expenses.

- C, "standing in the shoes of B, asserts a claim for those medical expenses against 3rd party A.

By contrast, reimbursement affords the insurer a direct right of recovery against the plan member:

- A, through his negligence, causes harm to B, who incurs medical expenses resulting from the harm A caused to B.

- C, who is contracted with B to pay for medical expenses B incurs, pays those medical expenses.

- C, on its own behalf, asserts a claim for repayment of those medical expenses directly against its own insured B, after B recovers those medical expenses from A.

As explained further herein, the Plan provides for <u>only</u> a right of subrogation against "third parties that are legally liable for the expenses paid by the Plan." *See* Plan document, Section 8.3. Thus, while the Plan provides Defendants with the right of subrogation against the third parties who injured beneficiaries, the Plan does not provide Defendants with the right of reimbursement directly against Plan beneficiaries.


**B.  Subrogation and Reimbursement are Separate and Distinct Doctrines**

Defendants argue that there is no distinction between "subrogation" and "reimbursement." Defendants' argument is wrong.

As previously stated, the Supreme Court has recognized the distinction between subrogation and reimbursement:

"Reimbursement requires an insured employee who receives payment from another source [] to return healthcare costs earlier paid out by the carrier. Subrogation involves

> transfer of the right to a third-party payment from the
> insured employee to the carrier, who can then pursue the
> claim against the third party."

*Nevils*, 137 S. Ct. at 1194. Other courts have similarly

recognized the difference between subrogation and reimbursement:

*Harris v. Harvard Pilgrim Health Care*, 208 F.3d 274, 278 (1st

Cir. 2000); *McIntosh v. Pacific Holding Co.*, 992 F.2d 882, 884

(8th Cir.); *SR Int. Bus. Ins. v. World Trade Ctr. Properties*, No.

01-cv-9291 at *10, n.10 (S.D.N.Y. Jun. 10, 2008); *Lenco*

*Excavation, Inc. Emp. Benefit Plan v. Miller*, No. 11-cv-34, at *6

(E.D. Ky. Jul. 11, 2012).

Further, the case that Defendants rely upon, *Provident Life*

*and Acc. Ins. v. Williams*, belies their assertion that there is

no distinction between subrogation and reimbursement. In

*Williams*, the Court readily distinguished the separate doctrines

of subrogation and reimbursement:

> "With subrogation, the insurer stands in the shoes of the
> insured. With reimbursement, the insurer has a direct right
> of repayment against the insured. As a matter of logic and
> case law, a party can have one right, but not the other.
> Weber v. Sentry Ins., 442 N.W.2d 164, 167 (Minn.Ct.App.
> 1989) provides an extended explanation of the difference.
>
> Under the subrogation agreement, plaintiffs clearly have
> only a right of subrogation, not reimbursement."

*Williams*, 858 F. Supp. 907, 911 (W.D. Ark. 1994).

Accordingly, as confirmed by the Supreme Court and other

courts, subrogation and reimbursement are separate and distinct

doctrines.

**C.  The Plan's Terms Clearly and Distinctly Confer Upon
Defendants the Right of Subrogation, not Reimbursement**

ERISA's statutory scheme "is built around reliance on the
face of written plan documents." *Curtiss-Wright Corp. v.
Schoonejongen*, 514 U.S. 73, 83 (1995). "'Every employee benefit
plan shall be established and maintained pursuant to a written
instrument,' and an administrator must act 'in accordance with
the documents and instruments governing the plan' insofar as they
accord with the statute. The plan, in short, is at the center of
ERISA." *McCutchen*, 569 U.S. at 100-101 (2013).

In that regard, the Plan's subrogation provision is as
follows:

> **8.3 Subrogation.**  The Plan has the right of subrogation
> to the extent permitted by the law against third
> parties that are legally liable for the expenses paid
> by the Plan under this Certificate. The Member shall do
> nothing to prejudice the subrogation rights of the
> Plan. The Plan may recover benefits amounts paid under
> this Certificate under the right of subrogation to the
> extent permitted by law.

The provision may be broken down into three separate
clauses:

> 1)  The Plan has the right of subrogation to the extent
>     permitted by the law against third parties that are
>     legally liable for the expenses paid by the Plan under
>     this Certificate.
>
> 2)  The Member shall do nothing to prejudice the
>     subrogation rights of the Plan.
>
> 3)  The Plan may recover benefits amounts paid under this
>     Certificate under the right of subrogation to the
>     extent permitted by law.

