## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LORI FREITAS, *et al.*,

      Plaintiffs,

    v.

GEISINGER HEALTH PLAN, *et al.*,

      Defendants.

No. 4:20-CV-01236

(Judge Brann)

## MEMORANDUM OPINION

### MAY 27, 2021

On May 21, 2020, Plaintiffs Lori Freitas and Kaylee McWilliams initiated this class action lawsuit against Defendants Geisinger Health Plan and SCIOinspire Corp.[1] Plaintiffs' complaint contains twelve counts seeking relief for alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA").[2] On September 24, 2020, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]

## I. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon

---

[1]  Doc. 1-2. The Court notes that SCIOinspire was identified in Plaintiffs' complaint as Socrates, Inc. Doc. 7. However, the company appears to have changed its name following a merger or acquisition unrelated to this case. Doc. 9 at 1 n. 1.

[2]  Doc. 7.

[3]  Doc. 9.

which relief can be granted."  A motion to dismiss "tests the legal sufficiency of a pleading"[4] and "streamlines litigation by dispensing with needless discovery and factfinding."[5]  "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[6]  This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[7]

When addressing a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[8]  However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[9]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[10]

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."[11]  However, a court may consider the full text of a document cited by the plaintiff that are integral to the complaint where it is "clear on the record that no dispute exists regarding the authenticity or

---

[4] *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (citing *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)).

[5] *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

[6] *Id.* at 326 (*citing Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

[7] *Id.* at 327.

[8] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[9] *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[10] *Iqbal*, 556 U.S. at 678.

[11] *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

accuracy of the document."[12]  Because the plan documents are integral to

Plaintiffs' claims, and because neither party contests the validity of these

documents, the Court finds it appropriate to consider these materials in disposing

of Defendants' motion to dismiss.

## II.    BACKGROUND

The allegations in this case are relatively straightforward.  At all relevant

times, Plaintiffs received health insurance from the Geisinger Health Plan, an

employee welfare benefits plan governed by ERISA.[13]  The Group Subscription

Certificates attached to Plaintiffs' complaint appears to contain all relevant terms

of the plan.[14]  Plaintiffs allege that Geisinger (being the plan) is a plan fiduciary

responsible for making discretionary decisions regarding the denial of benefits

claims.[15]  Though not named as a fiduciary within the plan, SCIOinspire is alleged

in the complaint to be a plan fiduciary responsible for enforcing the plan's

subrogation rights.[16]

The plan contains a subrogation clause, which consists of three sentences.[17]

The clause reads as follows:

---

[12]  *Id.*; *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir.1991); *see also, e.g.*, *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).

[13]  Doc. 7 at ¶ 2.

[14]  Plaintiffs attached two (virtually identical) certificates to their Amended Complaint.  Doc. 7-2; Doc. 7-3.  At least for purposes of this motion, the Court assumes that these certificates comprehensively represent the plan's terms.

[15]  Doc. 7 at ¶¶ 11-15.

[16]  *Id.*

[17]  Doc. 7-2 at § 8.3.

- The Plan has the right of subrogation to the extent permitted by the law against third parties that are legally liable for the expenses paid by the Plan under [the Plan's terms].

- The Member shall do nothing to prejudice the subrogation rights of the Plan.

- The Plan may recover benefits amounts paid under [the terms of the Plan] under the right of subrogation to the extent permitted by law.[18]

The plan does not define the term subrogation, nor does it elaborate upon how the term should be construed. Further, beyond this clause, the plan does not explicitly set forth any other processes by which the plan might recoup the cost of benefits paid to injured plan members. Notably absent is any provision stating that a member must reimburse the plan for benefits paid if the member receives compensation from a third-party tortfeasor who injures her.[19] The plan also does not expound upon what shall occur if a member prejudices the plan's subrogation rights.

In 2017, while insured under the plan, Plaintiffs were injured in separate accidents by third-party tortfeasors.[20] Plaintiffs subsequently received a collective total of $61,525.59 in health benefits under the plan.[21] At some point, Plaintiffs settled their claims against the tortfeasors who injured them.[22] Plaintiffs have not disclosed the amounts for which they settled, although they allege that their

---

[18]  *Id.*

[19]  In fact, the term reimbursement only appears within the plan in provisions establishing a *member's* right to seek reimbursement from the plan. *E.g.*, *id.* at 20, 36, 74, 75, 76.

[20]  Doc. 7 at ¶¶ 17, 24.

[21]  *Id.* at ¶¶ 19, 26. Freitas received $17,590.83, and McWilliams received $43,934.76. *Id.*

[22]  *Id.* at ¶¶ 21, 27.

settlements did not include compensation for the cost of medical benefits incurred as a result of their injuries.[23]  It is also not clear whether Plaintiffs released the tortfeasors from liability before Defendants were able to assert any claims for subrogation.

After Plaintiffs settled their claims, SCIOinspire contacted them by letter and demanded reimbursement for the cost of medical benefits they had received pursuant to the plan (collectively, $61,525.59).[24]  The letters offered no explanation or reasoning regarding SCIOinspire's requests, although Plaintiffs allege (and Defendants do not contest) that they were sent based on Defendants' interpretation that the plan's subrogation clause authorized them to seek reimbursement from Plaintiffs for the cost of their benefits.[25]  Plaintiffs subsequently paid SCIOinspire at least some of what was demanded.[26]

Plaintiffs then commenced this class-action lawsuit on May 21, 2020 seeking under § 502(a)(1)(B) to recover the funds they have paid in reimbursement in response to the SCIOinspire letters, as well as any funds that other members have paid in reimbursement under similar circumstances.[27]  Plaintiffs also assert

---

[23]  *Id.* at ¶¶ 23, 30.  Presumably this means that Plaintiffs received compensation solely for non-medical damages (emotional distress, lost wages, etc.).

[24]  Doc. 7-1.  The letters were sent in March 2018 (to Freitas) and March 2019 (to McWilliams). *Id.*

[25]  Doc. 7.

[26]  *Id.* at ¶ 37.  They did so "involuntarily and under protest."  *Id.*

[27]  Plaintiffs additionally seek a declaratory judgment holding that Defendants were not entitled to seek reimbursement under the plan's subrogation clause.

five breach of fiduciary duty claims under § 502(a)(3), four of which arise from Defendants' allegedly wrongful interpretation of the plan's subrogation clause. Defendants now seek to dismiss on the basis that Defendants' interpretation of the plan's subrogation clause was correct as a matter of law.

## III. DISCUSSION

### A. Denial of Benefits Claim Under § 502(a)(1)(B)

Defendants first move to dismiss Plaintiffs' § 502(a)(1) claim, which alleges that Defendants have wrongfully denied Plaintiffs benefits that are owed to them under the terms of the plan.[28]  Defendants argue that Plaintiffs' claim must be dismissed because, in their view, the plan's subrogation clause unambiguously authorizes Defendants to seek reimbursement from members where the members have received both plan benefits and third-party compensation.  Defendants offer a number of theories supporting their interpretation, all of which are premised on the assertion that this Court must apply equitable principles to construe the terms of the plan.

The Court respectfully disagrees.  Consequently, Defendants' motion to dismiss Plaintiffs' § 502(a)(1) claims is denied.

---

[28] A beneficiary's claim that her "ERISA plan wrongfully sought reimbursement of previously paid health benefits" constitutes a claim for "benefits due" under ERISA § 502(a)(1). *Levine v. United Healthcare Corp.*, 402 F.3d 156, 163 (3d Cir. 2005); *see also Wolff v. Aetna Life Ins. Co.*, 2020 WL 4754253, at *2 n.18 (M.D. Pa. Aug. 17, 2020) (quoting *Roche v. Aetna, Inc.*, 167 F. Supp. 3d 700, 711 (D.N.J. 2016)).

## 1. Legal Background

Following almost a decade of research,[29] Congress enacted ERISA to regulate the administration of private-pension and welfare-benefit plans.[30] Congress was principally concerned that the operative legal regime at the time (based on state trust law) failed to sufficiently protect plan participants, who frequently found themselves losing benefits due to a lack of reliable standards and rules.[31] ERISA sought to remedy this problem by creating uniform minimum standards governing the administration of private-pension and welfare-benefit plans.[32]

However, cognizant of the burden that a heavy-handed approach might place on plan administrators, Congress structured ERISA to balance the interest of protecting plan beneficiaries with that of creating a system which is not so onerous as to discourage employers from participating in it.[33] The result of this cost-benefit analysis was a statutory regime focused primarily on holding parties accountable to

---

[29] *Nachman Corp. v. Pension Benefits Guar. Corp.*, 446 U.S. 359, 361 (1980).

[30] 29 U.S.C. § 1001, *et seq.*

[31] 29 U.S.C. § 1001; *Boggs v. Boggs*, 520 U.S. 833, 845 (1997) ("The principal object of [ERISA] is to protect plan participants and beneficiaries." (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983))); *see also*; *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989).

[32] *See Conkright v. Frommert*, 559 U.S. 506, 517 (2010) ("ERISA 'induc[es] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred.'" (alterations in original) (quoting *Rush Presidential HMO, Inc. v. Moran*, 536 U.S. 355, 370 (2002))).

[33] *Reich v. Rowe*, 20 F.3d 25, 32 (1st Cir. 1994) ("[W]e also recognize that the present structure of ERISA was the outcome of certain cost-benefit analyses that Congress undertook in order to fashion a comprehensive regulatory scheme.").

the terms of a given plan, whatever those terms may be.[34]  Accordingly, ERISA

does not mandate "minimum substantive content" to be included in each plan, but

rather sets forth various standards to ensure that plans are consistently and

uniformly enforced.[35]

   ERISA also broadly preempted state law governing private-pension and

welfare-benefit plans, replacing it with a mandate for courts to develop a body of

federal common law.[36]  Consequently, federal common law controls plan

interpretation.[37]  When analyzing plan language, courts must look to "general

principles of contract interpretation, at least to the extent those principles are

consistent with ERISA."[38]  Moreover, because the majority of state statutory and

common law (including equitable rules developed under or incorporated into state

law) is preempted,[39] courts are generally precluded from relying on state doctrines

---

[34]  *U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 101 (2013) ("The plan, in short, is at the center of ERISA.").

