**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LORI FREITAS and KAYLEE MCWILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GEISINGER HEALTH PLAN, and SOCRATES, INC.,<br><br>Defendants. | No. 4:20-CV-01236<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**NOVEMBER 16, 2022**

Plaintiffs Lori Freitas and Kaylee McWilliams sued Defendants, Geisinger Health Plan ("GHP") and its subrogation agent, Socrates, Inc., alleging various causes of action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Defendants now move to dismiss several of the Counts in Plaintiffs' Second Amended Complaint ("SAC"). Plaintiffs move to strike Defendants' Motion to Dismiss, and also move to compel discovery of information regarding other plan participants. As discussed below, the Court converted Defendants' motion into a summary judgment motion. For the following reasons, that motion will be granted, and Plaintiffs' motions will be denied.

# I.    BACKGROUND

The Court previously detailed the facts underlying this matter in its prior opinion denying Defendants' first Motion to Dismiss.[1] Therefore, this opinion briefly discusses this matter's underlying factual background and focuses on new developments leading up to Defendants' second Motion to Dismiss.

## A.    Defendants' Demands for Reimbursement from Plaintiffs' Personal Injury Recoveries

Plaintiff Lori Freitas received insurance coverage from her employer, Mount Airy Casino Resort.[2] As did Plaintiff Kaylee McWilliams from her father's employer, Big Heart Pet Brands, a subsidiary of the J.M. Smucker Company.[3] Both employers had employee welfare benefit plans that included health insurance from GHP.[4] These plans were termed the Mount Airy Wrap Plan and the J.M. Smucker Master Health Plan (collectively, the "Employer Plans"). GHP set out its coverage of Mount Airy and J.M. Smucker employees through a document known as the Group Subscription Certificate.[5]

Both Plaintiffs were injured by third-party tortfeasors.[6] They both sought and received compensation from GHP for their injuries.[7] Eventually, both Plaintiffs sued

---

[1]    *See generally Freitas v. Geisinger Health Plan*, 542 F. Supp. 3d 283 (M.D. Pa. 2021).
[2]    Decl. of Carol Benginia, Doc. 58-2 ¶ 2.
[3]    Decl. of Melissa Terry, Doc. 58-3 at ¶ 2.
[4]    *Id.* ¶ 1; J.M. Smucker Master Health Plan, Doc. 76-4 at 46; Decl. of Carol Benginia, Doc. 58-2 ¶ 1; Mount Airy Wrap Plan, Doc. 76-3 at 38.
[5]    *See* SAC, Doc. 50 ¶¶ 7, 33, 184; Doc. 50-1, GHP Group Subscription Certificate.
[6]    *Freitas*, 542 F. Supp 3d at 292.
[7]    *Id.*

and later settled with the respective tortfeasors who injured them.[8] After the settlements, Defendants demanded reimbursement from each Plaintiff, relying on a subrogation clause in the Certificate that did not explicitly set out a right to reimbursement.[9] Plaintiffs, under protest, paid a portion of what Defendants demanded.[10] They subsequently filed a class-action complaint asserting ERISA claims for both monetary relief for benefits due to them under ERISA § 502(a)(1) as well as declaratory and injunctive relief for Defendants' alleged violations of their fiduciary duties under ERISA § 502(a)(3).[11]

### B.   The Court's Prior Opinion Denying Defendants' First Motion to Dismiss

Defendants moved to dismiss Plaintiffs' complaint, claiming they had an equitable right to reimbursement even though there was no explicit right in the Certificate.[12] The Court denied their motion, largely because there was no explicit right in the Certificate and Defendants' arguments for an equitable right were unavailing.[13]

Plaintiffs premised some of their fiduciary duty claims under § 502(a)(3) on the same facts giving rise to § 502(a)(1) allegations, i.e., the improper demands for reimbursement. Relying on the duplicative nature of those claims, Defendants

---

[8]   *Id.*
[9]   *Id.* at 291-92.
[10]  *Id.* at 292 n.26.
[11]  *Id.* at 292-93; SAC, Doc. 50.
[12]  *Freitas*, 542 F. Supp 3d at 293.
[13]  *See id.* at 298-309.

moved to dismiss them as well.[14] The Court rejected their position, concluding that while "a beneficiary may not ultimately recover under both § 502(a)(1) and § 502(a)(3), . . . . that does not mean a plaintiff should be barred from asserting a claim under § 502(a)(3) where it is not yet clear that relief is actually available under another provision."[15] In other words, the Court held that Plaintiffs could *plead* duplicate claims under both sections but would only recover once. But the Court noted that "it may be appropriate to rule on this issue again later in the litigation."[16]

Defendants also argued that Plaintiffs' fiduciary-duty claims failed as a matter of law because they were entitled to the funds under the subrogation clause, largely repeating their arguments related to Plaintiffs' § 502(a)(1) claims.[17] The Court rejected those arguments because they all rested on the erroneous premise that the Certificate granted them a right to reimbursement.[18]

Lastly, Defendants argued that 29 C.F.R. § 2650.503-1, upon which Plaintiffs based one set of claims, did not authorize an independent cause of action.[19] Although the Court did not find clear indication of a cause of action and corresponding remedy, it explained "that precedent allows Plaintiffs to raise a violation of § [2650.503-1] to request a remand for a full and fair review of their benefits claim."[20] The Court

---

[14] *Id.* at 310.
[15] *Id.* at 311-12.
[16] *Id.* at 312.
[17] *Id.* at 310.
[18] *See id.* at 312-13.
[19] *Id.* at 313.
[20] *Id.* at 315.

accordingly allowed those duplicative claims to withstand Defendants' Motion to Dismiss.

One of the Court's observations in its prior opinion is particularly relevant to the instant motion. The Court noted that, to prevail, Defendants "must point to explicit language within the plan creating a right of reimbursement and designating specific funds subject to that right."[21] Indeed, even though the Certificate—the only plan document in the record at that point—did not contain a reimbursement clause, the Court noted that "plans often contain" such clauses.[22]

### C.    Procedural History

Following the Court's denial of Defendants' first Motion to Dismiss, the parties began discovery. Plaintiffs filed requests for productions. After seeking and receiving several extensions from Plaintiffs, Defendants responded, producing some documents, and objecting to several of Plaintiffs' requests. Plaintiffs then moved to compel Defendants to produce the requested documents.[23] After they filed the Motion to Compel but before all briefing relevant to that motion was submitted, Plaintiffs filed the SAC.[24] Plaintiffs apparently did not notify Defendants that they would file the SAC, but Defendants consented to its filing.[25]

---

[21]  *Id.* at 313.
[22]  *Id.* (citing *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 138 (2016)).
[23]  Plfs.' Mot. to Compel, Doc. 36.
[24]  SAC, Doc. 50.
[25]  Notice of Defs.' Consent, Doc. 53.

The SAC is nearly identical to Plaintiffs' earlier complaint. Like they did in their earlier complaint, Plaintiffs bring several ERISA claims. Counts I and VII allege causes of action under § 502(a)(1) for recovery of benefits due to each Plaintiff under their ERISA plans.[26] Counts II through VI and VIII through XII, raised under § 502(a)(3), allege that Defendants breached their fiduciary duties in seeking reimbursement from each Plaintiff.[27]

After Plaintiffs filed the SAC, Defendants moved to dismiss all Counts and to partially dismiss Count VII to the extent that it seeks injunctive or declaratory relief. Defendants alternatively move for summary judgment.[28] Plaintiffs in turn moved to strike Defendants' second Motion to Dismiss. After filing their brief in support of their Motion to Strike but before Defendants filed their response, Plaintiffs filed an amended Motion to Strike, to which Defendants then responded.[29]

By order, the Court converted Defendant's Motion to Dismiss into a motion for summary judgment under Federal Rule of Civil Procedure 12(d) and allowed the parties to submit additional evidence.[30] All motions have been fully briefed and are ripe for disposition.