In the first clause, the terms state that the Plan "has the right of subrogation to the extent permitted by the law *against third parties*." The plain language of the clause clearly limits the Plan's claim to claims against third parties. The clause does not provide the Plan a right to reimbursement against the beneficiary, nor does the clause create a lien or constructive trust or provide for a right of recovery from the settlement fund. The clause does not even automatically subrogate the Plan to the insured's interest, but only provides that the Plan has a right of subrogation against third parties, nothing else. The injured first party insured is unquestionably not the legally liable third party. The Plan has no right as against the first party injured insureds as a result.

The second clause states that the beneficiary "shall do nothing to prejudice the subrogation rights of the Plan." As explained below, nothing appears in the record demonstrating that Plaintiff did anything to prejudice the subrogation rights of the Plan. Indeed, discovery will reveal that the Plan's rights were *not* prejudiced and that the Plan and Defendants simply failed to exercise their subrogation rights.

The third clause provides that the Plan has a right of recovery "under the right of subrogation to the extent permitted by law." Again, the right of subrogation identified in the first clause clearly limited that right to "subrogation [] against third parties." Nothing in this final clause indicates that the

right of subrogation referenced in the third clause is any more expansive than the right of subrogation identified in the first clause.

In *Somalakis v. United Healthgroup, Inc.*, the District Court interpreted similar language in a plan and determined that the plan conferred only a right of subrogation against a third party, not a right of reimbursement against the beneficiary. In *Somalakis*, the relevant plan language was as follows:

> The Company may pay benefits that should be paid by another plan or organization or person. The Employer or Plan may recover the amount paid from the other plan or organization or person.
>
> Benefits may be paid that are in excess of what should have been paid under this Plan. The Employer or Plan has the right to recover the excess payment.

*See Somalakis v. United Healthgroup, Inc.*, No. 06-cv-116, at *7 (D.N.M. Feb. 20, 2007).

In interpreting that aforementioned language, the Court noted that the language "must be [] interpreted in the same manner as a reasonable person would understand it." *Id*. The Court reasoned as follows:

> "Even though the provision does not use the actual term "subrogation," the first paragraph explains the concept in plain language. It is immediately apparent, however, that this first paragraph allows recovery only from a third party; it does not authorize Defendant to seek reimbursement from Plaintiff, should Plaintiff be able to obtain compensation from the third party. This paragraph, by specifying that the Plan may recover the amounts it has paid 'from the other plan or organization or person,' expressly limits Defendant to its subrogation rights against third parties and does not allow it to exercise a right of reimbursement against Plaintiff."

*Id.* Accordingly, the Court found that "Defendant [abused] its discretion in construing the above plan provisions to allow Defendant to pursue reimbursement of amounts paid by the third party directly to Plaintiff." *Id.* at *8.

Had Defendants intended to preserve a right of reimbursement in the Plan, it could have easily done so. Policies which do provide for reimbursement contain reimbursement provisions such as:

**Subrogation**

Immediately upon paying or providing any benefit under this Plan, and in a jurisdiction that permits subrogation, the Plan shall be subrogated to (stand in the place of) all rights of recovery a Covered Person has against any Responsible Party with respect to any payment made by the Responsible Party to a Covered Person due to a Covered Person's injury, illness, or condition to the full extent of benefits provided or to be provided by the Plan.

**Reimbursement**

In addition, if a Covered Person receives any payment from any Responsible Party or Insurance Coverage as a result of an injury, illness, or condition, the Plan has the right to recover from, and be reimbursed by, the Covered Person for all amounts this Plan has paid and will pay as a result of that injury, illness, or condition, up to and including the full amount the Covered Person receives from any Responsible Party.

In sum, like the Plan language in *Somalakis*, the Plan language here unambiguously confers upon Defendants only the right of subrogation, not reimbursement. Nothing in the subrogation provision permits the Plan to assert a reimbursement claim against a beneficiary rather than a third party. Nothing in the subrogation provision creates a lien or constructive trust over a tort recovery or permits the Plan to assert a claim for reimbursement directly against the tort recovery. Because a Plan administrator must act "in accordance with the documents and

instruments governing the plan," *McCutchen*, 569 U.S. at 100-101,

Defendants are not permitted to assert any rights of

reimbursement against Plaintiffs or their tort settlements. Thus,

like the Court found in *Somalakis*, Defendants' pursuit of

reimbursement directly against Plaintiff is a violation of the

Plan's terms.