[35]  *Conkright*, 559 U.S. at 517; *Nazay v. Miller*, 949 F.2d 1323, 1337 (3d Cir. 1991) ("ERISA does not require an employer to create a specific benefit plan and does not permit the courts to test the substantive reasonableness of the plan's provisions . . . Instead, ERISA permits judicial review of the administration of a plan *once created*." (emphasis added) (citing *Hlkinka v. Bethlehem Steel Corp.*, 863 F.2d 279, 283 (3d Cir. 1988))).

[36]  *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990) ("[ERISA's] pre-emption clause is conspicuous for its breadth."); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987) (referring to Congress's directive that federal courts develop a "federal common law of rights and obligations"); *Firestone*, 489 U.S. at 110.

[37]  *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012).

[38]  *Id.* (citations omitted).

[39]  *See Sunbeam-Oster Co., Inc. Group Benefits Plan for Salaried & Non-Bargaining Hourly Emps.*, 102 F.3d 1368, 1374 (5th Cir. 1996).

where those doctrines have not been adopted under federal common law or are inconsistent with the requirements of ERISA.[40]

As a result of ERISA's preemptive force, the relief available to ERISA plan participants is circumscribed to that which is available under ERISA § 502.[41] For example, plan members and beneficiaries may seek to redress the wrongful denial of benefits under § 502(a)(1)(B) where the denial of benefits violates the terms of the plan or another provision of ERISA.[42] Further, both plan members and fiduciaries may seek "appropriate equitable relief" under § 502(a)(3) where a remedy is not otherwise available. A brief overview of both provisions is instructive.

Section 502(a)(1) authorizes a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[43] Because § 502(a)(1) remedies violations of a plan's *terms*, analysis of § 502(a)(1) claims focuses almost exclusively on plan interpretation. As discussed above,

---

[40]  *See Schultz*, 670 F.3d at 838. Courts are of course always free to consider whether a particular state rule should be incorporated into federal common law. *See Ryan by Capria-Ryan v. Fed. Express Corp.*, 78 F.3d 123, 126 (3d Cir. 1996) ("It is well established that federal courts have the power under appropriate circumstances to apply common-law doctrines in ERISA actions."), *abrogated on other grounds by McCutchen*, 589 U.S. That does not mean, however, that adoption of such rules is *automatic*. *See Travitz v. Ne. Dep't ILGWU Health & Welfare Fund*, 818 F. Supp. 761, 768 (M.D. Pa. 1993).

[41]  29 U.S.C. § 1132, ERISA § 502.

[42]  For purposes of brevity, the Court will refer to the relief prescribed in § 502(a)(1)(B) as arising under § 502(a)(1).

[43]  29 U.S.C. § 1132(a)(1)(B), ERISA § 502(a)(1)(B).

courts apply federal common law to determine a plan's meaning, and then evaluate whether a violation has occurred.[44]  Equitable remedies and relief are unavailable under § 502(a)(1); in this sense, a beneficiary's claim lives and dies on the language of the plan.[45]

By contrast, § 502(a)(3) allows plan participants and fiduciaries to redress plan violations through "appropriate equitable relief."[46]  Importantly, while § 502(a)(3) authorizes equitable relief, it does not permit courts to apply equitable doctrines or rules of decisions to override plan language.[47]  A party thus may not use § 502(a)(3) to assert an equitable claim based on principles which cannot be found within the plan's text.[48]  Further, a court will apply the same interpretative rules under § 502(a)(3) that it does under § 502(a)(1).[49]  In this sense, the primary distinction between § 502(a)(1) and § 502(a)(3) is the remedy authorized; while both permit parties to challenge plan violations, § 502(a)(1) allows only for the payment of benefits due,[50] and § 502(a)(3) allows only for a remedy "typically available in equity."[51]

---

[44]   *Schultz*, 670 F.3d at 838.

[45]   *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011) (holding that equitable remedies such as contract reformation are not permitted under § 502(a)(1)).

[46]   29 U.S.C. § 502(a)(3).

[47]   *McCutchen*, 569 U.S. at 99-101.

[48]   *Id.*

[49]   *Id.* at 102.

[50]   *Amara*, 563 U.S. at 438.

[51]   *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002).  Forms of relief not "typically available in equity" include claims "for money due and owing under a contract," or requests for specific performance of a contract.  *Id.* (internal quotation marks omitted) (first quoting *Wal-Mart Stores, Inc. v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000) (Posner, J.); and

ERISA plans frequently use § 502(a)(3) to enforce reimbursement provisions against plan beneficiaries; these provisions expressly entitle plans to reimbursement where a beneficiary has received both plan benefits and third-party compensation.[52] To succeed on a claim for reimbursement under § 502(a)(3), a plan must show that plan language gives rise to an equitable lien by agreement, and that the tracing requirements necessary to enforce such a lien are satisfied.[53] In other words, it must point to explicit language within the plan creating a right of reimbursement and designating specific funds subject to that right.[54]

Finally, it is important to note that, although equitable principles and doctrines cannot override plan language, they may be incorporated into federal common law as default rules to aid courts in interpreting a plan's text.[55] Two such doctrines that have been adopted under federal common are the common-fund and made-whole rules.[56] These rules, which serve to limit a plan's right of

---

then citing *Bowen v. Massachusetts*, 487 U.S. 879, 918-19 (1988) (Scalia, J., dissenting)); *see also Sereboff*, 547 U.S. at 363 (ruling that a claim brought under § 502(a)(3) cannot be dismissed simply because it is asserting breach of contract (a legal cause of action), even if it may be dismissed for failing to assert an equitable remedy).

[52] *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 138 (2016).

[53] *Id.* at 143. An equitable lien by agreement "as its name announces—both arises from and serves to carry out a contract's provisions." *McCutchen*, 569 U.S. at 98. It is essentially "a lien arising out of an agreement to convey ownership of specific property to one party as soon as the counterparty gets title to the property." *Funk v. CIGNA Group Ins.*, 648 F.3d 182, 194 (3d Cir. 2011) (citations omitted), *abrogated on other grounds by Montanile*, 577 U.S.

[54] *Montanile*, 577 U.S. at 143; *McCutchen*, 569 U.S. at 100-02.

[55] *See Ryan*, 78 F.3d at 126.

[56] *McCutchen*, 569 U.S. at 101-03. *U.S. Airways, Inc. v. McCutchen* (the decision adopting these rules) did not ultimately apply the made-whole rule because it found that the plan at issue there had expressly disavowed the doctrine's application. *Id.* at 102. However, *McCutchen* signaled that application of the made-whole rule would be appropriate where plan language is silent.

reimbursement,[57] consequently apply by default unless expressly abrogated by the plan itself. This is true regardless of whether a court is interpreting a plan under § 502(a)(1) or § 502(a)(3).[58]

### 2. Defendants' Arguments

As an initial matter, the Court notes that this case is somewhat unusual. As stated above, plans often contain reimbursement provisions which expressly entitle them to seek reimbursement from beneficiaries who receive both plan benefits and third-party compensation.[59] Consequently, litigation regarding reimbursement provisions generally centers around questions of application (i.e., whether recovery should be limited under a default rule or whether tracing requirements have been met).

---

[57] *McCutchen*, 569 U.S. at 102 ("The reimbursement provision at issue here precludes looking to the made-whole rule in [the same] manner [as the common-fund rule].").

The common-fund rule holds that "a litigant or a lawyer who recovers a common fund for the benefits of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The made-whole (or "made-whole") allows the beneficiary to recover first before the plan seeks reimbursement. *McCutchen*, 569 U.S. at 96. Application of either the common-fund or made-whole defenses allows beneficiaries to deduct a reasonable attorney's fee from any reimbursement owed (under the common-fund doctrine) and receive a priority right of recovery (under the made-whole doctrine).

[58] Because federal common law is uniformly applicable to plan interpretation regardless of whether the plan is being construed under § 502(a)(1) or § 502(a)(3), it appears to the Court that these default rules are available under either provision.

[59] *Montanile*, 577 U.S. at 138; *see, e.g.*, *MBI Energy Servs. v. Hoch*, 929 F.3d 506, 511-12 (8th Cir. 2019); *Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 306 (3d Cir. 2008); *Hiney Printing Co. v. Brantner*, 243 F.3d 956, 960 (6th Cir. 2001); *Reynolds Metals Co. v. Ellis*, 202 F.3d 1246, 1247 (9th Cir. 2000); *Sunbeam-Oster Co., Inc. Group Benefits Plan for Salaried & Non-Bargaining Hourly Emps. v. Whitehurst*, 102 F.3d 1368, 1374 (5th Cir. 1996).

By comparison, because the plan at issue here does *not* contain an explicit reimbursement provision, the parties' dispute largely revolves around whether the plan's subrogation clause, standing alone, has created an enforceable right of reimbursement. Defendants assert wholeheartedly that the plan's subrogation clause creates a right of reimbursement. In support, they offer a number of arguments purportedly justifying their interpretation that the subrogation clause, which does not explicitly reference a right of reimbursement, nevertheless authorizes reimbursement in these circumstances (and that it does so unencumbered by the made-whole or common-fund doctrines).