---

[26]   SAC, Doc. 50 ¶¶ 64-90 (Plaintiff Freitas), 204-29 (Plaintiff McWilliams).

[27]   SAC, Doc. 50 ¶¶ 91-203 (Plaintiff Freitas), 203-343 (Plaintiff McWilliams).

[28]   Defs.' Second Motion to Dismiss, Doc. 54.

[29]   Plfs.' Amend. Mot. to Strike, Doc. 64. As Plaintiffs did not file another brief in support, the Court will consider the operative brief filed in support of their original Motion to Strike.

[30]   Doc. 77.

## II.    LAW

### A.    Motion of Strike

Pursuant to Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." This rule is "designed to reinforce the requirement in Rule 8 . . . that pleadings be simple, concise, and direct."[31] "To that end, the purpose of any motion to strike should be to 'clean up the pleadings, streamline litigation, and avoid the unnecessary forays into immaterial matters.'"[32] The burden rests with the movant.[33] He or she must demonstrate that the matter falls within one of the categories listed in Rule 12(f).

### B.    Conversion of Motions to Dismiss to Motions for Summary Judgment and the Summary Judgment Standard

Under Rule 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Normally, this analysis is confined to the plaintiff's complaint and any documents attached to it. But under Rule 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be

---

[31] 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1380 (3d ed. 2020 update).

[32] *Roamingwood Sewer & Water Assn. v. Natl. Diversified Sales, Inc.*, 509 F. Supp. 3d 198, 204 (M.D. Pa. 2020) (Wilson, J.) (quoting *United States v. Educ. Mgmt. Corp.*, 871 F. Supp. 2d 433, 460 (W.D. Pa. 2012)).

[33] *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 496 (W.D. Pa. 2019)

treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."[34]

Under Rule 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[35] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[36] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[37] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[38]

---

[34] The fact that Defendants alternatively moved for summary judgment is sufficient to notify Plaintiffs that the Court may convert Defendants' motion to one for summary judgment. *See Hilfirty v. Shipman*, 91 F.3d 573, 579 (3d Cir. 1996) *overruled on other grounds by Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000) (holding that opposing parties have "adequate notice" of potential conversion when the moving party frames its motion to dismiss or "in the alternative as [a] motion[] for summary judgment"). Nonetheless, the Court informed the parties it would convert the motion by order.  Doc. 77; *see also Davis v. Phelan Hallinan & Diamond PC*, 687 F. App'x 140, 143 (3d Cir. 2017) (citing *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 184 F.3d 280, 287-88 (3d Cir. 1999) (expressing that it is "preferable" that "district courts themselves give notice of conversion.")).

[35] Fed. R. Civ. P. 56(a).

[36] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

[37] *Clark*, 9 F.3d at 326.

[38] *Id.*

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[39] When the movant properly supports its motion, the nonmoving party must then show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[40] The United States Court of Appeals for the Third Circuit explains that the nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[41] Instead, it must "identify those facts of record which would contradict the facts identified by the movant."[42]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[43] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[44] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[45]

---

[39] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[40] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[41] *Betts v. New Castle Youth Development Center*, 621 F.3d 249, 252 (3d Cir. 2010).

[42] *Port Authority of N.Y. and N.J. v. Affiliated FM Insurance Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (quoting *Childers v. Joseph*, 842 F.2d 689, 694-95 (3d Cir. 1988)).

[43] *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

[44] *Razak v. Uber Technologies, Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

[45] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[46]

## C.   Motion to Compel Discovery

Rule 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Courts interpret relevancy "broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."[47] Discovery requests are, therefore, relevant so long as "there is any possibility that the information [requested] may be relevant to the general subject matter of the action."[48] The determination of matters relating to discovery is left to the discretion of the trial court.[49]

A party objecting to the discovery request must show that the requested materials do not fall "within the broad scope of relevance . . . or else are of such marginal relevance that the potential harm occasioned by disclosure would outweigh the ordinary presumption in favor of broad disclosure."[50] Courts will specifically not permit discovery requests which are (1) made in bad faith, (2) unduly burdensome,

---

[46]   Fed. R. Civ. P. 56(c)(3).

[47]   *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978).

[48]   *Brown v. James*, No. 4:03-CV-0631, 2009 WL 743321, at *3 (M.D. Pa. Mar. 18, 2009) (McClure, J.) (quoting *Caruso v. Coleman Co.*, 157 F.R.D. 344, 347 (E.D. Pa. 1994)).

[49]   *Illes v. Beaven*, Civil No. 1:12-CV-0395. 2013 WL 522075, at *1 (M.D. Pa. Feb. 11, 2013) (Caldwell, J.) (citing *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987)).

[50]   *Brown*, 2009 WL 743321, at *3 (quoting *Burke v. New York City Police Dep't*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987)).

(3) irrelevant to the general subject matter of the action, or (4) related to confidential or privileged information.[51]

## III.   ANALYSIS

### A.   Plaintiffs' Motion to Strike

The Court begins with Plaintiffs' Motion to Strike Defendants' second Motion to Dismiss. Plaintiffs first argue that Defendants' Motion to Dismiss is untimely. On February 15, 2022, the Court issued a Case Management Order allowing the parties to file amended pleadings until May 31, 2022.[52] However, on a joint motion from all parties, the Court then issued an amended Case Management Order on May 18, 2022, that deferred all deadlines until after the Court ruled on Plaintiffs' Motion to Compel Discovery. On May 31, 2022, the original deadline for amended pleadings, Plaintiffs filed the SAC.[53] Two weeks later, on June 14, 2022, Defendants filed a notice indicating their consent to the SAC's filing.[54] Another two weeks later, Defendants filed their second Motion to Dismiss.[55]

Plaintiffs argue that Rule 15(a)(3)—which governs amendments to pleadings—required Defendants to file their motion within two weeks of the SAC's

---

[51] *Id.* (citing *Hicks v. Big Bros./Big Sisters of Am.*, 168 F.R.D. 528, 529 (E.D. Pa. 1996); *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982)).
[52] Amend. Case Management Order, Doc. 35.
[53] SAC, Doc. 50.
[54] Doc. 53.
[55] Defs.' Second Mot. to Dismiss, Doc. 54.

filing, or by June 14, 2022.[56] Defendants counter that Plaintiffs failed to adhere to Rule 15, as they did not seek the Court's leave for filing the SAC. Defendants emphasize Plaintiffs' failure to seek leave, as Local Rule 15.1[57] sets the day of service (and the start of Defendants' fourteen days to respond) as the day the Court grants leave to amend a pleading.[58] They argue that because the Court never granted leave, the day they consented to the SAC's filing triggers their fourteen days to respond.

Plaintiffs correctly respond that the Court granted all parties leave to file amended pleadings in its Case Management Order by setting a deadline for amended pleadings. Of course, as Defendants note, the Court deferred all deadlines. But Plaintiffs cannot have their cake and eat it. Just as Rule 15 does not limit Plaintiffs' right to file the SAC, it does not limit the time in which Defendants may respond to the SAC. The Court will consider Defendants' second Motion to Dismiss timely filed. Defendants hypothesize that a contrary result "would effectively eliminate Rule 15(a)(2) . . . and would entitle any plaintiff to file any number of amended complaints."[59] The Court appreciates Defendants' concern over federal court

---

[56] Plfs.' Br. in Support of Mot. to Strike, Doc. 57 at 2-3. Rule 15(a)(3) provides that "[u]nless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later."