> **D.    Subrogation Rights Against a Third Party Do Not Confer Reimbursement Rights Against the Plaintiff**
>
> > **i.    Common law principles cannot add to or expand existing plan terms.**

In arguing that the Plan's subrogation provision gives them

a right to reimbursement against either Plaintiffs or the

settlement fund directly, Defendants ask this Court to rewrite

the Plan's terms. This the Court may not do.

A court has no authority to draft the substantive content of

plans. *See Ryan by Capria-Ryan v. Fed. Express Corp.*, 78 F.3d

123, 126 (3d Cir. 1996). Defendants cannot resort to the common

law to insert new terms into the Plan and confer on themselves

new rights and remedies not contained in the Plan. The "'hornbook

rule [is] that quasi-contractual remedies [] are not to be

created when an enforceable express contract regulates the

relations of the parties with respect to the disputed issue.'"

*Elliott Industries Ltd. P'ship v. BP America Production Co.*, 407

F.3d 1091, 1117 (10th Cir. 2005).

Courts routinely have stated their unwillingness to apply common law doctrines to override contractual plan provisions. *See*, *e.g.*, *McCutchen*, *supra*; *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006). Accordingly, "provisions appearing in a contract, and the conduct occurring under that contract, are entitled to respect, and should not be pushed aside in a rush to accomplish an assertedly equitable result." *Health Cost Controls v. Wardlow*, 825 F. Supp. 152, 158 (W.D. Ky. 1993). This means this Court should "decline to apply rules — even if they would be 'equitable' in a contract's absence — at odds with the parties' expressed commitments." *McCutchen*, 569 U.S. at 98.

Here, the Plan clearly and unambiguously governs what happens when a member or beneficiary is injured by an act of a third party: the Plan has a right of subrogation against, and may recover from, third parties that are legally liable for the Plan's expenses. Thus, in order to recover any benefits that a third party was legally liable for, Defendants were required to exercise their rights of subrogation and pursue the third party liable for Plaintiffs' injuries.

Instead of exercising their rights under the Plan, Defendants opted to seek reimbursement directly against Plaintiffs, even though the terms of the agreement between Defendants and Plaintiffs did not authorize Defendants to seek reimbursement directly from Plaintiffs. Defendants now ask this Court to rewrite the policy so defendant can do in equity what

they failed to do under their own contract. However, the Plan already speaks directly to the method of recouping Plan benefits — subrogation. Defendants cannot resort to the common law to add another method of recoupment not provided for in the Plan. *See Member Services Life Ins. Co. v. American Nat'l Bank and Trust Co.*, 130 F.3d 950, 958 (10th Cir. 1997).

In further support of their argument, Defendants cite to *Rathbun v. Health Net of the Ne., Inc.*, a Connecticut Supreme Court case that determined that, for purposes of Connecticut's Medicaid statute, a right of subrogation of Medicaid benefits against a third-party also implied a separate right to reimbursement against a Medicaid beneficiary. For the following reasons, *Rathbun* is inapposite.

Initially, *Rathbun* is a Connecticut state court case. Defendant does not cite to any authority arising under Pennsylvania law.

In finding that the right of subrogation provided for a right of reimbursement under Connecticut's Medicaid statute, the Connecticut court considered the entire legal landscape applicable to federal and state Medicaid policy. *Rathbun*, 110 A.3d 304, 310-11 (Conn. 2015).

When a state has elected to participate in Medicaid, the state is *required* to comply with federal requirements. *See, e.g., Arkansas Dept. of Health & Human Services v. Ahlborn*, 547 U.S. 268, 275–78 (2006). Federal regulations require entities paying

Medicaid benefits to seek reimbursement. 42 U.S.C. § 1396a
(a)(25). Under Medicaid, reimbursement may be accomplished
through subrogation, direct reimbursement, assignment, or other
methods. Thus, an entire field of federal and state policy that
required an entity that paid Medicaid benefits to maintain
subrogation and reimbursement rights against the beneficiary for
benefits paid dictated that Medicaid's subrogation rights also
implied a right of reimbursement directly from the beneficiary
under Connecticut law.