First, Defendants argue that the text of the subrogation clause plainly and unambiguously evidences a contractual right of reimbursement. Without justification, they assert that the term subrogation is a fundamentally equitable doctrine that cannot be explicated from the equitable principles from which it arose. Building on this premise, Defendants claim that, because the doctrine of *equitable* subrogation recognizes a right of reimbursement where an insured has received a double recovery, the plan's right of subrogation must be construed as operating in a similar manner. Defendants attempt to justify this interpretation by citing to decisions articulating and applying the doctrine of equitable subrogation under state law even where no express right of reimbursement exists.

Second, and even more curiously, Defendants ask the Court to hold that, notwithstanding the absence of a contractual, text-based right of reimbursement,

Defendants may exercise an *equitable* right of reimbursement.  Defendants argue that Plaintiffs violated the terms of the plan by prejudicing Defendants' subrogation rights (settling their claims against the tortfeasors).  And they maintain that the appropriate remedy for such a violation is to create an equitable right of reimbursement under federal common law, even though such a right is not justified in the plan's text.  Strangely, however, Defendants cite only a single, non-controlling case adopting such a rule (decided almost thirty years ago) and entirely fail to explain why this rule would be warranted or appropriate under current precedent.

Defendants further assert that the made-whole and common-fund rules are inapplicable on several bases.  Specifically, they contend that: the plan is unambiguous and therefore precludes application of any default rules; the rules have been inadequately pled and are unsupported by allegations within the complaint; and Plaintiffs misunderstand and misapply the made-whole rule as it has been articulated and defined under Pennsylvania law.  Defendants also maintain, inexplicably, that the made-whole rule has not been incorporated under federal common law within this Circuit.[60]

In response, Plaintiffs emphasize the absence of language establishing an express right of reimbursement.  They claim that the rights of subrogation and

---

[60]  It seems beyond peradventure that a decision from the United States Supreme Court is binding upon the courts of *every* Circuit.

reimbursement are legally and logically distinct, and thus that the existence of one cannot imply the existence of the other. Plaintiffs point out that, had Defendants wanted to create a right of reimbursement, they could have done so. And they assert that, because they did not, it would be inappropriate now to allow Defendants to essentially revise the plan's terms after the fact. Plaintiffs also contest Defendants' assertion of a "prejudice" rule as unwarranted and, in any event, not supported by the allegations in the complaint. Finally, Plaintiffs contend that both the made-whole and common-fund doctrines are adequately pled and wholly applicable.

The Court's analysis proceeds as follows. First, the Court determines whether Defendants' interpretation of the plan's subrogation clause survives review under § 502(a)(1). Answering this question requires resolving whether Defendants in fact violated the terms of the plan by seeking reimbursement. Second, the Court considers whether it should find that Defendants have an equitable right of reimbursement under federal common law. Third, and finally, the Court addresses the applicability of the made-whole and common-fund doctrines.

### 3.      § 502(a)(1)(B)

To successfully challenge a plan's denial of benefits under § 502(a)(1), a beneficiary must show that the denial was based on an improper interpretation of

the plan's terms.[61]  To evaluate whether a plan's interpretation was improper,

courts must first determine the appropriate standard of review.[62]  Where a plan

gives an administrator express discretion to interpret plan language, the plan's

interpretation will be upheld so long as it is not an abuse of discretion or arbitrary

and capricious.[63]  If no such discretion is granted, the court will review the

administrator's interpretation *de novo* and decide whether it was fundamentally

"correct."[64]

Under the more deferential abuse-of-discretion standard, the court analyzes

the administrator's interpretation under a two-step framework.  The court first

looks to whether the plan's language is ambiguous, or, in other words, "subject to

reasonable alternative interpretations."[65]  "If the plan's language is unambiguous,

'[the court] will not set aside the administrator's interpretations . . . as long as those

interpretations are "reasonably consistent" with the plan's text.'"[66]  But if the terms

of the plan are ambiguous, the court "must take [an] additional step and analyze

---

[61]  ERISA § 502(a)(1)(B).
[62]  *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011).
[63]  *Id.*  "In the ERISA context, the arbitrary and capricious and abuse of discretion standards of review are essentially identical."  *Id.* at n.2 (citing *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 n.6 (3d Cir. 2010)).
[64]  *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011) (quoting *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 808-09 (6th Cir. 2002)).
[65]  *Bergamatto v. Bd. of Trs. of the NYSA-ILA Pension Fund*, 933 F.3d 257, 264 (3d Cir. 2019) (internal quotation marks omitted) (quoting *Bill Gray Enters., Inc. Emp. Health & Welfare Plan v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001), *abrogated on other grounds by McCutchen*, 569 U.S.
[66]  *Id.* (alterations in original) (quoting *Dowling v. Pension Plan for Salaried Emps. of Union Pac. Corp. & Affiliates*, 871 F.3d 239, 245 (3d Cir. 2017)).

whether the plan administrator's interpretation of the document is reasonable."[67] The United States Court of Appeals for the Third Circuit has set forth a five-factor test to analyze a plan's reasonableness.[68]

The Court notes that neither party has fully engaged with the analysis required to resolve the matter at hand. Though the parties contest the reasonableness of Defendants' interpretation of the plan under general rules of contract construction, neither discuss the standard of review to be applied nor whether the plan's subrogation clause is ambiguous. The parties also fail to even acknowledge the Third Circuit's five-factor test, which sets forth the standard under which Defendants' interpretation is to be governed. As a result, the parties' arguments do not neatly line up with the standards and rules governing this Court's decision. The Court nevertheless follows the procedures set forth by the Third Circuit necessary to adequately address Defendants' motion.

### a. Standard of Review

"The Supreme Court has held that 'a denial of benefits challenged under [§ 502(a)(1)(B)] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'"[69] Where the plan gives an administrator such discretionary authority, the administrator's interpretation of the

---

[67] *Id.* (internal quotation marks omitted) (quoting *Bill Gray Enters.*, 248 F.3d at 218).
[68] *Howley*, 625 F.3d at 795.
[69] *Viera*, 642 F.3d at 413 (quoting *Firestone*, 489 U.S. at 115).

plan is to be reviewed under an "abuse-of-discretion (or arbitrary and capricious) standard."[70]

"[A] court's choice of the standard of review is itself a question of contract construction."[71] There are no "magic words" that conclusively determine which standard applies in a given case.[72] "However, when a plan['s grant of discretion] is ambiguous, it is construed in favor of the insured."[73] The purpose of this is to ensure that ERISA plan drafters provide beneficiaries with notice regarding the standard under which their benefits will be administered.[74] Consequently, the plan administrator bears the burden of demonstrating that the heightened abuse-of-discretion applies."[75]

Though Defendants have not offered any argument establishing that the abuse-of-discretion standard applies, the Court concludes that this standard is warranted given the clear language of the plan. The plan plainly provides that it "may adopt reasonable policies, procedures, rules and interpretations to promote orderly and efficient administration of this Certificate."[76] At least two Circuits

---

[70] *Id.* (citations omitted); *Miller*, 632 F.3d at 845.
[71] *Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1258 (3d Cir. 1993).
[72] *Viera*, 642 F.3d at 413.
[73] *Id.* (citing *Heasley*, 2 F.3d at 1258).
[74] *Id.* at 417; *see Kinstler v. First Reliance Std. Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999) ("Since clear language can be readily drafted and included in policies . . . courts should require clear language and decline to search in semantic swamps for arguable grants of discretion."); *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1325 (9th Cir. 1992) ("Employees who lose promised benefits should not lose the additional benefit of judicial review because their employer reserved discretionary power to itself without making that reservation clear.").
[75] *Viera*, 642 F.3d at 413 (citing *Kinstler*, 181 F.3d at 249).
[76] Doc. 7-2 at § 10.8.

have found identical language sufficient to trigger the heightened abuse-of-discretion standard.[77]  Given this, the Court finds that the plan has adequately reserved discretionary authority, and will accordingly review Defendants' interpretation for an abuse of discretion.[78]

### b.  Ambiguity

Under the abuse-of-discretion standard, the Court must first determine whether the plan's subrogation clause is ambiguous, or "subject to reasonable alternative interpretations."[79]  Though neither party squarely addresses the question of ambiguity, their arguments regarding the overall reasonableness of Defendants' interpretation are useful.  Plaintiffs argues that the plan's failure to include a reimbursement provision forecloses any attempt to assert a right of reimbursement under the terms of the plan.  Plaintiffs also contend that subrogation and reimbursement are separate legal rights, with subrogation referring to an insurer's rights against *third parties*, and reimbursement referring to an insurer's rights against its *insured*.

Generally speaking, subrogation is a doctrine allowing an insurer to "stand in the shoes" of its insured in order to assert the insured's rights against a legally

---

[77]  *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 623 (2d Cir. 2008) (finding a plan's authorization to "adopt reasonable policies, procedures, rules and interpretations" as conferring discretion); *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 523 (4th Cir. 2000) (same).

[78]  The Court also notes section 10.8 of the plan, titled Discretionary Authority, which states that "[t]he Plan has the full discretionary authority to make benefit and eligibility determinations and adjudicate claims under the Group's health benefit plan."  Doc. 7-2 § 10.15.

[79]  *Bergamatto*, 933 F.3d at 264 (internal quotation marks and citations omitted).

liable third party.[80]  Subrogation arose from the principle that the burden of

compensating a person for their injury should fall on the party who "in equity and

good conscience" ought to pay it (i.e., the tortfeasor).[81]  As a result, subrogation

generally only confers upon insurers the right to sue *third parties*.[82]  However, as

Defendants point out, the equitable principle disfavoring double recoveries has also

motivated courts to recognize a right of reimbursement under the doctrine of

equitable subrogation even where an insurance contract contains no language to

that effect.[83]

For their part, Defendants offer a tenuous, two-step argument.  First, they

assert, without explanation, that the plan has expressly incorporated equitable

principles into its construction.[84]  Second, they claim that these incorporated

equitable principles clearly and unambiguously support a right of reimbursement in

---

[80]  *McCutchen*, 569 U.S. at 97 n.5.