[57] Local Rule 15.1 requires a party seeking leave to amend to attach the amended pleading to its motion. Therefore, when the Court grants a motion, the amended pleading is immediately filed, triggering the fourteen-day period in which the opposing party must respond.

[58] Defs.' Opp. Br. to Plfs.' Mot. to Strike, Doc. 66 at 4.

[59] Plfs.' Br. in Support of Mot. to Strike, Doc. 57 at 7.

dockets. But the Court will manage. If Plaintiffs—or any party in any case—begin to abuse the Court's deadlines, the Court will swiftly respond.

Plaintiffs next argue that Defendants' second Motion to Dismiss is simply a second bite at the apple. They suggest that, through their second Motion to Dismiss, "Defendants will either re-litigate [their first Motion to Dismiss] or, even worse, tell this Court that its time and effort were for naught because [D]efendants ha[ve] issues [they] want[] to newly address that [they] had failed to put forth before."[60]

As with Defendants' concerns over serial filings, the Court appreciates Plaintiffs' concern but notes that their arguments are unfounded. Discovery can change a case in many ways, obviating some arguments initially made, engendering others not previously considered, and—as has occurred here—reviving some previously rejected. The Court will not deny Defendants an opportunity to defend themselves on a more complete record, even if their arguments are similar to those presented before. The Court's resources are not wasted as long as it reaches a result that is just.[61] Accordingly, Plaintiffs' Motion to Strike is denied.

**B.    The Documents that Constitute Plaintiffs' ERISA Plans**

The parties vehemently disagree over what documents constitute the ERISA plan. They are correct about the importance of this issue, as "when enforcing an

---

[60]   Plfs.' Br. in Supp of Mot. to Strike, Doc. 57 at 7.
[61]   *See* Fed. R. Civ. P. 1.

ERISA plan, '[t]he plan, in short, is at the center.'"[62] "'And once a plan is established,' the administrator of the plan has a duty 'to see that the plan is 'maintained pursuant to a written instrument.'"[63] "This focus on the written terms of the plan is the linchpin of 'a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place.'"[64]

When the Court issued its prior opinion on Defendants' first motion to dismiss, the only relevant plan document in the record was the Certificate. The parties have supplemented the record with the Employer Plans and declarations from the respective administrators of the Employer Plans connecting the Plans to the Certificate.

Plaintiffs still contend that the Certificate is the only document that constitutes their ERISA plan.  Defendants respond that Plaintiffs' ERISA plan includes both the Certificate and the Employer Plans. They argue that the Employer Plans explicitly authorize them to seek reimbursement from Plaintiffs' recoveries, which ultimately undermines all of Plaintiffs' claims. In this dispute—as in most ERISA disputes, it seems—it is undoubtedly true that "[t]he plan, in short, is at the center."[65]

---

[62] *Minerley v. Aetna, Inc.*, 801 F. App'x 861, 864 (3d Cir. 2020) (Chagares, J.) (alterations in original) (quoting *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013)).

[63] *Id.* (quoting *Heimeshoff*, 571 U.S. at 108).

[64] *Heimeshoff*, 571 U.S. at 108 (alterations in original) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)).

[65] *Minerley*, 801 F. App'x at 864 (alterations in original) (quoting *Heimeshoff*, 571 U.S. at 108).

At the outset, the Court notes that Plaintiffs' counsel presented similar arguments to those presented here before the Third Circuit in *Minerley v. Aetna, Inc.* In *Minerley*, in an opinion authored by now-Chief Judge Michael A. Chagares, the Court of Appeals held that "multiple documents may 'collectively form' an employee benefit plan, and those documents need not 'be formally labelled' as comprising the plan."[66] Despite its nonprecedential status, *Minerley*'s conclusion is consistent with those of other Courts of Appeal, as the *Minerley* court itself noted.[67] In holding that multiple documents may make up an ERISA plan, the Third Circuit rejected arguments—made by Plaintiffs' counsel—that an employer must "incorporate into a single document the terms of its employee benefit plan," and/or "label that document" with the same name that appears on the plan's Form 5500.[68]

### 1.    The Employer Plans

As discussed, when the Court issued its prior opinion, the record did not contain the Employer Plans. But these plans were submitted into discovery—

---

[66]    *Id.* (quoting *Horn v. Berdon, Inc. Defined Benefit Pension Plan*, 938 F.2d 125, 127 (9th Cir. 1991)).

[67]    *Id.* (citing *Tetreault v. Reliance Standard Life Ins. Co.*, 769 F.3d 49, 55 (1st Cir. 2014); *Health Cost Controls of Illinois, Inc. v. Washington*, 187 F.3d 703, 712 (7th Cir. 1999)).

[68]    *Id.* A Form 5500 is "a document submitted by an ERISA plan administrator to the Internal Revenue Service, which, in turn, provides copies to the Department of Labor. Form 5500, also referred to as the 'annual report' generally shows financial information concerning an employer-sponsored benefit plan." *Minerley v. Aetna, Inc.*, 2018 WL 4693963, at *5 (D.N.J. Sept. 29, 2018), *aff'd*, 801 F. App'x 861 (citing 29 U.S.C. § 1023). "When an employer-sponsored benefit plan," such as the Employer Plans "contains any benefits 'purchased from and guaranteed by an insurance company,'" such as GHP, "then a Schedule A must be attached for every defined benefit plan." *Id.* (quoting 29 U.S.C. § 1023(e)).

apparently by Plaintiffs when responding to Defendants' discovery requests.[69] Each Employer Plan defines itself as "welfare benefit plan" under ERISA.[70] ERISA, in relevant part, defines a "welfare benefit plan" as

> any plan, fund, or program which was . . . maintained by an employer, . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . .[71]

As welfare benefit plans, the Employer Plans are also "group health plans . . . to the extent that [each] provides medical care . . . to employees or their dependents (as defined under the terms of the plan) directly or through insurance, reimbursement, or otherwise."[72] Each Employer Plan offers coverage through GHP and explicitly incorporates by reference GHP's insurance policy, which is laid out in the Certificate.[73] Therefore, on their face, the Employer Plans are part of Plaintiffs' overall ERISA plans.

---

[69]  *See* Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, Doc. 58 at 9 n.9.

[70]  Mount Airy Wrap Plan, Doc. 76-3 at 4 ("Notwithstanding the number and types of benefits incorporated hereunder, the Plan is, and shall be treated as, a single welfare benefit plan to the extent permitted under ERISA. The Plan is intended to meet all applicable requirements of ERISA"); J.M. Smucker Master Health Plan, Doc. 76-4 at 1 ("The Plan is a welfare benefit plan, as defined in [ERISA], as amended. This document is intended to satisfy the requirements of ERISA . . . .").

[71]  29 U.S.C. § 1002(1).

[72]  29 U.S.C. § 300gg-91,

[73]  Mount Airy Wrap Plan, Doc. 76-3 at 6 ("Each Welfare Program under the Plan is identified in Appendix A which is incorporated into and a part of the Plan. The documents for each Welfare Program are incorporated into this document."), 38 (including in "Appendix A," the "Geisinger Health Plan"); J.M. Smucker Master Health Plan, Doc. 76-4 at 2 ("Programs means each Insured and Self-Insured Program offered to eligible participants hereunder, as specified in Schedule A hereto. All Programs offered hereunder shall collectively constitute one plan for

Plaintiffs advance several arguments as to why the Certificate should govern whether Defendants have any right to reimbursement from their personal injury recoveries. All are without merit.