In sum, while the *Rathbun* Court generally referred to
subrogation to describe Medicaid's right to recoup money, the
underlying statute provided for both subrogation and
reimbursement rights, unlike the policy here. Thus, when the
Connecticut court found that subrogation in that specific
instance included reimbursement, that was because the Medicaid
statute embodied a policy favoring reimbursement.

Conversely, ERISA does not contain any subrogation or
reimbursement provision akin to Medicaid, and a Connecticut
court's general finding that a right of subrogation includes a
right of reimbursement under the Medicaid statute is of no
consequence. "ERISA neither requires a welfare plan to contain a
subrogation clause nor does it bar such clauses *or otherwise*
*regulate their content*." *Ryan*, 78 F.3d at 127. Thus, unlike
federal and state Medicaid statutes, ERISA neither requires
recoupment of benefits paid nor specifies the method of

recoupment. Accordingly, resorting to common law to "fill in the gaps" left by the Plan is unnecessary to secure any statutory policy favoring reimbursement because ERISA embodies no policy on the matter. *See Member Services Life Ins.*, 130 F.3d at 957.

In any event, resorting to state common law to interpret the subrogation provision in the Plan is futile. Congress completely preempted any and all state laws, rules, regulations, and common law related to ERISA plans. It is "well established that state subrogation doctrines are preempted under ERISA[.]" *Sunbeam-Oster Co. Group Ben. v. Whitehurst*, 102 F.3d 1368, 1374 (5th Cir. 1996).

Accordingly, notwithstanding that a Connecticut court's reference to Connecticut law regarding Medicaid's reimbursement rights is wholly irrelevant to a Pennsylvania HMO policy, ERISA preempts the *Rathbun* Court's holding. State law may not be used to expand the subrogation rights of an ERISA insurer to include reimbursement when the Plan clearly and unambiguously provides for a right of subrogation only.[1]

In sum, the Plan's terms unambiguously provide for only a right of subrogation. Under ERISA, Plan terms are paramount, and the Court has no authority to rewrite the terms of the Plan.

---

[1] That ERISA has preempted all state subrogation doctrines and left nothing in their place is of no consequence. As this Court has noted, this "regulatory vacuum" is a deliberate policy judgment that Congress made in enacting ERISA. *Wolff v. Aetna Life Ins. Co., et al.*, No. 19-cv-1596, Dkt. No. 55 at *9 (August 17, 2020).

Common law principles can neither add to, nor expand, existing Plan terms. Thus, absent Plan terms specifically authorizing a right to reimbursement, an insurer "is not entitled to reimbursement simply because the plan may include language granting a right of subrogation." *Somalakis*, at *7.

> ### ii. The Plan does not provide Plaintiffs any notice of a right of reimbursement against them or their tort recoveries.

"[O]ne of ERISA's central goals is to enable plan beneficiaries to learn their rights and obligations at any time." *Schoonejongen*, 514 U.S. at 83. Beneficiaries must receive documents "written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." See 29 U.S.C. § 1022(a). A beneficiary "cannot be bound to terms of the policy of which he had no notice." *Member Services Life Ins.*, 130 F.3d at 956. In requiring a "compendium of the actual plan's benefits, terms and conditions, Congress intended to apprise plan participants, in laymen's terms, of their rights under the plan." *Daniel v. Master Health Plan, Inc.*, 864 F. Supp. 1399, 1407 (S.D. Ga. 1994).

Defendants would have this Court find that the provision authorizing the Plan to seek reimbursement from third parties reasonably apprized members that the Plan may pursue them too.

Following Defendants' argument, Plaintiffs could only have fully understood their rights under the Plan by looking outside of the "compendium of the actual plan's benefits, terms and conditions" and delving into the depths of what the common law has to say about contract enforcement.

The above scenario runs directly counter to Congress' intent in requiring Plan fiduciaries to provide plan participants with documents "written in a manner calculated to be understood by the average plan participant and [] sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."

It is for precisely this reason this Court should not find that Defendants possess a right of reimbursement where no such right is found in the Plan documents themselves.

### iii. Defendants' claim that they were "prejudiced" by Plaintiffs' settling of their personal injury claims is not appropriate on a Motion to Dismiss.

Finally, Defendants' statement that Plaintiffs "prejudiced" Defendants' subrogation rights, which Plaintiffs deny, is irrelevant at this juncture.