[81]  *Donman v. Barnes*, 115 A. 883, 884 (Pa. 1922).

[82]  *See Remy v. Michael D's Carpet Outlet*, 571 A.3d 446, 447 (Pa. Super. 1990) ("By definition, subrogation can arise only with respect to the rights of an insured against third parties to whom the insurer owes no duty." (citing *Keystone Paper Converters, Inc. v. Neemar, Inc.*, 562 F. Supp. 1046 (E.D. Pa. 1983))).

[83]  *E.g.*, *Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency, Inc.*, 72 A.3d 36, 40 (Conn. 2013) ("Subrogation . . . promotes equity by preventing an insured from receiving more than full indemnification as a result of recovering from both the wrongdoer and the insurer for the same loss, which would unjustly enrich the insured." (citations omitted)); *Am. States Ins. Co. v. Fletcher*, 591 N.E. 2d 320, 321 (Ohio Ct. App. 1990) (upholding the trial courts' ruling that an insurer was entitled to seek reimbursement from its insured "on the grounds that the insured had, in violation of a policy of insurance and a subrogation agreement, and without the knowledge or participation of the insurer, entered into a settlement agreement and executed a general release with the tortfeasor."); *United Nat'l Ins. Co. v. M. London*, 21 Phila. 323, 330 (1990) ("The doctrine of subrogation entitles an insurer to recover the amount of insurance proceeds it has paid from any settlement fund or judgment obtained by the insured from a third-party tortfeasor."); *Ludwig v. Farm Bureau Mut. Ins. Co.*, 393 N.W.2d 143, 145 (Iowa 1986).

[84]  It would appear this assumption is premised on the mere use of the term subrogation.

situations where an insured has received both insurance benefits and third-party compensation. Weaving these two assumptions together, Defendants argue that their right of reimbursement is plainly unambiguous.

Defendants' arguments are meritless. To begin with, even assuming that a plan can incorporate equitable principles as interpretative rules under ERISA, nothing within the plan even remotely suggests that that has occurred.[85] Next, there is simply no basis for holding that unsettled principles of common law can unambiguously establish the scope of Defendants' subrogation rights. While state courts have *generally* recognized a right of reimbursement where failing to do so would result in a double recovery, that is a far cry from being a fixed and unbending understanding of subrogation. Consequently, the Court cannot hold that Defendants' interpretation is "reasonably consistent" with the plan's unambiguous language.

More to the point, the plan's subrogation clause does not unambiguously establish Defendants' right to seek reimbursement from Plaintiffs because the subrogation clause is subject to more than one reasonable alternative interpretation. The two operative sentences of the subrogation clause, for purposes of the Court's analysis, are the first and third. The first gives Defendants "the right of subrogation to the extent permitted by the law against *third parties* that are legally

---

[85] The word "equitable" does not appear throughout the entirety of the plan's seventy-seven pages.

liable for the expenses paid" under the plan.[86]  The third sentence provides that

Defendants may "recover benefits amounts paid under this Certificate *under the*

*right of subrogation* to the extent permitted by law."[87]

Neither of these sentences make any reference to whether plan

administrators may seek reimbursement from members where the members have

received both benefits under the plan and third-party compensation.  Moreover, the

sentences appear to restrict Defendants' subrogation rights, not expand them;

read together, they limit both *who* Defendants may assert their subrogation rights

against (third parties), as well as *what* may be recovered ("benefits amounts paid").

Under this interpretation, the subrogation clause would not authorize Defendants to

seek reimbursement from Plaintiffs under any circumstances.  Such an

interpretation is clearly reasonable.

The Court also notes the numerous decisions recognizing a logical and legal

distinction between the concepts of subrogation and reimbursement.  As was stated

in *Provident Life and Accident Insurance Co. v. Williams*:

> While subrogation and reimbursement are similar in their
> effect, they are different doctrines.  With subrogation, the
> insurer stands in the shoes of the insured.    With
> reimbursement, the insurer has a direct right of repayment
> against the insured.  As a matter of logic and case law, a
> party can have one right, but not the other.[88]

---

[86]  Doc. 7-2 at § 8.3 (emphasis added).
[87]  *Id.* (emphasis added).
[88]  858 F. Supp. 907, 911 (W.D. Ark. 1994) (citing *Weber v. Sentry Ins.*, 442 N.W.2d 164, 167 (Minn. Ct. App. 1989)).

- 22 -

liable for the expenses paid" under the plan.[86]  The third sentence provides that

Defendants may "recover benefits amounts paid under this Certificate *under the*

*right of subrogation* to the extent permitted by law."[87]

Neither of these sentences make any reference to whether plan

administrators may seek reimbursement from members where the members have

received both benefits under the plan and third-party compensation.  Moreover, the

sentences appear to restrict Defendants' subrogation rights, not expand them;

read together, they limit both *who* Defendants may assert their subrogation rights

against (third parties), as well as *what* may be recovered ("benefits amounts paid").

Under this interpretation, the subrogation clause would not authorize Defendants to

seek reimbursement from Plaintiffs under any circumstances.  Such an

interpretation is clearly reasonable.

The Court also notes the numerous decisions recognizing a logical and legal

distinction between the concepts of subrogation and reimbursement.  As was stated

in *Provident Life and Accident Insurance Co. v. Williams*:

> While subrogation and reimbursement are similar in their
> effect, they are different doctrines.  With subrogation, the
> insurer stands in the shoes of the insured.    With
> reimbursement, the insurer has a direct right of repayment
> against the insured.  As a matter of logic and case law, a
> party can have one right, but not the other.[88]

---

[86]  Doc. 7-2 at § 8.3 (emphasis added).
[87]  *Id.* (emphasis added).
[88]  858 F. Supp. 907, 911 (W.D. Ark. 1994) (citing *Weber v. Sentry Ins.*, 442 N.W.2d 164, 167 (Minn. Ct. App. 1989)).

Since *Williams* was decided, a number of courts addressing similar questions have found there to be a legally significant distinction between subrogation and reimbursement.[89] It is therefore well established that "[u]nlike subrogation, which arises under state law and allows the insurer to stand in the shoes of its insured, reimbursement is a contractual right governed by ERISA and comes into play only after a plan member has received personal injury compensation."[90] The reasoning in these decisions is well taken, and the Court concludes that Defendants' failure to include an express reimbursement provision precludes them from asserting that any right of reimbursement is supported by the plan's unambiguous text.[91] Accordingly, because the plan can be subjected to reasonable alternative interpretations, I find that the plan's text is ambiguous.

### c.    Abuse of Discretion

The Court next considers whether Defendants' interpretation of the plan constitutes an abuse of discretion. "The interpretation of language in a plan governed by ERISA is controlled by federal common law, which draws on general principles of contract interpretation, at least to the extent that those principles are

---

[89]  *E.g.*, *Harris v. Harvard Pilgrim Health Care, Inc.*, 208 F.3d 274, 278 (1st Cir. 2000) ("[R]eimbursement and subrogation are distinct remedies."); *McIntosh v. Pac. Holding Co.*, 992 F.2d 882, 883-84 (8th Cir. 1993) (concluding that a contract containing both reimbursement and subrogation language created two legally distinct obligations), *cert. denied*, 510 U.S. 965 (1993); *Marshall v. Emps. Health Ins. Co.*, 1997 WL 809997, at *5 (6th Cir. Dec. 30, 1997); *Hamilton v. Pilgrim's Pride Emp. Group Health Plan*, 37 F. Supp. 2d 817, 825 (E.D. Tex. 1998); *Somalakis v. United Healthgroup, Inc.*, 2007 WL 9734837, at *3 (D.N.M. Feb. 20, 2007); *Salsbury v. Miller*, 1998 WL 265114, at *2 (Wis. Ct. App. May 27, 1998).

[90]  *Unisys Med. Plan v. Timms*, 98 F.3d 971, 973 (7th Cir. 1996).

[91]  The Court further notes that language which does not exist cannot be unambiguous.

consistent with ERISA."[92]  Because "[a] primary purpose of ERISA is to ensure

the integrity and primacy of the written plans . . . the plain language of an ERISA

plan should be given its literal and natural meaning."[93]  Further, courts are not "at

liberty to rewrite the terms of an ERISA plan."[94]  Nor may they "apply common

law theories to alter the express terms of written benefit plans."[95]

An administrator's interpretation constitutes an abuse of discretion if it is

"without reason, unsupported by substantial evidence, or erroneous as a matter of

law."[96]  The Third Circuit has provided five factors for courts to analyze when

evaluating a plan's interpretation under § 502(a)(1).[97]  These factors ask whether

the  interpretation:

> (1) Is consistent with the goals of the plan;
>
> (2) Renders any language in the plan meaningless or internally
>     inconsistent;
>
> (3) Conflicts with the substantive or procedural requirements of the
>     ERISA statute;
>
> (4) Has been applied and adopted consistently; and

---

[92]  *Schultz*, 670 F.3d at 838 (citations omitted).

[93]  *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997) (first citing *Duggan v. Hobbs*, 99 F.3d 307, 309-10 (9th Cir. 1996); then citing *Van Orman v. Am Ins. Co.*, 680 F.2d 301, 312 (3d Cir. 1982); and then citing *Burnham v. Guardian Life Ins. Co.*, 873 F.2d 486, 489 (1st Cir. 1989)).

[94]  *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 215 (3d Cir. 2001) (citations omitted).

[95]  *Isbell*, 139 F.3d at 1072 (citations omitted); *see also Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 81 (2d Cir. 2009) ("Because we apply rules of contract law to ERISA plans . . . a court must not 'rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous."  (citations omitted)).

[96]  *Howley*, 625 F.3d at 792 (internal quotation marks omitted) (quoting *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)

[97]  *Id.* at 795.