### 2.      Plaintiffs' Textual Arguments to Exclude the Employer Plans

Plaintiffs first contend that text of the Certificate expressly excludes the Employer Plans. They cite a list of documents in the Certificate that the Certificate explains "define" Plaintiffs' "coverage."[74] The list does not explicitly include the Employer Plans.[75] Therefore, according to Plaintiffs, the Employer Plans have no bearing on their insurance coverage or Defendants' reimbursement rights.

But item six of that list is the "Group Master Policy[,] which is an agreement between the Plan and a Group for coverage arranged by the Plan to individuals eligible to *receive health benefits through their employer*."[76] The Certificate defines "Group Master Policy" as "the agreement between the [Geisinger] Plan and the Group providing for the administration of enrollment, payment of premiums, and other matters pertaining to the provision of health care benefits under the terms of this Certificate for persons who meet the requirements of the Group to participate in

---

ERISA and Code reporting and disclosure requirements."), A-17 (listing under Schedule A, the "Geisinger Health Plan HMO").

[74]   Plfs.' Opp. Br. to Defs.' Mot. to Dismiss, Doc. 62, at 14-15 (citing Doc. 50-1, Group Subscription Certificate at i).

[75]   *See* Doc. 50-1, Group Subscription Certificate at i.

[76]   *Id.* (emphasis added).

the Group's *health benefits plan*."[77] On the same page, "group" is defined as "the *employer* . . . through which the Subscriber is enrolled . . . ."[78] "Subscriber" is defined as "an individual who meets the requirements for eligibility, who has enrolled in the Plan, and for whom payment has actually been received by the [Geisinger] Plan."[79]

Applying those definitions, the Court determines that Plaintiffs are subscribers, who are enrolled in the Geisinger Plan through their respective employers, who are their Groups. The Group Master Policy governs the insurance coverage for all those who are part of an employer's welfare benefits plan. It therefore appears that the Group Master Policy is the insurance policy for a specific employer who contracts with GHP for health insurance coverage for its employees.[80] Plaintiffs obtain their GHP coverage by virtue of their participation in their employers' health benefits plans—which are the Employer Plans.[81] Indeed, it is only through the Employer Plans that Plaintiffs can obtain coverage from GHP, as Defendants' unchallenged declarations explain.[82]

Additionally, the Form 5500s in the record for each plan also identify GHP as the insurance carrier in the Schedule A documents attached to each Form.[83]

---

[77]  *Id.* at 5 (emphasis added).

[78]  *Id.* (emphasis added).

[79]  *Id.* at 9.

[80]  *See Minerley*, 801 F. App'x at 865 (explaining that insurance policies can be a part of an ERISA plan) (citing *Fontaine v. Metro. Life Ins. Co.*, 800 F.3d 883, 888 (7th Cir. 2015); *Frazier v. Life Ins. Co. of N. Am.*, 725 F.3d 560, 566 (6th Cir. 2013)).

[81]  *See* Decl. of Carol Benginia, Doc. 58-2 ¶ 1; Decl. of Melissa Terry, Doc. 58-3 ¶ 1.

[82]  *See* Decl. of Carol Benginia, Doc. 58-2 ¶ 1; Decl. of Melissa Terry, Doc. 58-3 ¶ 1.

[83]  Doc. 58-2 at 5 (Mount Airy Form 5500), 9 (J.M. Smucker Form 5500). The Form 5500s are also publicly available documents.

Apparently, Plaintiffs also produced the Employer Plans and corresponding Form 5500s in response to production requests from Defendants.[84] And Plaintiffs do not suggest that these documents were unavailable to them at any point before or during this litigation.

Plaintiffs next argue that the Certificate and the Employer Plans are inconsistent. They rely on language in the Employer Plans that provides that the Certificate controls if there are any inconsistencies to argue that the Certificate governs this litigation.[85]

The quoted language in the Mount Airy Wrap Plan, found in Article VI, Claims and Subrogation, provides that to the extent that the claims procedure contained in the Wrap Plan "is inconsistent with the claims procedure contained in the [Certificate,] the claims procedure in [the Certificate] shall supersede this procedure."[86] The Mount Airy Wrap Plan also states that "any benefits to be provided under [the Certificate] shall be the sole responsibility of the [GHP], and [Mount Airy] . . . shall have no responsibility for the payment of such benefits."[87]

As for the J.M. Smucker Master Health Plan, it states that "[a]ll other terms and conditions of the benefits provided under [the Certificate] are determined by [GHP] in accordance with its rules without other application of this Plan," and that

---

[84]  *See* Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, Doc. 58 at 9 n.9.
[85]  *See* Plfs.' Opp. Br. to Defs.' Mot. to Dismiss, Doc. 62 at 18-20.
[86]  Mount Airy Wrap Plan, Doc. 76-3 at 10.
[87]  *Id.* at 7-8.

"[i]f there is any inconsistency between the terms of this Plan and the terms of the [Certificate], the terms of the [Certificate] shall control."[88] Like the language above, the J.M. Smucker Master Health Plan also states that "[GHP] benefits are paid solely by [GHP] in accordance with the [Certificate]."[89]

There is no inconsistency between the Employer Plans and the Certificate with respect to reimbursement rights. The fact that the Certificate only authorizes subrogation against third parties and the Employer Plans authorize subrogation *and* reimbursement is not an inconsistency. The Employer Plans simply provide Defendants' more rights than the Certificate does. Likewise, no inconsistency arises because both Employer Plans abrogate the "make-whole" doctrine and, in the J.M. Smucker Master Health Plan's case, also the "common fund" doctrine, whereas the Certificate does not mention them. The Court accordingly concludes that both Employer Plans can be read in harmony with the Certificate as parts of Plaintiffs' overall ERISA plan.

### 3. Plaintiffs' Other Arguments to Exclude the Employer Plans

Plaintiffs further contend that Defendants' actions require the Court to consider the Group Subscription Certificate the "operative document."[90] They point to the fact that Defendants "provided the Certificate" to Plaintiffs, "cited to the Certificate as the basis for their authority for reimbursement," "affirmed in writing

---

[88] J.M. Smucker Master Health Plan, Doc. 76-4 at 2.
[89] *Id.* at 4.
[90] Plfs.' Opp. Br., Doc. 62 at 11.

that the Certificate was the only support of [their] claim of reimbursement," and "filed [the first] Motion to Dismiss citing the Certificate as its authority for reimbursement."[91]

Specifically, Plaintiffs cite Defendants' Answer to their earlier complaint, suggesting it should now bind Defendants as a judicial admission.[92] But Plaintiffs filed the SAC, which is now the operative complaint.[93] Defendants have not answered the SAC and have instead exercised their right to move for dismissal under Rule 12(b)(6), which the Court converted into a summary judgment motion. The Court will not hold Defendants to an inoperative filing.[94]

Plaintiffs' next argument relies on ERISA's text and the United States Department of Labor's ("DOL") federal regulations interpreting ERISA. Specifically, Plaintiffs argue that Defendants have violated 29 U.S.C. § 1133 by failing to follow the procedures outlined in 29 C.F.R. § 2560.503-1. Section 1133 provides that providers of employee benefit plans "shall provide adequate notice in

---

[91] *Id.*

[92] *Id.* at 13 n.2. "Judicial admissions are 'admissions in pleadings, stipulations or the like which do not have to be proven in the same litigation.'" *Bedrosian v. U.S. Dept. of Treas., IRS*, 42 F.4th 174, 184 (3d Cir. 2022) (quoting *Anderson v. Commissioner*, 698 F.3d 160, 167 (3d Cir. 2012)).