On a motion to dismiss, the court is required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Broadcom Corp.,* 501 F.3d at 306. Thus, "a district court weighing a motion to dismiss asks 'not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n. 8 (2007).

To state a claim under § 502(a)(1)(B), a plaintiff must allege that she was eligible for benefits under the Plan, that the defendant wrongfully denied her benefits, and that in doing so, the defendant violated § 502(a)(1)(B). *Manning v. Sanofi-Aventis, U.S. Inc.*, No. 11-1134 at *3 (M.D. Pa. Aug. 14, 2012). Plaintiffs have done so and Defendants do not attack the sufficiency of Plaintiffs' allegations. Any consideration of whether Defendants' subrogation rights have been prejudiced has no bearing on the sufficiency of Plaintiffs' claims under ERISA.

Plaintiffs are not required to plead that they did not prejudice Defendants' subrogation rights. Prejudice is a fact-specific affirmative defense to a claim. Plaintiffs are not required to plead facts in anticipation of any defenses. They are required only to plead facts demonstrating that Plaintiffs' claims are "plausible" on their face. *Thomas v. Independence Township*, 463 F.3d 285, 291 (3d Cir. 2006).

Further, whether an insurer's subrogation rights are prejudiced is a question of fact that cannot be decided on a Motion to Dismiss. The fact that a beneficiary settled her personal injury case against the tortfeasor does not automatically mean the insurer's subrogation rights are prejudiced. For example, an insurer may waive or abandon its

subrogation rights by either declining to exercise its subrogation rights or failing to pursue such rights with reasonable diligence.[2] *Valora v. Pennsylvania Employees Benefit Trust Fund*, 595 Pa. 574, 590 (Pa. 2007). Further, a settling tortfeasor remains liable in subrogation to an insurance company if the tortfeasor knew of the insurer's subrogation rights. *See Bill Gray Enterprises, Inc. v. Gourley*, 248 F.3d 206, 222 (3d Cir. 2001), *overruled on other grounds by McCutchen*, 663 F.3d 671, 677 (3d Cir. 2012).

Defendants request this Court "go behind Plaintiff's claim" and rule on a fact-specific affirmative defense at the Motion to Dismiss stage. However, nothing in the record before the Court, which at this juncture consists solely of Plaintiffs' Amended Complaint, establishes that Defendants' subrogation rights were prejudiced. Indeed, discovery will reveal the exact opposite.

## II.  Defendants' Conduct Breached Their Fiduciary Duties to Plaintiffs Under ERISA

Initially, the propriety of Plaintiffs' fiduciary claims derives from whether Defendants violated the terms of the Plan in seeking reimbursement directly from Plaintiffs. Accordingly, if Plaintiffs have adequately stated their underlying claims, then their fiduciary claims derivatively survive as well.

---

[2] Critically, Defendants do not claim that they did not have notice that Plaintiffs intended to settle their claims against the respective tortfeasors.

Nevertheless, Defendants argue that plaintiff's claims for breach of fiduciary duties duplicate their ERISA benefits claim and should be dismissed as a result. Defendants' argument lacks merit. The "test" to determine whether the fiduciary claims are really a claim for benefits is "whether the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA." *Harrow v. Prudential Insurance Company of America*, 279 F.3d 244 (3d Cir. 2002).

Plaintiff's fiduciary claims do not arise from an interpretation or application of the Pennsylvania HMO Plan. In each of Plaintiffs' breach of fiduciary duty counts, Plaintiff alleges a violation of the ERISA statute itself.

In Counts IV and X, Plaintiffs allege that Defendants breached the fiduciary duty to act in accordance with the documents governing the plan. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D). In Counts V and XI, Plaintiffs violated well-established ERISA common law when they did not reduce their demands for reimbursement by the pro-rata share of attorney fees and expenses that Plaintiffs incurred and before ensuring that the Plaintiffs had been made whole. In Counts VI and XII, Plaintiffs' Complaint alleges Defendants failed to establish and/or follow reasonable claims procedures as required by ERISA and its governing regulations.

Finally, Plaintiffs' fiduciary claims seek relief for Defendants' conduct that is not addressed by § 502(a)(1)(B).

Violations of Defendants' statutory duties are separate and apart from a claim for benefits and are not addressable in a § 502(a)(1)(B) claim. These claims rest upon an interpretation and application of ERISA and thus, under *Harrow*, do not duplicate Plaintiffs' claims for benefits.