(5) Is contrary to the clear language of the plan.[98]

Defendants offer two interpretations of the plan supporting their conclusion that the plan has created a contractual right of reimbursement. For the following reasons, the Court finds both interpretations are an abuse of discretion.

### i.    The Priority Theory

Defendants' first interpretation is based on Defendants' construction of the concept of subrogation as essentially creating a priority right against any funds paid by a third-party tortfeasor. Defendants appear to believe that, by reserving a contractual right of subrogation against third-party tortfeasors, Defendants also retained the right to first priority over any proceeds received by those tortfeasors. Thus, until Defendants' subrogation rights are satisfied (and they fully recoup the cost of all benefits paid), any third-party proceeds Plaintiffs receive must be construed as properly belonging to Defendants. Under this understanding, none of the third-party funds actually belonged to Plaintiffs until Plaintiffs fully reimbursed Defendants.

Attempting to justify this theory, Defendants cite a line from *U.S. Steel Homes Credit Corp. v. South Shore Development Corp.*, which defines subrogation as "a legal fiction by force of which an obligation extinguished by payment made by a third party is considered as continuing to subsist for the benefit of this third

---

[98]    *Id.* at 795 (emphasis added) (quoting *Moench v. Robertson*, 62 F.3d 553, 566 (3d Cir. 1995)).

person."[99]  Defendants apparently invoke this ruling (which was articulated in the context of *mortgages*) to support the proposition that Defendants, by paying benefits to Plaintiffs for their injuries, extinguished the debt that the third-party tortfeasors owed to Plaintiffs, thereby extinguishing any right Plaintiffs might have against the third-parties for the cost of their injuries (at least until Defendants are fully reimbursed).

Defendants' interpretation fails because it is both logically unsound and legally erroneous.  To begin with, the rule set forth in *South Shore* is simply inapplicable to the relationship between an insured, his insurer, and a third-party tortfeasor.  In the mortgage context, a party who pays another's debt necessarily assumes that party's rights under the doctrine of subrogation; this makes sense because the two parties are contractually bound and because the underlying debt (the mortgage) has been fully assumed by the subrogee.

But this is wholly dissimilar from the personal-injury context, where an insurer compensates its insured for injuries caused by a third party.  In such circumstances, the insurer is not contractually assuming the third party's "debt" to the insured—rather, it is merely satisfying its obligation *to the insured* to cover the cost of his injuries.  Consequently, there is simply no basis for reading *South Shore* as holding that, by simply providing Plaintiffs with contractually defined benefits,

---

[99]  419 A.2d 785, 788 (Pa. Super. 1980) (internal quotation marks omitted) (quoting *Harvester Company v. Tuscarora Twp.*, 43 Pa. Super. 410, 415 (1910)).

Defendants have "extinguished" their right to receive compensation from the third parties that injured them.

Second, Defendants' interpretation is premised on a fundamentally mistaken understanding of subrogation which runs contrary to established precedent. The question of priority in subrogation law is an open one; while subrogation rights allow an insurer to *sue third parties*, they do not necessarily allow the insurer to *recover first*.[100] For example, when a plan is governed by the made-whole rule, the question of priority is resolved in favor of the insured; in these circumstances, "a plan gets no reimbursement until the beneficiary has been made whole."[101] In contrast, a plan may receive priority under the plan-priority rule.[102] But Defendants attempt to circumvent this issue by baldly asserting that they receive priority without pointing to any language in support is clearly unsustainable.

Defendants' interpretation further conflicts with precedent from the United States Supreme Court. In *U.S. Airways v. McCutchen*, the Supreme Court held that the common-fund doctrine serves as a default rule to aid in interpreting ERISA plans.[103] The Court then applied this rule in construing the plan there because the parties had not expressly abrogated its use.[104] However, *McCutchen* declined to

---

[100] If the opposite were true, there would be no need for the doctrine of equitable subrogation (as a right of reimbursement would be inherently implied).
[101] *Sunbeam*, 102 F.3d at 1372.
[102] *Id.*
[103] 569 U.S. at 101-02.
[104] *Id.*

implement the made-whole rule solely because the plan had expressly disavowed its application.[105] Because *McCutchen* indicated that the made-whole rule *would* serve as a default rule where not explicitly foreclosed by plan language, this Court concludes that the rule creates the appropriate baseline.

Defendants' interpretation defies the holding of *McCutchen*, which acknowledged that *beneficiaries*, not plans, receive priority by default under the made-whole rule. Defendants cite no language within the plan establishing their priority to compensation, and, as a result, the Court can only conclude that the made-whole rule applies. Given this, the Court cannot find that Defendants' interpretation is reasonable because it is in direct conflict with Supreme Court precedent.

Third, Defendants' expansive interpretation of the plan is at odds with the plan's clear language, which quite plainly restricts Defendants' right of subrogation to third parties, and which does not expressly provide for a right of reimbursement. As discussed above, the first sentence of the subrogation clause states that Defendants' shall have "the right of subrogation to the extent permitted by the law *against third parties* . . . ."[106] No other sentence clarifies that Defendants' right of subrogation also creates a right of reimbursement against plan

---

[105] *Id.* at 103 ("The express contract term, in short, contradicts the background equitable rule; and where that is so, for all the reasons we have given, the agreement must govern.").
[106] Doc. 7-3 at § 8.3 (emphasis added).

beneficiaries. As a result, to uphold Defendants' interpretation, the Court would be required to insert into the plan a term that does not exist.

The Court's conclusion on this point is bolstered by case law recognizing that plans may not create rights that are not formally included in the plan's text. Courts have repeatedly acknowledged that a plan which fails to formalize its rights in explicit language forfeits its ability to assert any such right against plan beneficiaries.[107] More specifically, courts have time and again found that merely granting a plan a right of subrogation against third parties is insufficient to establish the plan's right to reimbursement.[108]

Fourth, Defendants' interpretation conflicts with ERISA's requirement that plan documents be drafted "in a manner calculated to be understood by the average

---

[107] *See Alco Standard Corp. v. Gilbert*, 1992 WL 91939, at *2 (N.D. Ill. Apr. 30, 1992) ("Since the plaintiffs could have clearly established, in writing, that they had such a right to reimbursement or subrogation, their failure to do so prevents them from claiming this right now." (citations omitted); *J.C. Penney Co., Inc. v. McNaul*, 1988 WL 236362, at *3 (W.D. Miss. July 22, 1988) (holding that a plan cannot assert a right of contractual subrogation where the plan contains only a reimbursement clause, not a subrogation clause); *cf. McCutchen*, 569 U.S. at 101 ("The plan, in short, is at the center of ERISA. And precluding [the beneficiary's] equitable defenses from override plain contract terms helps it to remain there."); *Bill Gray*, 248 F.3d at 220 (finding a plan's right of reimbursement unambiguous where it was explicitly described and incorporated into the plan); *Cummings by Techmeier v. Briggs & Stratton*, 797 F.2d 383, 389 (7th Cir. 1986) (refusing to recognize a right of unjust enrichment to create a remedy not provided for in the plan), *cert. denied*, 479 U.S. 1008 (1986); *Corley v. Hecht Co.*, 530 F. Supp. 1155, 1163 (D.D.C. 1982) (holding that a plan's demands for reimbursement constituted a breach of fiduciary duty because a right of reimbursement was not expressly included in the plan).

[108] *E.g.*, *Hamilton*, 37 F. Supp. 2d at 825 (holding that a plan administrator abused his discretion by interpreting the plan's subrogation clause as creating a right of reimbursement); *Williams*, 858 F. Supp. at 911 (finding an analogous interpretation legally erroneous); *Somalakis*, 2007 WL 9734837, at *4 (same); *Gilbert*, 1992 WL 91939, at *2; *see also Vaughn v. Toyota Motor Corp.*, 314 F.R.D 222, 224 (N.D. Ohio 2016) (ruling that a subrogation clause does not necessarily give rise to a claim for reimbursement); *Corley*, 530 F. Supp. at 1163.

plan participant" and so as "to reasonably apprise such participants and beneficiaries of their rights and obligations under the Plan."[109]  It is quite clear that a beneficiary cannot be apprised of an obligation that does not appear within the plan's text.  Moreover, it would be unreasonable to expect that the average plan participant would be able to foresee Defendants' highly technical and novel construction simply by reading the plan's subrogation clause.

Fifth, and finally, Defendants' interpretation would render language in the subrogation clause superfluous.  Were the Court to accept Defendants' interpretation, it would render the first sentence's statement that Defendants' right of subrogation is limited to third parties superfluous.  In essence, it would read this phrase out of the plan itself.  The Court also rejects Defendants' argument that a contrary reading would render the third sentence duplicative and unnecessary; it is evident that the third sentence can be understood as describing *what* Defendants' may recover under their right of subrogation, while the first sentence clarifies against *whom* that right may be asserted.  Accordingly, the Court concludes that Defendants' first theory of interpretation constitutes an abuse of discretion.

### ii.    The Prejudice Theory

Defendants' second theory holds that a right of reimbursement was created when Plaintiffs settled their claims, thereby prejudicing Defendants' subrogation rights.  This theory is based on both the unsupported assertion that the plan's

---

[109]  *See* 29 U.S.C. § 1022(a); *see also Cummings*, 797 F.2d at 387.

- 30 -

subrogation clause can only be properly interpreted by looking to equitable principles developed under state law, as well as Defendants' more textual construction of the plan's second sentence (prohibiting plan members from prejudicing the plan's subrogation rights).

First, Defendants' novel theory that equitable principles have been "expressly" incorporated into the plan falls flat. Defendants offer no support (textual or otherwise) to justify their contention on this point, and instead rely on the plan's use of the term subrogation as establishing the parties' intent to incorporate equitable principles into the plan's terms. Defendants assert that subrogation is a creature of equity, and, as such, can only be properly construed in light of the equitable principles which created it.