[93] Doc. 50.

[94] And even if it did, Defendants do not contradict their now inoperative answer. Plaintiffs argue that "Defendants repeatedly admitted in [their] answer that Geisinger paid benefits pursuant to the terms of the Geisinger Group Subscription Certificate *and not through the terms of their respective wrap plan documents*." Plfs.' Br. in Opp. to Defs.' Mot. to Dismiss, Doc. 62 at 13 n.2 (emphasis added). Yet Defendant's Answer does not reference the Employer Plans at all. *See* Ans., Doc. 21. This is likely because the Employer Plans were not yet in the record when Defendants filed their first Motion to Dismiss.

21

writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." Title 29 C.F.R. § 2560.503-1 applies 29 U.S.C. § 1133 by "set[ting] forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries." Section 2560.503-1(b) explains that "[e]very employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations (hereinafter collectively referred to as claims procedures)."

"[A] claim for benefits is a request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit claims."[95] Plaintiffs filed claims with GHP for their injuries and received compensation, which are ostensibly claims for benefits under the DOL's regulations.[96] An "Adverse benefit determination" is

> [a] denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan, and including, with respect to group health plans, a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit resulting from the application of any utilization review, as well as a failure to cover an item or service for which benefits are otherwise provided because it is

---

[95] 29 C.F.R. § 2560.503-1(e).
[96] *See* SAC, Doc. 50 ¶¶ 17-19, 23-25.

determined to be experimental or investigational or not medically necessary or appropriate.[97]

It is not entirely clear whether Defendants' reimbursement claim is an adverse benefit determination. Defendants did not deny Plaintiffs compensation for their injuries, but Defendants seek to, in effect, "reduce" Plaintiffs' compensation by way of reimbursement. Yet that presupposes that Plaintiffs were entitled to the full amount of their claim, which is not the case given the clear reimbursement provisions in the Employer Plans discussed above.

But assuming Defendants' claims for reimbursement are "adverse benefit determinations," Defendants had a duty to notify Plaintiffs of the determination and "set forth, in a manner calculated to be understood by" Plaintiffs,

    i)      The specific reason or reasons for the adverse determination;

    ii)     Reference to the specific plan provisions on which the determination is based;

    iii)   A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

    iv)   A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

    v)    In the case of an adverse benefit determination by a group health plan—

---

[97]  29 C.F.R. § 2560.503-1(m)(4)(i).

A)   If an internal . . . criterion was relied upon in making the adverse determination, either . . . criterion; or a statement that such a . . . criterion was relied upon in making the adverse determination and that a copy of such . . . criterion will be provided free of charge to the claimant upon request.[98]

As Plaintiffs were covered under a group health plan, Defendants were required to provide the specific criteria upon which they based their reimbursement claim. Defendants did just that. They identified the document they then thought substantiated their reimbursement demands.[99] It does not appear to be a violation of the regulation to be wrong about the criterion upon which a reduction in compensation is based. Even if it were, the only remedy § 2560.503 offers is waiver of the administrative exhaustion requirement, allowing the aggrieved claimant to file a civil action pursuant to ERISA § 502(a) without going through the administrative appeal process—which is exactly what happened in this case. To date, Defendants have not argued that Plaintiffs' claims should be dismissed for failure to exhaust the administrative remedies the ERISA plan provides.

Even so, Plaintiffs cite *Mizra v. Insurance Administrator of America, Inc.*, in support of their argument.[100] In *Mizra*, an insurer denied an insured individual's claim for medical benefits.[101] The individual assigned her rights to recovery to her

---

[98]   29 C.F.R. § 2560.503-1(g).
[99]   *See* Email Exchange between Jeremy D. Puglia and Diane Virostek, Doc. 50-2 at 1-2. In those emails, Plaintiffs requested documents supporting the lien Defendants obtained on their personal injury recoveries. Defendants sent the Certificate in response. *Id.* at 3-87.
[100]  800 F.3d 129 (3d Cir. 2015).
[101]  *Id.* at 131.

physician, who became the named plaintiff.[102] The individual then sought further

treatment and went through the same assignment of rights with her next provider.[103]

Both providers retained the same counsel.[104] During a phone call between the second

provider and the insurer, the insurer explained that there was a one-year period in

which to file a civil action following the final denial of an insured's administrative

appeal.[105] The first provider—through the same counsel the second provider

retained—filed a civil action under ERISA outside of the one-year limitations

period, which the district court dismissed as time-barred.[106]

   Although the parties argued for and against equitable tolling and over whether

counsel's notice of the limitations period while it was representing the second

provider could be imputed to the first, the Third Circuit took a different path. The

court concluded that the insurer violated § 2560.503(g)(1)(iv), which required the

insurer to inform the insured of her right to bring a civil action.[107]

   In response, the insurer pointed to the ERISA plan, which contained the

limitation provision, arguing that the provision's inclusion in the plan meant that the

plaintiff was effectively always on notice of it.[108] The Third Circuit rejected that

argument, noting any insurer "could almost invariably argue that the contractual

---

[102] *Id.*
[103] *Id.*
[104] *Id.*
[105] *Id.* at 132.
[106] *Id.*
[107] *Id.* at 134.
[108] *Id.* at 137.

deadline was in the plan documents and that claimants are charged with knowledge of this fact."[109] The court explained that such an "approach would render hollow the important disclosure function of § 2560.503-1(g)(1)(iv)," especially given that "claimants are much more likely to read benefit denial letters than the voluminous descriptions of their entire ERISA plans."[110]

Plaintiffs seek to apply the *Mizra*'s reasoning here, equating Defendants' failure to identify the Employer Plans as their basis for reimbursement with the insurer in *Mizra*'s failure to inform the insured of her one-year limitations period.[111] As Plaintiffs argue, because Defendants violated federal regulations in failing to cite the Employer Plans as the basis for their right to reimbursement, the Court should exclude the Employer Plans from its consideration.

But *Mizra* is readily distinguishable. First, the insurer in *Mizra* facially violated § 2560.503-1(g). As explained above, it is far from clear that Defendants have done the same. Second, the insurer's violation in *Mizra* would bar the insured's claim, leaving her with no recovery. Put differently, had the *Mizra* court accepted the insurer's argument, an insurer's violation of federal law would redound to its benefit. By contrast, Defendants' alleged violation will not keep Plaintiffs from bringing a civil action. If anything, it likely hastened that process to Defendants' detriment, as they may not raise administrative exhaustion as a defense to Plaintiffs'

---

[109] *Id.*
[110] *Id.*
[111] Plfs.' Sur Reply, Doc. 76 at 3-4.

26

claims if they indeed violated § 2650.503-1. Therefore, the Court concludes that Plaintiffs' overall ERISA plan contains both the Certificate and the Employer Plans.[112]

### C.    Plaintiffs' Claims

Having established the documents that constitute Plaintiffs' ERISA plans, the Court now turns to their ERISA claims. At issue here are two § 502(a)(1) claims for benefits due under Plaintiffs' ERISA plans and several § 502(a)(3) claims alleging Defendants violated their fiduciary duties. As the Court previously explained, "[t]he primary distinction between § 502(a)(1) and § 502(a)(3) is the remedy authorized."[113] "[W]hile both permit parties to challenge plan violations, § 502(a)(1) allows only for the payment of benefits due,"[114] whereas "§ 502(a)(3) allows only for a remedy "typically available in equity."[115]

### 1.    ERISA § 502(a)(1)(B) Claim (Counts I and VII)

In Counts I and VII, Freitas and McWilliams allege ERISA § 502(a)(1)(B) claims, respectively seeking to recover the sums with which they reimbursed Defendants and a declaratory judgment that Defendants are not entitled to

---

[112] The Court does not suggest that the Employer Plans and Certificate are the only two documents in the ERISA plan to the exclusion of other documents. But as will become clear, these documents are sufficient for the Court to dispose of the motions at issue.