## III. Defendants Violated Well-Established ERISA Common Law

Sections III and V of Defendants' brief argue that the made whole and common fund doctrines do not limit Defendants' subrogation rights and are invalid.

Defendants miss that the Third Circuit and Supreme Court have already adopted the common fund and made whole doctrines into the federal common law in their interpretations of subrogation clauses in ERISA plans. *See McCutchen*, 569 U.S. at 103-104.

In fact, common law defenses to reimbursement apply unless a Plan explicitly abrogates them. Specifically, the Supreme Court held that the common fund doctrine would apply where the Plan was silent as to the doctrine:

> "The plan is silent on the allocation of attorney's fees, and in those circumstances, the common-fund doctrine provides the appropriate default. In other words, if US Airways wished to depart from the well-established common-fund rule, it had to draft its contract to say so—and here it did not."

The Plan herein does not contain any terms that abrogate the common fund and made whole doctrines. Because "[s]uch language is critical in order to 'abrogate so strong and uniform a background rule,'" *McCutchen*, 569 U.S. at 104, the doctrines are not abrogated and Defendants' reimbursement claims are subject to the common fund and made whole doctrines.

Further, while Plaintiffs reference the doctrines, Plaintiffs plead that Defendants asserted reimbursement demands: (1) without first reducing the demands by the pro-rata share of attorney fees and expenses that Plaintiffs incurred and (2) without having first made sure that the insureds were made whole and fully compensated. Amended Compl. ¶¶ 47, 48. Thus, Plaintiffs pled Defendants' actions in making demands without the required reductions under each doctrine, not just a legal conclusion that Defendants violated the doctrines.

Finally, Defendants misunderstand the made whole doctrine. The made whole doctrine precludes reimbursement until after the insured has been made whole. Thus, it is only to the extent that the recovery is above and beyond the insured's losses that an insurer may seek reimbursement. As explained by the Pennsylvania Superior Court, an insurer's claim for repayment against its insured lies *only upon the insurer's showing* that the sum of the insured's recovery from persons legally responsible for the injury <u>*exceeds the insured's loss*</u>. *Walls v. City of Pittsburgh*,

292 Pa. Super. 18, 22 (1981).[3] Plaintiffs were merely compensated for their loss and secured no excess recovery beyond their losses. Defendants made no effort to determine whether Plaintiffs were made whole before asserting their demands for repayment against Plaintiffs.

## IV. Plaintiffs' Claims that Defendants Did Not Follow Reasonable Claims Procedures Are Actionable Under ERISA § 502(a)(3)

ERISA authorizes a participant and/or beneficiary of a plan to enjoin any act that violates any provision of ERISA. 29 U.S.C. § 1132(a)(3).

Counts VI and XII of Plaintiffs' Amended Complaint seek to enjoin Defendants from enforcing any exhaustion requirement prior to filing the instant suit. Defendants' actions as alleged in the Amended Complaint constituted violations of ERISA's statutory requirement to establish and maintain reasonable claims procedures. It is unquestionable that ERISA § 502(a)(3) authorizes Plaintiffs to bring suit under ERISA in order to enjoin the very acts and practices detailed in the Amended Complaint.

Further, ERISA permits Plaintiffs to seek appropriate equitable relief to redress such violations. Plaintiffs seek a declaration that they are not required to exhaust the Plan's

---

[3] The case that Defendants cite to establish a "presumption" against the made whole doctrine was vacated in its entirety by the Pennsylvania Supreme Court and is not appropriately cited to. *Associated Hospital Service v. Pustilnik*, 497 Pa. 221, 229 (Pa. 1981).

administrative remedies, a remedy specifically authorized by ERISA. *See* 29 CFR § 2560.503-1(l).

## CONCLUSION

For the aforementioned reasons, this Court should deny and dismiss Defendants' Motion to Dismiss.

Respectfully Submitted,

 /s/ Charles Kannebecker
Charles Kannebecker, Esq.
Pa. Bar ID No. 58612
THE LAW OFFICE OF KANNEBECKER & MINCER, LLC
104 W. High St.
Milford, PA 18337
(570) 296-6471
kannebecker@wskllawfirm.com

*Attorney for Plaintiffs*

Dated: November 4, 2020