But this approach misunderstands the nature of both subrogation and ERISA. More importantly, it is patently incorrect. Courts have repeatedly recognized the distinctions between statutory, equitable, and contractual subrogation.[110] And Defendants' arguments fail because they improperly conflate equitable subrogation (which exists independent of any contract) with contractual subrogation (which, by definition, does not). To put a finer point on it, a

---

[110] *In re Hamada*, 291 F.3d 645, 649 (9th Cir. 2002) ("There are various types of subrogation, most commonly categorized as 'conventional' or 'contractual' subrogation, 'legal' or 'equitable' subrogation, and statutory subrogation."). Contractual subrogation, as its name implies, arises from an agreement. *Id.* By comparison, equitable subrogation "does not invariably depend on the existence of an agreement," as it "can arise simply from the fact of payment." *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 626 (7th Cir. 2001) (citing *Schultz v. Gotlund*, 561 N.E.2d 652, 653 (Ill. 1990)).

contractual right of subrogation exists solely on the basis of an agreement, while equitable subrogation operates *by law.*

The problem for Defendants is that ERISA preempts "any and all state" laws that "relate to" employee-benefit plans.[111]  Accordingly, ERISA precludes application of any and all common-law doctrines, including, by necessity, the doctrine of *equitable subrogation.*[112]  Rather than keep these common-law rules, ERISA created a blank slate upon which parties could establish *contractual* rights governed by *federal common law.*[113]  It logically follows that, unless equitable subrogation is permitted by federal common law, a plan may not assert a claim for equitable subrogation under ERISA.  Conversely, a plan can only assert subrogation rights that arise from the plan's text.[114]

Second, Defendants' textual argument fails because it is in conflict with the plan's plain language, and runs contrary to the requirement that plans be drafted so as to be understood by the average plan participant.  While the second sentence of the subrogation clause explicitly prohibits members from prejudicing the plan's subrogation rights, it does not follow that the necessary consequence of violating

---

[111] 29 U.S.C. § 1144, ERISA § 514.

[112] *Sunbeam*, 102 F.3d at 1374 ("[I]t is well established that state subrogation doctrines are preempted under ERISA." (first citing *Holliday*, 498 U.S. at 65; and then citing *Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health & Welfare Benefit Plan*, 64 F.3d 1389, 1392 (9th Cir. 1995))).

[113] *McCutchen*, 569 U.S. at 100-01.

[114] The Court further notes that, even if it were possible for a party to incorporate equitable doctrines via plan language, there is no indication that the plan in this case actually did so.

that term is to create a right of reimbursement. To be sure, insurers often receive such a right when asserting a right of *equitable* subrogation. However, as discussed above, the insurers in those cases are asserting a right untethered from contractual language.

Here, by contrast, the Court must look to the plain language of the plan, not to state-court decisions applying common-law doctrines in non-ERISA cases. And it is evident to the Court that the plan's language does not explicitly specify what shall occur if a member is to prejudice the plan's rights. Accordingly, the Court concludes that the plan's text does not support Defendants' interpretation, and, consequently, that it would not be possible for the average plan participant to be adequately informed of his obligations. For these reasons, the Court finds that Defendants' second theory of interpretation is an abuse of discretion.[115]

### 4. Federal Common Law

The Court further declines to fashion a new rule under federal common creating a right of reimbursement where a beneficiary prejudices a plan's subrogation rights in violation of the plan's terms. Though the Court has deemed Defendants' interpretation unreasonable, they would still be able to succeed on their motion to dismiss if they convinced the Court that it would be appropriate to

---

[115] The Court acknowledges that its holding *may* render the second sentence of the subrogation clause superfluous (at least to the extent that it cannot find that it permits a right of reimbursement). However, the Court clarifies that is not ruling that the second sentence is necessarily inoperative. In any event, the Court has weighed the risk of superfluity with that of re-drafting plan terms and deems the latter to be of more concern.

adopt the abovementioned rule under federal common law.  As discussed above,

courts are authorized to develop federal common law where necessary to fill gaps

left within ERISA's statutory scheme.[116]  Despite this power, courts may not use

federal common law to override clear plan language,[117] nor are they "at liberty to

rewrite the terms of an ERISA plan."[118]

In fact, "the Supreme Court has been unequivocal in its warning that courts

should be 'especially reluctant to tamper with [the] enforcement scheme embodied

in [ERISA] by extending remedies not specifically authorized by its text.'"[119]

Thus, "[i]n deciding whether it is appropriate to apply principles of federal

common law, 'the inquiry is whether the judicial creation of a right . . . is

necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted

in the large by Congress.'"[120]  "The Court then asks whether the particular cause of

action furthers the purpose of ERISA."[121]

---

[116] *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 311 (3d Cir. 1982) (citing *Murphy v. Heppenstall Co.*, 635 F.2d 233, 237 (3d Cir. 1980)).

[117] *See McCutchen*, 569 U.S. at 91-92.

[118] *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 215 (3d Cir. 2001) (citations omitted).

[119] *Unum Life Ins. Co. of America v. Grourke*, 406 F. Supp. 2d 254, 530 (M.D. Pa. 2005) (quoting *Knudson*, 534 U.S. at 209); *see, e.g.*, *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 447 (1999) (noting that because ERISA is a "'comprehensive and reticulated statute,' and is 'enormously complex and detailed,' it should not be supplemented by extratextual remedies." (quoting *Nachman Corp. v. Pension Ben. Guar. Corp.*, 446 U.S. 359, 361 (1980); then quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 262 (1993); and then citing *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 376 (1990))).

[120] *Ryan*, 78 F.3d at 126 (internal quotation marks omitted) (alteration in original) (quoting *Plucinski v. I.A.M. Nat'l Pension Fund*, 875 F.2d 1052, 1056 (3d Cir. 1989)).

[121] *Grourke*, 406 F. Supp. 2d at 530 (citing *Plucinski*, 875 F.2d at 1057).

Defendants do not address why the rule they ask this Court to adopt is necessary to fill interstitial gaps within ERISA or furthers the purpose of ERISA. Instead, they rely solely on a single case, *Provident Life and Accident Insurance Co. v. Williams*, which adopted under federal common law the rule they now seek to apply.[122] There, the court found it appropriate to "create an equitable right of reimbursement" because the insured had settled with a tortfeasor and destroyed the insurer's subrogation rights.[123] *Williams* premised its ruling on the dual principles that "[t]he general body of state common law favors the creation of such an equitable right," and that "the federal common law of ERISA must utilize equitable principles where necessary to prevent injustice."[124]

Neither of these principles are persuasive. While courts may look to state common law doctrines when formulating federal common law,[125] the Court is cautious of incorporating a state-law remedy which ERISA has clearly preempted.[126] Moreover, since *Williams* was decided, courts have become more wary of supplementing the remedies set forth in § 502 absent significant justification.[127] The Court is also cognizant that the proposition that equitable

---

[122] 858 F. Supp. at 912.

[123] *Id.*

[124] *Id.* (citing *Fitch v. Ark. Blue Cross & Blue Shield*, 795 F. Supp. 904 (W.D. Ark. 1992)).

[125] *Amara*, 563 U.S. at 436.

[126] *See Travitz*, 818 F. Supp. at 768 ("[T]o argue alternatively that [a state anti-subrogation law] may be [adopted under federal common law and] applied to *interpret* a plan's substantive terms would be to allow a state to do through the back door, what it may not do via the front." (emphasis in original) (citations omitted)).

[127] *See Jacobson*, 525 U.S. at 447.

principles must be utilized to prevent injustice was severely undermined, if not directly overruled, by *McCutchen*. To the extent *McCutchen* permits federal common law rules to *supplement* plan terms, however, the Court finds that the holding offered in *Williams* is not appropriate as a default rule.[128]

Even if the Court were to adopt such a rule under federal common law, it is not clear that dismissal would be appropriate at this stage. As Plaintiffs point out, the amended complaint does not allege facts establishing that Plaintiffs' definitively prejudiced Defendants' subrogation rights. While Plaintiffs do admit that they settled their third-party claims, the complaint does not illuminate whether Defendants were aware of Plaintiffs' claims, or whether Defendants had an opportunity to initiate subrogation proceedings.

The Court acknowledges that state common law frequently recognizes a right of equitable reimbursement where an insured has violated an insurance contract by prejudicing the subrogation rights of his insurer. But the Court is hesitant to incorporate a new common-law rule absent further discussion elaborating on why that is, or is not, appropriate. The Court accordingly concludes that it would be improper to recognize an equitable right of reimbursement under the facts of this case. Defendants' motion to dismiss on this basis is therefore denied.

---

[128] Unlike the made-whole and common-fund doctrines, the *Williams* rule is a remedy, not an interpretative rule.

### 5. The Made-whole and Common-Fund Rules

Finally, even if Defendants could establish a right of reimbursement, their recovery would be limited by the common-fund and make-whole doctrines. As has been discussed at length, the common-fund and made-whole rules, as adopted under federal common law by *McCutchen*, serve as default rules to aid in interpreting plan language. Consequently, they shall apply to limit a plan's right to reimbursement where not explicitly abrogated by the plan's text.[129]

Because the Plan does not explicitly provide that the made-whole and common-fund doctrines shall not apply, the Court can only conclude that these doctrines do. Defendants point to no provision in the Plan providing otherwise, nor do they offer any other compelling reason why these doctrines should not govern the Court's construction.[130] Consequently, the Court finds that, even if Defendants had established their right to Plaintiffs' settlements, their entitlement would be reduced pursuant to these doctrines.

### B. Fiduciary Duty Claims

ERISA § 404 provides that every fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for

---

[129] 569 U.S. at 101-02.