[113] *Id.* at 295.

[114] *Id.* (citing *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011)).

[115] *Id.* (quoting *Knudson*, 534 U.S. at 210).

reimbursement. Defendants seek summary judgment dismissing Count I and seek to strike the demands for injunctive relief on Count VII.

Under ERISA § 502(a)(1), an aggrieved plan participant may bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms or to clarify his rights to future benefits under the terms of the plan." Suits under § 502(a)(1)(B) "focus[] almost exclusively on plan interpretation."[116] "[U]nless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the Court reviews the plan language *de novo* to determine a party's rights under the plan.[117]

Therefore, McWilliams can only demand relief offered by the plan through Count VII. And as was discussed further above, McWilliams' ERISA plan includes the J.M. Smucker Master Health Plan and therefore grants Defendants an explicit right to reimbursement. Accordingly, Count VII cannot seek as relief a declaratory judgment stating that Defendants do not have reimbursement rights. Nor can it seek an injunction barring Defendants from demanding reimbursement, for the same reasons.

As for Count I, on which Defendants move for summary judgment, they argue—and the Court agrees—that the Mount Airy Wrap Plan explicitly reserves

---

[116] *Freitas*, 542 F. Supp at 295.
[117] *Id.* at 299 (citing *Viera v. Life Ins. Co. of N.A.*, 642 F.3d 407, 413 (3d Cir. 2011)).

the right to seek reimbursement from Freitas' personal injury recovery, abrogates the "make-whole" doctrine, and authorizes a lien against Freitas' recovery.[118] But the Mount Airy Wrap Plan does not abrogate the "common fund" doctrine, as Defendants acknowledge.[119]

The "common fund" doctrine is a "well-recognized exception to the general principle that an attorney must look to his or her own client for payment of attorney's fees."[120] As interpreted by the Supreme Court of the United States, the doctrine recognizes "that a litigant or a lawyer who recovers a common fund for the benefit

---

[118] Mount Airy Wrap Plan, Doc. 76-3 at 18 (explaining that the plan has the right to "[r]eimbursement or the amount of any and all benefits paid to or on behalf of the Covered Individual by reason of Injury, Illness or other loss with respect to which the Plan has a right to Subrogation pursuant to paragraph (i) above from any Award arising out of such Injury, Illness or other loss."); *id.* at 17 (defining "award" as any amount paid to or on behalf of a Covered Individual, from a Third Party with respect to a Covered Individual's Illness, Injury or other loss regardless of whether such amount is received as a result of a judgment of a court of competent jurisdiction, settlement, compromise or otherwise and regardless of whether such amount is categorized as punitive, compensatory, reimbursement for medical expenses, or otherwise."); *id.* at 18 ("The Plan does not recognize the 'make whole' rule and a Covered Individual may not be whole after the Plan's Recovery Rights are satisfied."); J.M. Smucker Master Health Plan, Doc. 76-4 at 17 ("Claimant agrees to reimburse or repay the Plan Reimbursable Expenses from any and all Proceeds related to an injury, illness, or other condition for which the Plan has paid benefits. . . . The Plan shall also have a first priority equitable lien against any rights the Claimant may have to recover Proceeds from a Third Party."); *id.* at 16 (defining "proceeds" as "any money or other property that the Claimant recovers from a Third Party, whether in tort, contract, or otherwise; and whether by judgment, lawsuit, settlement (either before or after any determination of liability), mediation, arbitration or otherwise"); *id.* at 18 ("[T]he rights of subrogation and reimbursement may be exercised against the first dollars received (whether a full or partial recovery) or claimed regardless of whether the Claimant has been completely compensated or made whole for his loss.").

[119] Defs.' Br. in Supp. of Mot. to Dismiss, Doc. 58 at 20 n.20. By contrast, the J.M. Smucker Master Health Plan explicitly abrogates the "common-fund" doctrine. J.M. Smucker Master Health Plan, Doc. 76-4 at 18 ("The Claimant shall not deduct any litigation expenses from the amount reimbursed to the Plan; any so-called . . . 'Common Fund Doctrine' . . . shall not defeat this right, and the Plan is not required to participate in or pay litigation expenses.").

[120] *Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000).

of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."[121] "Consequently, [the doctrine] shall apply to limit a plan's right to reimbursement where not explicitly abrogated by the plan's text."[122] Attorney's fees under the doctrine have "frequently . . . been awarded using the percentage-of-recovery method, which awards a fee based on a percentage of plaintiffs' recovery."[123] The Court has discretion over the amount of any awarded common fund fees or whether to grant them at all.[124]

Defendants submitted a declaration from Socrates' Senior Attorney, who explains that Freitas sought and received a twenty-five percent reduction in the lien against her recovery.[125] She does not appear to dispute that the lien was reduced. Therefore, in its discretion, the Court will choose not to apply the common fund doctrine. Accordingly, there are no disputes of material fact that Defendants' have an express right to reimbursement under Freitas' ERISA plan and summary judgment on Count I is appropriate.[126]

---

[121] *Id.* (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

[122] *Freitas*, 542 F. Supp 3d at 309 (citing *McCutchen*, 569 U.S. at 101-02).

[123] *Brytus*, 203 F.3d at 243 (citing *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283, 333 (3d Cir. 1998)).

[124] *See id.* at 244 (citing *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166-67; *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166-67 (1939)).

[125] Decl. of John Fedorko, Doc. 58-1 ¶¶ 2-3.

[126] Count VII seeks the same relief on the same theory for Plaintiff McWilliams, but Defendants have not moved to dismiss Count VII insofar as it seeks monetary damages for benefits due under the plan. Defs.' Motion to Dismiss, Doc. 54.

## 2. ERISA § 502(a)(3) Claims (Counts II through VI and VIII through XII)

Plaintiffs allege Defendants violated several of their fiduciary duties in demanding reimbursement. "ERISA § 404 provides that every fiduciary 'shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries.'"[127] Some of these duties are mandated by ERISA, such as the "duty to act 'in accordance with the documents and instruments governing the plan.'"[128] Courts have imposed others as matters of federal common law.[129]

However, a plan beneficiary "does not establish a violation of fiduciary duty simply by showing that the administrator did not follow the terms of the plan."[130] "If such action is undertaken pursuant to a good faith, albeit erroneous, interpretation, ERISA's fiduciary provisions are not violated."[131] Instead, "[t]o establish liability," am aggrieved beneficiary must prove "willful or bad faith conduct" and set forth supportive factual allegations in her complaint.[132]

---

[127] *Freitas*, 542 F. Supp at 309 (quoting 29 U.S.C. § 1104(a)(1)(A)).

[128] *Id.*

[129] *See id.* at 309-10 (citing cases in which courts have inferred fiduciary duties).

[130] *Burke v. Latrobe Steel Co.*, 775 F.2d 88, 91 (3d Cir. 1985).

[131] *Id.*; *see also Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 470 (7th Cir. 2010) ("Section 1104(a)(1) is not a guarantee of accuracy in all communications with the insured.").

[132] *Id.* (citing *Challenger v. Local Union No. 1*, 619 F.2d 645 (7th Cir. 1980)).