[130] Defendants oddly claim that Plaintiffs have not pled facts plausibly giving rise to either defenses. However, Plaintiffs have clearly alleged that Defendants did not deduct a reasonable attorneys' fee from their reimbursement requests (implicating the common-fund doctrine) and that Defendants demanded reimbursement prior to Plaintiffs receiving full compensation (implicating the made-whole rule). Doc. 7.

the exclusive purpose of . . . providing benefits to participants and their beneficiaries."[131]  This must be done "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."[132]  Section 404 further states that all fiduciaries owe a duty to act "in accordance with the documents and instruments governing the plan."[133]

"While the statutory disclosure and reporting requirements are clearly set forth in ERISA, Congress chose not to enumerate all the fiduciary duties owed."[134] "Consequently, the [Supreme] Court has indicated that courts must create federal common law to flesh out the meaning of ERISA and effectuate fully its meaning and purpose."[135]  Courts have thus acknowledged specific fiduciary duties under federal common law that have not been explicitly codified in § 404.  For example, the Third Circuit recognizes the duty of loyalty,[136] the duty of disclosure,[137] and the duty to avoid misrepresentations.[138]

---

[131] 29 U.S.C. § 1104(a)(1)(A), ERISA § 404(a)(1)(A).
[132] *Id.* § 404(a)(1)(B).
[133] *Id.* § 404(a)(1)(C).
[134] *Jordan v. Fed. Exp. Corp.*, 116 F.3d 1005, 1013 (3d Cir. 1997) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996)).
[135] *Ream v. Frey*, 107 F.3d 147, 154 n.6 (3d Cir. 1997).
[136] *Pegram v. Herdrich*, 530 U.S. 211, 224 (2000).
[137] *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 440 (3d Cir. 1996).
[138] *Burstein v. Ret. Account Plan for Emps. of Allegheny Health Educ. & Res. Found.*, 334 F.3d 365, 384 (3d Cir. 2003).

Plaintiffs' remaining counts consist of five breach of fiduciary duty claims brought under § 502(a)(3). These claims make the following assertions:

- Defendants breached their duty of loyalty by enforcing an incorrect interpretation of the Plan's terms against Plaintiffs (Counts II and VIII);

- Defendants breached their duty to disclose material information and to not make material misrepresentations by failing to inform Plaintiffs (and other beneficiaries) that Defendants did not have a right to seek reimbursement against Plaintiffs under the terms of the Plan (Counts III and IX);

- Defendants breached their duty to act in accordance with the terms of the Plan (Counts IV and X);

- Defendants failed to act in accordance with federal common law (Counts V and XI); and

- Defendants breached their duty to create and follow reasonable claims procedures (Counts VI and XII).

Defendants seek to dismiss these counts on two bases. First, they maintain that four claims are barred as duplicative of Plaintiffs' § 502(a)(1) benefits claim. Second, they assert that all claims fail as a matter of law. The Court disagrees. As a result, Defendants' motion to dismiss Plaintiffs' breach of fiduciary duty claims is denied.

### 1. Duplicative Claims Under § 502(a)(3)

The Court first determines that dismissing Plaintiffs' breach of fiduciary duty claims as duplicative at this stage of the proceedings would be premature. In *Varity Corp. v. Howe*, citing one of ERISA's "basic purposes" of providing "plaintiffs with a remedy," the Supreme Court held that beneficiaries may maintain

breach of fiduciary duty claims under § 502(a)(3).[139]  In doing so, *Varity* established that § 502(a)(3) is a "catchall" provision permitting relief for beneficiaries where other claims are not available.[140]  However, because the text of § 502(a)(3) only provides for "appropriate" relief, *Varity* noted that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief" because relief, at that point, "would not be 'appropriate.'"[141]

Courts interpreting *Varity* all agree that a beneficiary may not ultimately *recover* under both § 502(a)(1) and § 502(a)(3).  However, courts have split regarding how that prohibition impacts a beneficiary's ability to plead under both provisions simultaneously.  The majority of courts hold that *Varity* prohibits beneficiaries from asserting claims under § 502(a)(3) where those claims could be properly brought under § 502(a)(1).[142]  This rule applies even where relief is not

---

[139] 516 U.S. 489, 513-15 (1996).  Prior to *Varity*, the Supreme Court had intimated that breach of fiduciary duty claims were likely only available under § 502(a)(2), which redresses only those harms suffered by the plan as a whole. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n. 9 (1985) ("Inclusion of the Secretary of Labor [as an authorized plaintiff under § 502(a)(2)] is indicative of Congress' intent that actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole.").

[140] 516 U.S. at 510-11.

[141] *Id.* at 515 (citing *Russell*, 473 U.S. at 144).

[142] *Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009) ("[A] majority of the circuits are of the view that if relief is available to a plan participant under [§ 502(a)(1)], then that relief is *un*available under [§ 502(a)(3)].") (emphasis in original) (citations omitted); *see, e.g.*, *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 107 (4th Cir. 2006); *Antolik v. Saks, Inc.*, 463 F.3d 796, 803 (8th Cir. 2006); *Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.3d 1284, 1287 (11th Cir. 2003); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998); *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610-11 (5th Cir. 1998); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474-75 (9th Cir. 1997), *abrogated on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012).

actually available under § 502(a)(1).[143]  It also precludes plaintiffs from pleading § 502(a)(3) claims in the alternative.[144]

Standing in lone opposition is the United States Court of Appeals for the Second Circuit.  In *Devlin v. Empire Blue Cross & Blue Shield*, the Second Circuit declined to follow the majority's strict approach.[145]  Instead, *Devlin* ruled that a plaintiff's § 502(a)(3) claim should not be dismissed until it becomes clear that relief is actually available under § 502(a)(1).[146]  Underlying this was the Second Circuit's interpretation of *Varity* as holding that "where a plan participant has *no* remedy under another section of ERISA, she can assert a claim for breach of fiduciary duty under § 502(a)(3)."[147]  Consequently, under *Devlin*, a plaintiff may pursue claims under both § 502(a)(1) and § 502(a)(3) where the § 502(a)(3) claim is pled in the alternative or the plaintiff seeks a remedy not available under § 502(a)(1).[148]

---

[143] *Antolik*, 463 F.3d at 803 (declining to reinstate a claim under § 502(a)(3) after the plaintiff's claim under § 502(a)(1) had been dismissed because "[w]here a plaintiff is provided adequate relief by the right to bring a claim for benefits under . . . § 1132(a)(1)(B), the plaintiff does *not have a cause of action* to seek the same remedy under § 1132(a)(3)(B)." (internal citations omitted)); *Wilkins*, 150 F.3d at 615 ("Because § 1132(a)(1)(B) provides a remedy for [the plaintiff's] alleged injury . . . he does not have a right to a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3).").

[144] *Ogden*, 348 F.3d at 1287 ("[A]n ERISA plaintiff who has an adequate remedy under Section 502(a)(1)(B) cannot alternatively plead and proceed under Section 502(a)(3).").

[145] 274 F.3d 76, 89 (2d Cir. 2001).

[146] *Id.*

[147] *Id.* (citing *Varity*, 516 U.S. at 515).

[148] *Id.* at 89-90.

The Third Circuit has not yet weighed in on this issue directly, which has resulted in a split of authority within the Circuit's district courts.[149] Some district courts have followed the majority approach and held that a plaintiff cannot bring § 502(a)(1) and § 502(a)(3) claims simultaneously.[150] Others have (at least implicitly) followed the Second Circuit's lead and sustained claims under both provisions where it was not yet determined whether the plaintiffs would certainly receive adequate relief under § 502(a)(1) (or another ERISA provision).[151] Still others have found it appropriate to dismiss § 502(a)(3) claims where the plaintiff is in fact seeking duplicative relief (thus failing under both approaches).[152]

---

[149] The Third Circuit noted in *Ream v. Frey* that "[w]here Congress otherwise provided for appropriate relief for the injury suffered by a beneficiary, further equitable relief ought not be provided." 107 F.3d 147, 152 (3d Cir. 1997). But *Ream* dealt with a situation factually analogous to that in *Varity*, thus limiting the precedential value of this statement and its impact on the instant circuit split. *Id.*

[150] *E.g.*, *Miller v. Mellon Long Term Disability Plan*, 721 F. Supp. 2d 415, 422 (W.D. Pa. 2010); *Smith v. Thomas Jefferson Univ.*, 52 F. Supp. 2d 495, 498 n.4 (E.D. Pa. 1999) ("[W]ere plaintiff to proceed on the Count I claim under [§ 502(a)(1)], it would necessary to dismiss the claim under [§ 502(a)(3)].") (citing *Kuestner v. Health & Welfare Fund & Pension Fund of the Phila. Bakery Emps.*, 972 F. Supp. 905, 910-11 (E.D. Pa. 1997); and then citing *Reilly v. Keystone Health Plan East, Inc.*, No. 98-CV-1648, 1998 WL 422037, at *4 (E.D. Pa. July 27, 1998)); *Powell, II v. Greater Media Inc. Long Term Disability Plan*, Civ. No. 07-726, 2008 WL 5188789, at *4 (E.D. Pa. Dec. 10, 2008) (rejecting *Devlin* as the minority view).

[151] *E.g.*, *Terry v. Northrop Grumman Health Plan*, 989 F. Supp. 2d 401, 407 (M.D. Pa. 2013) (quoting *Parente v. Bell Atl. Pa.*, No. 99-5478, 2000 WL 410081, at *3 (E.D. Pa. April 18, 2000)); *Tannenbaum v. UNUM Life Ins. Co. of Am.*, No. 03-CV-1410, 2004 WL 1084658, at *4 (E.D. Pa. Feb. 27, 2004) (concluding that, at least under the circumstances of that case, the plaintiff was permitted to seek relief simultaneously under both § 502(a)(3) and § 502(a)(1)); *Parente*, 2000 WL 410081, at *3.