All Plaintiffs' fiduciary-duty claims share a common factual basis—Defendants' reimbursement demands. In Counts II and VIII, Plaintiffs allege Defendants violated their duties of loyalty by acting in their own interest when illegally seeking reimbursement and not reducing their reimbursement demands to accommodate Plaintiffs' costs and attorneys' fees incurred in litigating this matter.[133] In Counts III and IX, Plaintiffs allege Defendants misinformed Plaintiffs about their rights to reimbursement in violation of their duties to disclose accurate information about the ERISA plan.[134] In Counts IV and X, Plaintiffs allege that Defendants violated their duties to act in accordance with their ERISA plans by illegally demanding reimbursement.[135] In Counts V and XI, Plaintiffs allege that Defendants violated their duties to act in accordance with federal common law, namely the "make-whole" and "common fund" doctrines.[136] And in Counts VI and XII, Plaintiffs allege that Defendants violated their duties to establish reasonable claims procedures required by 29 C.F.R. § 2560.503-1 with respect to the reimbursement demands by requiring more than two levels of appeal, failing to state that Defendants waive the right to raise an exhaustion defense should Plaintiffs elect not to take a voluntary third appeal, and failing to notify Plaintiffs of Defendants' adverse benefit

---

[133] SAC, Doc. 50 ¶¶ 97-108, 236-47.
[134] *Id.* ¶¶ 123-28, 262-67.
[135] *Id.* ¶¶ 138-41, 277-80.
[136] *Id.* ¶¶ 150-53, 289-92.

determinations as the regulation requires.[137] Defendants move for summary

judgment on all the above claims.[138]

As to Counts II and VIII, which allege a duty of loyalty violation, Plaintiffs

advance essentially the same argument they did before the Third Circuit in

*Minerley*—that "[D]efendants violated ERISA by enforcing the plain terms of the

reimbursement requirement in the [Employer Plans]," which are "ERISA plan

document[s]."[139] That argument finds no more purchase here than it did before the

Third Circuit.

In Counts III and IX, Plaintiffs allege Defendants misrepresented to them or

misled them to believe that the Certificate legally entitled Defendants to

reimbursement. But contrary to Plaintiffs' allegations, ERISA does not impose upon

Defendants "a duty to [d]isclose [c]omplete and [a]ccurate [i]nformation and to

avoid misrepresentations."[140] It imposes on them a duty to avoid willful or deliberate

misrepresentations. Put differently, Defendants "do not breach their fiduciary duties

by interpreting the plan in good faith, even if their interpretation is later determined

---

[137] *Id.* ¶¶ 195, 335. In Counts VI and XII, Plaintiffs also repeat some of the allegations contained in other Counts, recasting them as failures to establish reasonable claims procedures.

[138] Defendants address some of Plaintiffs' fiduciary-duty claims on the merits but renew their argument that all fiduciary-duty claims are foreclosed because they seek the same relief as Plaintiffs' § 502(a)(1) claims. *See* Defs.' Br. in Supp. of Mot. to Dismiss, Doc. 58 at 25-27; *see also Freitas*, 542 F. Supp 3d at 310-12 (rejecting that argument at the motion to dismiss stage). As the Court will address and dismiss each of Plaintiffs' claims on the merits, it need not reach Defendants' renewed argument.

[139] *See* 801 F. App'x at 866-67 (addressing the plaintiff's "claim[] that the defendants breached a duty of loyalty owed to him by seeking reimbursement, contrary to his interest as a beneficiary of and participant in [the employer's] employee benefit plan.").

[140] SAC, Doc. 50 ¶¶ 117, 256.

to be incorrect."[141] It is true that the Court found Defendants' argument based on the subrogation language in the Certificate to be particularly unavailing in its prior opinion. Even so, it was still a good faith—albeit incorrect—interpretation of that language. The Court recognizes that willfulness is generally a question for the jury, but the SAC does not allege any conduct that gives rise to the inference of willfulness. Therefore, Counts III and IX do not survive summary judgment.

Equally unavailing are Counts IV and X, which allege Defendants violated their duties to act in accordance with the plan, and Counts V and XI, which allege Defendants violated their duties to follow federal common law. Defendants acted in accordance with the reimbursement provisions in the Employer Plans and had no duty to apply the make-whole doctrine, which was explicitly abrogated in both Employer Plans. As for the common-fund doctrine, the Court has already determined Defendants' voluntary reduction in the lien amounts obviates any need for the doctrine's application and the J.M. Smucker Master Health Plan explicitly abrogates the doctrine. Those Counts also do not survive summary judgment.

### a.   Counts VI and XII (Failure to Establish Reasonable Claims Procedures)

Counts VI and XII allege that Defendants failed to comply with the requirements for reasonable claims procedures set in 29 C.F.R. § 2560.503-1. Specifically, Plaintiffs argue Defendants' claims procedures (1) require them to file

---

[141] *Challenger*, 619 F.2d at 649.

a third appeal of an adverse benefit determination,[142] (2) fail to waive Defendants' right to assert an administrative exhaustion defense if a claimant chooses not to file the third appeal,[143] and (3) did not result in the required notice of the adverse benefit determination[144].

Defendants contend that the Court's prior opinion cabined the relief Plaintiffs could seek to a "remand to the plan administrator so the claimant gets the benefit of a full and fair review."[145] As Plaintiffs continue to seek compensatory, declaratory, and injunctive relief on Counts VI and XII, Defendants seek summary judgment dismissing those Counts.

As for Plaintiffs' first argument regarding the third level of appeal, Defendants argue—and the Court agrees—that the third level of appeal was an optional external appeal to state authorities required by 29 C.F.R. § 2590.715-2719(c).[146] That is not a violation of 29 C.F.R. § 2560.503-1(c)(2),

---

[142] SAC, Doc. 50 ¶ 166, 170-72.

[143] *Id.* ¶¶ 167-68, 173.

[144] *Id.* ¶¶ 183-88. Under Counts VI and XII, Plaintiffs also include allegations that raise the issues addressed by other Counts, such as the federal common law doctrines and the plan language itself. The Court explained above why Defendants did not violate their fiduciary duties with respect to those Counts.

[145] Defs.' Br. in Supp. of Mot. to Dismiss, Doc. 58 at 28 (quoting *Freitas*, 542 F. Supp 3d at 314). The Court will clarify its earlier statement. Remand to the plan administrator is not the only possible remedy for a violation of 29 C.F.R. § 2560.503-1. Plaintiffs' request for a declaration that they are not required to exhaust administrative remedies is consistent with the regulatory language. *See* 29 C.F.R. § 2560.503-1(l)(1) ("[I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under [ERISA § 502]."). But as the Court explains below, Defendants' actions do not appear to violate the regulation, much less willfully so.

[146] *See* Mount Airy Wrap Plan, Doc. 76-3 at 14 (citing 29 C.F.R. § 2590.715-2719); GHP Group Subscription Certificate, Doc. 50-1 at 53.

which prohibits plans from "*requir*[*ing*] a claimant to file more than two appeals of an adverse benefit determination prior to bringing a civil action."[147] Plaintiffs fail to explain how the permissive language in the documents requires them to undergo a third appeal.

Moving on to Plaintiffs' second and third points, the Court addressed the merits of their argument that Defendants violated 29 C.F.R. § 2560.503-1 by supporting their reimbursement demands with the Certificate above. It is far from clear whether Defendants violated those regulations. But it is clear that Defendants did not willfully violate them. Defendants' actions demonstrate that they did not view their reimbursement demands as adverse benefit determinations. There is no evidence before the Court suggesting that their decision was in bad faith. Therefore, Counts VI and XII do not survive summary judgment.