[152] *E.g.*, *Newcomer v. Henkels & McCoy, Inc.*, 2017 WL 3268155, at *5 (M.D. Pa. Aug. 1, 2017) ("[E]ven if *Varity* does not establish a bright line rule precluding simultaneous [§ 502(a)(3)] and [§ 502(a)(1)] claims in all cases, we can find no way to construe Plaintiff's [§ 502(a)(3)] claim such that it might provide 'other appropriate equitable relief' for a violation that the ERISA statute does not elsewhere remedy." (internal quotation marks omitted) (quoting *Greene v. Hartford Life & Accident Ins. Co.*, 2014 WL 4473725, at *4 (E.D. Pa. Sept. 10,

After careful consideration, the Court finds it most appropriate to adopt the Second Circuit's reasoning. Though *Varity* noted that § 502(a)(3) is a catchall provision (and thus a provision of last resort), *Varity* also premised its conclusion on the principle that Congress did not intend to leave beneficiaries without a remedy. Though the Court acknowledges that a plaintiff may not *recover* under truly duplicative claims, that does not mean a plaintiff should be barred from asserting a claim under § 502(a)(3) where it is not yet clear that relief is *actually* available under another provision. Moreover, the Court does not read *Varity* as wholly barring relief where a plaintiff seeks a remedy that is *not* available under § 502(a)(1).

As a result, the Court concludes that any determination at this stage regarding whether Plaintiffs' § 502(a)(3) claims are duplicative would be premature. First, it is impossible to tell at the motion-to-dismiss stage whether Plaintiffs' will certainly succeed on their § 502(a)(1)(B) claim. And second, it is not clear whether Plaintiffs are seeking relief under § 502(a)(3) that is not available under § 502(a)(1)(B). Of course, it may be appropriate to rule on this issue again later in the litigation. But, at this point in the proceedings, the Court finds it

2014))); *Potts v. Hartford Life & Accident Insurance Co.*, 2016 WL 4218384, at *4 (W.D. Pa. Aug. 9, 2016).

unnecessary to dismiss Plaintiffs' claims before the true issues in this case can be brought into sharper relief.[153]

Accordingly, Defendants' motion to dismiss Plaintiffs' breach of fiduciary duty claims on this basis is denied.

### 2. Improper Interpretation of the Plan, Failure to Disclose Material Information and Making Material Misrepresentations, Failure to Comply with the Terms of the Plan, and Failure to Act in Accordance with ERISA Common Law

Beyond asserting that the majority of Plaintiffs' breach of fiduciary duty claims fail as duplicative, Defendants also argue that four of Plaintiffs' breach of fiduciary duty claims fail as a matter of law. Specifically, Defendants maintain that Plaintiffs' claims for breach of fiduciary duty in improperly interpreting the plan (Counts II and VIII), failing to disclose material information and making material misrepresentations (Counts III and IX), failing to comply with the terms of the plan (Counts IV and X), and failing to act in accordance with ERISA common law (Counts V and XI) all fail because Defendants are entitled to the funds at issue.

Defendants' arguments fail because they all rest on the premise that Defendants can establish a right of reimbursement under the plan. For all of the

---

[153] *See N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Group*, 798 F.3d 125, 134 (2d Cir. 2015) (reasoning that, at the motion-to-dismiss stage, it was "too early to tell if [the plaintiff's] claims under § 502(a)(3) are in effect repackaged claims under § 502(a)(1)").

reasons previously discussed, this is not the case. Consequently, Defendants arguments are inapposite,[154] and their motion to dismiss these counts is denied.

### 3. Failure to Comply with Federal Common Law

Defendants also contend that Plaintiffs' breach of fiduciary duty claim for failing to act in accordance with federal common law fails as a matter of law because the plain language of the plan governs interpretation of the plan. Defendants assert that the plan confers upon them an unambiguous right to reimbursement, and that the unambiguous nature of this conferral precludes the application of federal common law.

This argument is ironic and unsuccessful. Defendants spend a significant portion of their briefing asking the Court to apply equitable rules to aid in construction of the plan's terms, but now assert such principles are wholly precluded from consideration. However, as this Court has made clear, Defendants assertion is foreclosed by the Court's determination that the plan is ambiguous, as well as by *McCutchen* and the fact that Defendants' have not explicitly abrogated the application of the made-whole and common-fund rules. Accordingly, Defendants' motion to dismiss this claim is denied.

---

[154] *E.g.*, *Minerley v. Aetna, Inc.*, 801 Fed. Appx. 861, 866-67 (3d Cir. Feb. 13, 2020) (rejecting a breach of fiduciary duty claim based on the plan's enforcement of a *valid* reimbursement provision).

#### 4. Failure to Follow Reasonable Claims Procedure

Finally, Defendants maintain that Plaintiffs' breach of fiduciary duty claim

for failure to create and follow reasonable claims procedure must be dismissed.

Defendants' arguments in support of this position is brief; they rest their arguments

solely on the theory that Plaintiffs seek to enforce the procedural requirements of

§ 503, and that "there is no private cause of action to enforce the provisions of

[§ 503]."[155]

Section 503 requires that an ERISA plan must:

- (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the Plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participants; and

- (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.[156]

Federal regulations interpreting § 503 prohibit an ERISA plan from

requiring "a claimant to file more than two appeals of an adverse benefit

determination" before the claimant may pursue a civil action under § 502(a).[157]

Further, if a plan fails to "establish or follow claims procedures consistent with the

requirements of this section, a claimant shall be deemed to have exhausted the

administrative remedies available under the plan and shall be entitled to pursue any

---

[155] Doc. 11 at 19.
[156] 29 U.S.C. § 1133.
[157] 29 C.F.R. § 2560.503-1(c)(2).

available remedies under [§ 502(a)] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."[158]

The Third Circuit has recognized that a party may challenge a denial of benefits on the basis that a plan's claim procedures did not provide an opportunity for "full and fair review."[159]  Though the remedy available to a participant, as well as the statutory basis for such an argument, is not clear-cut,[160] it is evident to the Court that the procedural requirements of § 503 are not merely for show.  For example, "the absence of any written claim procedures" or the inadequacy of any claim procedures used may constitute an actionable violation of § 503.[161]

Plaintiffs allege that Defendants breached their fiduciary duty to create and follow a reasonable claims procedure as described and required by § 503 and applicable federal regulations.  Specifically, they contend that the plan requires Plaintiffs to pursue more than two levels of appeal, and, more fundamentally, that the plan's appeal procedures does not allow Plaintiffs to assert their challenges to the plan's subrogation clause.  They thus seek to enforce the regulations' provision

---

[158] *Id.* § 2560.503-1(l)(2).

[159] *See Grossmuller v. Int'l Union, United Auto, Aerospace & Agric. Implement Workers of Am.*, 715 F.2d 853, 857-58 (3d Cir. 1983).

[160] *See, e.g., id.* at 858-59 (finding that the plan failed to provide the beneficiary-plaintiff with a full and fair review in violation of § 503 without specifying the statutory basis for the plaintiff's challenge); *Syed v. Hercules Inc.*, 214 F.3d 155, 162 (3d Cir. 2000) ("[T]he remedy for a violation of § 503 is to remand to the plan administrator so the claimant gets the benefit of a full and fair review.") (citing *Weaver v. Phx. Home Life Mut. Ins. Co.*, 990 F.2d 154, 159 (4th Cir. 1993)).

[161] *Grossmuller*, 715 F.2d at 858.

and prohibit Defendants from arguing that Plaintiffs have failed to exhaust available remedies.

In support of their position that § 503 cannot give rise to an independent breach of fiduciary duty claim, Defendants cite only one case: *Cohen v. Horizon Blue Cross Blue Shield of New Jersey*.[162]  Though *Cohen* states definitively that "§ 503 itself does not provide an independent cause of action,"[163] Defendants' citation of this holding is undermined by Third Circuit precedent recognizing that "a plan that does not satisfy the minimum procedural requirements of § 503 and its regulations operates in violation of ERISA."[164]  The Third Circuit has further recognized that "the remedy for a violation of § 503 is to remand to the plan administrator so the claimant gets the benefit of a full and fair review."[165]

Accordingly, the Court declines to dismiss Plaintiffs' claim on the basis that Defendants offer.  Because parties may receive *a* remedy, the Court cannot hold that § 503 necessarily does not create a private right of action.  While it is not evident whether a beneficiary may enjoin a party from asserting an exhaustion defense under § 502(a)(3),[166] the Court is not convinced by Defendants' arguments

---

[162]  2013 WL 5780815 (D.N.J. Oct. 25, 2013).

[163]  *Id.* at *9 (citations omitted).

[164]  *Miller*, 632 F.3d at 851.

[165]  *Syed*, 214 F.3d at 162.

[166]  A beneficiary may avoid needing to exhaust administrative remedies where he has been denied "meaningful access" to a plan's administrative procedures.  *See Majka v. Prudential Ins. Co. of Am.*, 171 F. Supp. 2d 410, 415 (D.N.J. 2001).  This occurs when "one party has the sole power to invoke the higher levels of the review procedure and has not allowed another party access [and] . . . the other party [has] made attempts to have the higher levels of review initiated."  *Id.* (alterations in original) (citations omitted).  But it is not evident whether a

that such a claim is necessarily barred.  In any event, it would seem that precedent allows Plaintiffs to raise a violation of § 503 to request a remand for a full and fair review of their benefits claim.  Defendants' motion to dismiss on this basis is therefore denied.

## IV.    CONCLUSION

Defendants' motion to dismiss pursuant to Rule 12(b)(6) is denied.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

defense against the exhaustion requirement must be asserted in response to briefing or whether it can be asserted as a standalone claim.  Nevertheless, to the extent such a defense may asserted in a complaint, the Court finds it has been adequately pled.