### 3. Plaintiffs' Remaining Demands for Injunctive and Declaratory Relief

The only remaining claim is Count VII, in which McWilliams alleges a § 502(a)(1) cause of action against Defendants and demands monetary, declaratory, and injunctive relief. Defendants do not seek dismissal of Count VII, only that the Court strike any demands for relief other than benefits due under McWilliams' ERISA plan. Even though only Count VII remains, the Court's analysis here would apply to all of Plaintiffs' demands for injunctive and declaratory relief had the

---

[147]  29 C.F.R. § 2560.503-1(c)(2) (emphasis added).

relevant claims survived summary judgment. Defendants argue Plaintiffs lack standing to demand any injunctive or declaratory relief because neither Plaintiff is insured by GHP at present and Plaintiffs have already reimbursed Defendants.[148]

"Article III of the United States Constitution limits the power of the federal judiciary to 'cases' and 'controversies.'"[149] "The plaintiff, 'as the party invoking federal jurisdiction,' bears the burden of establishing the minimal requirements of Article III standing: '(1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"[150] "When, as in this case, prospective relief is sought, the plaintiff must show that he is "likely to suffer future injury" from the defendant's conduct."[151]

As the Court has converted Defendant's Motion to Dismiss to one for summary judgment, it may consider facts outside the pleadings.[152] The unchallenged declarations from the administrators of both Employer Plans establish that Mount Airy and the J.M. Smucker Company no longer contract with GHP for health insurance coverage of Mount Airy or Big Heart employees.[153] Defendants additionally submitted a declaration from GHP's Senior Director of Client Services also explaining that both Mount Airy and the J.M. Smucker Company have

---

[148] Defs.' Br. in Supp. of Mot. to Dismiss, Doc. 58 at 24-25.
[149] *Cottrell v. Alcon Labs.*, 874 F.3d 154, 161-62 (3d Cir. 2017) (quoting U.S. Const. art. III).
[150] *Id.* at 162 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016)).
[151] *McNair v. Synapse Group Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983))
[152] *See* Doc. 77.
[153] Decl. of Carol Benginia, Doc. 58-2 ¶ 3; Decl. of Melissa Terry, Doc. 58-3 ¶ 3.

discontinued their relationships with GHP.[154] Plaintiffs do not challenge the facts in these declarations.

Plaintiffs respond that they have standing because Defendants still control the disputed funds. But Defendants do not claim that Plaintiffs lack standing to seek monetary relief; they limit their argument to Plaintiffs' demands for injunctive and declaratory relief.

Plaintiffs next argue that they are still subject to Defendants' reimbursement demands, relying on language in the SAC that refers to continuing demands for reimbursement.[155] Yet Plaintiffs have provided no evidence of these continuing demands. The declaration from Socrates' Senior Attorney, on the other hand, strongly, but not conclusively, indicates that there are no continuing demands for reimbursement.[156] Nevertheless, Plaintiffs cannot circumvent the fact that they are no longer insured by GHP, and therefore are not "'likely to suffer future injury' from [Defendants'] conduct."[157] Therefore, summary judgment is appropriate on all of Plaintiffs' demands for injunctive relief.

### D.    Plaintiffs' Motion to Compel

Plaintiffs previously requested and now seek to compel the production of documents that would essentially allow them to build their proposed class for their

---

[154] Decl. of Stacy Kreller, Doc 58-4 ¶¶ 2-3.

[155] Plfs.' Opp. Br. to Defs.' Mot. to Dismiss, Doc. 62 at 22-23 (quoting SAC, Doc. 50 ¶¶ 38-42).

[156] *See* Decl. of John Fedorko, Doc. 58-1 ¶¶ 2-3 (explaining that Plaintiffs have paid reduced amounts to satisfy the reimbursement demands with the consent of Defendants).

[157] *McNair*, 672 F.3d at 223 (quoting *Lyons*, 461 U.S. at 104).

class action allegations in the SAC and support their efforts to eventually certify a class of GHP beneficiaries.[158]

Defendants objected to Plaintiffs' requests, generally asserting that the requests were ambiguous in their failure to define "plans"; irrelevant or overbroad in that they sought information regarding beneficiaries that did not work at Mount Airy or Big Heart, were not involved in any claim recovery, or had non-ERISA plans; improperly not temporally limited as to be unduly burdensome; and invasive of the privacy of beneficiaries.[159] As to requests for communications between Defendants and other individuals involved in plan administration, Defendants also objected that Plaintiffs' request sought privileged materials.[160] However, Defendants produced redacted documents relevant to claim recoveries from Mount Airy and Big Heart employees, their spouses, or their dependents.[161]

Plaintiffs' arguments in support of their motion largely rest on the premise that the Certificate is the only ERISA plan document and lacks a reimbursement

---

[158] *See* Plfs.' Mot. to Compel Discovery, Doc. 36 ¶ 11 (identifying document requests 33-40 as the ones at issue); Plfs.' Request for Production of Docs., Doc. 36-1 at 8 (demanding for production a "list" of all individuals with personal injury recoveries whom Defendants asserted a reimbursement request against, copies of the lien documents sent to those individuals, a list of the individuals who Defendants recovered funds from, all communications between Defendants and their "administrators, trustees, or other fiduciaries, and any attorney assisting in the administration of the Plan relevant to collection of reimbursements" save any communications made in anticipation of the instant litigation, "copies of all policies covering different beneficiaries of the Plan with the same subrogation provisions," and "[a] copy of all plans Defendant [GHP] has issued or insured from 2013 through the present that contain . . . similar subrogation terms").

[159] *See* Defs' Responses to Plfs.' Doc. Requests, Doc. 36-2 at 1-4, 19-25.

[160] *Id.* at 22.

[161] *Id.* at 20-23.

clause.[162] Plaintiffs also repeat the same *Minerley* argument discussed above.[163] Defendants respond that Plaintiffs' ERISA plans, like any employer plan, are specific to an individual's employer and therefore discovery should be limited to the two employers at issue in this matter.[164]

The Court notes that Plaintiffs' only surviving claim is Count VII. However, nearly every count in the SAC contains similar allegations and is based on the same facts. Therefore, whether all or only one of the SAC's Counts survived summary judgment is immaterial to the Court's analysis of Plaintiffs' Motion to Compel.

Accordingly, the Court's analysis of the Employer Plans is dispositive of the issues raised in Plaintiffs' Motion to Compel. The two Employer Plans are absolutely part of the overall ERISA plans, despite Plaintiffs' numerous arguments to the contrary. From the two plans alone, the Court can readily see that both Plaintiffs' ERISA plans contain different language and provisions. The Court's discussion of the common fund doctrine—abrogated by one Employer Plan but not by the other—is instructive.

Therefore, the Court concludes that Plaintiffs' demands for information beyond the two employers at issue here—Mount Airy and the J.M. Smucker

---

[162] *See* Plfs' Br. in Supp. of Mot. to Compel Discovery, Doc. 37 at 3-6

[163] *See id.* at 19-20. Defendants also argue that Plaintiffs seek "lists" that do not exist and seek claim demand letters for claims that were not paid, which are not relevant to the issues in this case, where the reimbursements were actually paid. *See id.* at 21-23.

[164] Defs' Opp. Br. to Plfs' Mot. to Compel Discovery, Doc. 40 at 17-18.

Company—are not relevant under Rule 26(b)(1) and accordingly denies Plaintiffs'

Motion to Compel Discovery.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is

granted and Plaintiffs' Motion to Strike and Motion to Compel Discovery are denied.

An appropriate Order follows.


BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge