IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAYLEE MCWILLIAMS, individually and on behalf of all others similarly situated, | No. 4:20-CV-01236 |
| | (Chief Judge Brann) |
| Plaintiff, | |
| v. | |
| GEISINGER HEALTH PLAN, and SOCRATES, INC., | |
| Defendants. | |

## MEMORANDUM OPINION

### FEBRUARY 8, 2023

Plaintiff Kaylee McWilliams sues Defendants, Geisinger Health Plan ("GHP") and its subrogation agent, Socrates, Inc., alleging one cause of action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. Defendants now move for summary judgment on McWilliams' claim. As both parties recognize, McWilliams' claim is virtually identical to a claim that the Court previously rejected with respect to another plaintiff in this litigation. Therefore, the Court will grant Defendants' motion.

I.  **BACKGROUND**

   A.  **Underlying Facts**[1]

McWilliams was injured by a third-party tortfeasor.[2] She sought and received compensation from GHP for her injuries through her father's insurance plan.[3] McWilliams was insured through her father's employer, Big Heart Pet Brands, a subsidiary of the J.M. Smucker Company.[4] The J.M. Smucker Company had an employee welfare benefit plan—termed the J.M. Smucker Master Health Plan—that included a health insurance plan from GHP.[5] GHP set out its coverage of J.M. Smucker employees and their dependents—including McWilliams—through a document known as the Group Subscription Certificate (the "Certificate").[6]

Eventually, McWilliams sued and later settled with the tortfeasor who injured her.[7] After the settlement, Defendants demanded that McWilliams reimburse them for the payments they made pursuant to her insurance policy, relying on a subrogation clause in the Certificate that did not explicitly set out a right to reimbursement.[8] They also obtained a lien against McWilliams' personal injury

---

[1]  The underlying facts are more fully set forth in the Court's two prior opinions in this matter. *See Freitas v. Geisinger Health Plan*, 542 F. Supp. 3d 283 (M.D. Pa. 2021); *Freitas v. Geisinger Health Plan*, ___ F. Supp. 3d ___, 2022 WL 16964006 (M.D. Pa. Nov. 16, 2022). Accordingly, the Court will briefly recount the facts relevant to the instant motion.
[2]  *Freitas*, 542 F. Supp. 3d at 292.
[3]  *Id.*
[4]  Decl. of Melissa Terry, Doc. 58-3 at ¶ 2.
[5]  *Id.* ¶ 1; J.M. Smucker Master Health Plan, Doc. 76-4 at 46 (pg. A-17).
[6]  *See* Second Amended Complaint ("SAC"), Doc. 50 ¶¶ 7, 33, 184; GHP Group Subscription Certificate, Doc. 50-1.
[7]  *Freitas*, 542 F. Supp. 3d at 292.
[8]  *Id.* at 291-92.

2

recovery.[9] McWilliams later negotiated with Socrates to reduce the lien amount by thirty percent.[10] She then paid Defendants the reduced sum, under protest.[11]

### B. Procedural History

McWilliams' Second Amended Complaint ("SAC") alleged several ERISA causes of action.[12] Defendants previously moved to dismiss all claims in the SAC save McWilliams' demand that they return the money she reimbursed them (Count VII).[13] The Court converted that motion into one for summary judgment and granted it, dismissing all claims except McWilliams' demand for monetary damages contained in Count VII.[14] Defendants now move for summary judgment on Count VII.[15] Their motion has been fully briefed and is ripe for disposition.

## II. LAW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." As the Supreme Court of the United States expressed in *Celotex Corp. v. Catrett*, summary

---

[9] Decl. of John Fedorko, Doc. 58-1 ¶ 3.
[10] *Id.*
[11] *Freitas*, 542 F. Supp. 3d at 292 n.26
[12] SAC, Doc. 50.
[13] MTD, Doc. 54. McWilliams brings Count VII under ERISA § 502(a)(1)(B), which allows an aggrieved plan participant to bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms, or to clarify his rights to future benefits under the terms of the [ERISA] plan." She also sought injunctive and declaratory relief through Count VII, which the Court rejected because McWilliams' ERISA plan did not contemplate such relief. *Freitas*, 2022 WL 16964006, at *12.
[14] *See* Nov. 16, 2022 Order, Doc. 79.
[15] MSJ, Doc. 86.

judgment is required where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case" on an issue that the "party will bear the burden of proof at trial."[16]

Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[17] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[18] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[19]

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[20] When the movant properly supports its motion, the nonmoving party must then show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[21] The United States Court of Appeals for the Third Circuit explains that the nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere

---

[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[17] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[18] *Clark*, 9 F.3d at 326.
[19] *Id*.
[20] *Celotex Corp.*, 477 U.S. at 323.
[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

suspicions."[22] Instead, it must "identify those facts of record which would contradict the facts identified by the movant."[23]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[24] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[25] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[26] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[27]

## III.  ANALYSIS

Both parties appear to agree that the Court's legal analysis in its November 16, 2022, opinion disposes of Count VII as well.[28] However, McWilliams raises several arguments "to ensure a clear record and that her arguments are preserved on appeal."[29] The Court will address those arguments here.

---

[22] *Betts v. New Castle Youth Development Center*, 621 F.3d 249, 252 (3d Cir. 2010).
[23] *Port Authority of N.Y. and N.J. v. Affiliated FM Insurance Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (quoting *Childers v. Joseph*, 842 F.2d 689, 694-95 (3d Cir. 1988)).
[24] *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).
[25] *Razak v. Uber Technologies, Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).
[26] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).
[27] Fed. R. Civ. P. 56(c)(3).
[28] MSJ Br., Doc. 87 at 3-4; Opp. Br., Doc. 88 at 3.
[29] Opp. Br., Doc. 88 at 1.

McWilliams makes two arguments. First, she argues the Court erred by not applying the common-fund doctrine.[30] Second, she argues Defendants violated ERISA by failing to identify the J.M. Smucker Master Health Plan as the basis for their reimbursement demand.[31] The Court disagrees and therefore grants Defendants' motion.

### A. The Common-Fund Doctrine

McWilliams argues that the common-fund doctrine applies differently in cases involving liens as opposed to class action cases, citing to the Supreme Court's opinion in *US Airways v. McCutchen*.[32] She explains that the Court applied the class-action approach to the common-fund doctrine, which allows courts to award fees to attorneys who obtain money on behalf of a class.[33] She argues that, in the lien context, the doctrine instead "involves the insurer having to reduce its lien by the proportionate share of fees/costs the insured incurred."[34] Therefore, "reduction of [Defendants'] lien by the attorney fees Freitas incurred is not a matter of discretion (as is the amount to pay an attorney in the class context), but is instead a matter of equity and matter of law."[35]

---

[30] *Id.* at 3-4.
[31] *Id.* at 4-13.
[32] *Id.* at 4 (citing 569 U.S. 88, 96 n.4 (2013)).
[33] *Id.* (citing *Brytus v. Spang & Co.*, 203 F.3d 238, 243 (3d Cir. 2000) (cited in *Freitas*, 2022 WL 16964006, at *13).
[34] *Id.*.
[35] *Id.* (citing 42 Pa. C.S. 2503(8)).

Preliminarily, McWilliams cannot raise that argument with respect to Count VII. As the *McCutchen* Court noted, the common-fund doctrine is an "equitable doctrine."[36] The *McCutchen* Court then held that equitable rules cannot "override the clear terms of [an ERISA] plan."[37] Here, the J.M. Smucker Master Health Plan explicitly abrogates the common-fund doctrine.[38] Therefore, *McCutchen*—the very decision McWilliams cites to in support—forecloses applying the common-fund doctrine to her ERISA claim.

The Court takes McWilliams' argument as an attempt to relitigate the Court's decision to not apply the common-fund doctrine to former plaintiff Lori Freitas' identical ERISA § 502(a)(1)(B) claim.[39] Freitas was a plaintiff in this matter represented by the same counsel.[40] As counsel is aware, after the Court dismissed all of Freitas' claims, it dismissed her from this matter.[41] Therefore, Freitas' § 502(a)(1)(B) claim is not before the Court on this motion. Accordingly,

---

[36] *McCutchen*, 569 U.S. at 103.
[37] *Id.* at 91.
[38] Smucker Health Plan, Doc. 76-4 at 18 ("The Plan shall not pay and is not responsible for the Claimant's attorneys' fees, court costs, experts' fees, filing fees, or any other costs or expenses of litigation (collectively, 'litigation expenses'). Litigation expenses are to be paid solely by the Claimant. The Claimant shall not deduct any litigation expenses from the amount reimbursed to the Plan; any so-called 'Fund Doctrine' or 'Common Fund Doctrine' or 'Attorney's Fee Doctrine' shall not defeat this right, and the Plan is not required to participate in or pay litigation expenses."). By contrast, the Certificate does not address the common-fund doctrine. McWilliams argues that the J.M. Smucker Master Health Plan is not part of her overall ERISA plan for a variety of reasons the Court previously rejected. *See* Opp. Br., Doc. 88 at 4-13; *Freitas*, 2022 WL 16964006, at *7-9. As explained below, the Court will not reconsider its conclusion that McWilliams' overall ERISA plan includes both the Certificate and the J.M. Master Health Plan.
[39] *See* SAC, Doc. 50 ¶¶ 64-90.
[40] *See id.* at 1.
[41] Nov. 16, 2022 Order, Doc. 79.

McWilliams' attempt to raise arguments relevant to Freitas' claim but not her own is procedurally improper.[42]

Nevertheless, for the sake of completeness, the Court will put aside that procedural flaw and address McWilliams' argument. The Court disagrees with her distinction on how the common-fund doctrine applies in the class-action context as opposed to the lien context. The doctrine is a way to compensate attorneys for recovering money for third parties who did not financially contribute to the attorneys' efforts to litigate the case.[43] That can be accomplished through awarding fees from a class recovery or by reducing a lien on a plaintiff's recovery in favor of a third party who did not financially contribute to obtaining the recovery. Indeed, both *Brytus v. Spang & Co.*, the case the Court relied upon, and *McCutchen* cite to the same line of cases discussing the common-fund doctrine, which has long been part of the American legal tradition.[44]

In either the lien or class-action context, the common-fund doctrine is an equitable tool of interpretation based on principles of unjust enrichment, which itself is an equitable doctrine.[45] Equitable remedies such as these are matters of discretion,

---

[42] The correct vehicle to raise those arguments is a motion to reconsider under either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure.

[43] *See McCutchen*, 569 U.S. at 104 ("This Court has 'recognized consistently' that someone 'who recovers a common fund for the benefit of persons other than himself' is due 'a reasonable attorney's fee from the fund as whole.'" (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980))).

[44] *See id.* (citing *Boeing*, 444 U.S. at 478); *Brytus*, 203 F.3d at 245-46 (citing *Boeing* 444 U.S. at 478-80).

[45] *See McCutchen*, 569 U.S. at 100-01; *Brytus*, 203 F.3d at 245-46 (citing *Boeing* 444 U.S. at 480).

not legal commands, as McWilliams would have it.[46] In its prior opinion, the Court refused to apply the doctrine because Defendants had *already* reduced their lien on Freitas' recovery by twenty-five percent.[47] That appears to be precisely what McWilliams seeks: a "reduction [of GHP's] lien by its share of Plaintiff's counsel's fees."[48] She fails to explain why the twenty-five percent reduction Defendants already agreed to is insufficient to satisfy the common-fund doctrine. Therefore, the Court will not reconsider its prior decision not to apply to the common-fund doctrine to Freitas' ERISA claim.

### B. The Alleged ERISA Violations

McWilliams next renews her argument that the Certificate's terms control this matter as opposed to the combined terms of the Certificate and J.M. Smucker Master Health Plan.[49] She makes two arguments. First, she argues that the express terms of the J.M. Smucker Master Health Plan indicate that the Certificate's terms control

---

[46] *See, e.g.*, *Qwest Commun. Corp. v. Free Conferencing Corp.*, 837 F.3d 889, 899 (8th Cir. 2016) (reviewing a district court's decision to deny unjust enrichment under an abuse-of-discretion standard); *Nordwind v. Rowland*, 584 F.3d 420, 429 (2d Cir. 2009) (same); *In re IDC Clambakes, Inc.*, 852 F.3d 50, 59 (1st Cir. 2017) (same); *PFS Distrib. Co. v. Raduechel*, 574 F.3d 580, 598 (8th Cir. 2009) (same); *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 475 (7th Cir. 2009), *as amended* (Mar. 18, 2009) (same). In support of her contention that the common-fund doctrine legally requires the Court to reduce Defendants' lien, McWilliams cites a Pennsylvania statute on attorneys' fees. Opp. Br., Doc. 88 at 4. It is unclear how that statute applies to her federal ERISA claims.

[47] *See Freitas*, 2022 WL 16964006, at *13 (citing Fedorko Decl., Doc. 58-1 ¶ 3).

[48] Opp. Br., Doc. 88 at 4 ("Here, Plaintiff's common fund claim does not seek an award of fees for Plaintiff's counsel as Plaintiff's counsel sought in *Brytus*, but instead seeks to reduce Geisinger's lien by its share of Plaintiff's counsel's fees.").

[49] *Id.* at 4-14.

this matter.[50] Second, McWilliams argues Defendants violated ERISA because they failed to cite to the J.M. Smucker Master Health Plan when McWilliams asked them to identify the legal basis for their reimbursement demand.[51] As the parties both note, the Court rejected both of these arguments in its prior opinion.

McWilliams' first argument relies on a perceived inconsistency between the J.M. Smucker Master Health Plan and the Certificate: the Certificate only grants Defendants the right to subrogate against third parties, whereas the J.M. Smucker Master Health Plan additionally grants Defendants the right to reimbursement and abrogates the make-whole and common-fund doctrines.[52] The J.M. Smucker Master Health Plan does provide that the Certificate controls when the two are inconsistent.[53] Therefore, McWilliams argues that Defendants may only rely on their third-party subrogation rights identified in the Certificate, precluding them from seeking reimbursement from her first-party personal injury recovery as the J.M. Smucker Master Health Plan would allow.[54]

When a party's rights are expressed in multiple documents—as is the case here—there is no inconsistency when one document grants a party more rights than

---

[50] *Id.* at 4-6.
[51] *Id.* at 6-14.
[52] *Id.* at 7.
[53] Plan, Doc. 76-4 at 2 ("In addition, all Insured Programs benefits are administered by the applicable HMO or insurance company. If there is any inconsistency between the terms of this Plan and the terms of the [Certificate] governing the Insured Programs, the terms of the [Certificate] shall control.").
[54] Opp. Br., Doc. 88 at 5-6.

10

the other. Indeed, such a conclusion would be a novel definition of the term "inconsistency."[55] McWilliams has not identified any authority for defining inconsistency in a manner inconsistent with its normal definition. Therefore, the Court finds no reason to reconsider its prior rejection of her argument.

McWilliams second argument fares no better. She again claims that Defendants' actions violate 29 U.S.C. § 1133(1) and 29 C.F.R. § 2560.503-1(g). Section § 1133(1) requires employee benefit plans like the plan GHP offers to provide adequate written notice to any plan beneficiary "whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." Section 2560.503-1(g) expands upon section 1133, requiring plan administrators to identify the particular plan provision they relied upon when they issue an "adverse benefit determination."

McWilliams does not allege that Defendants denied her claim for benefits or issued an adverse benefit determination. She does allege—and Defendants do not appear to contest—that Defendants paid her claim.[56] As the Court previously explained, it does not appear that seeking reimbursement from an insured is equivalent to denying a claim for benefits or issuing an adverse benefit

---

[55] Normally, an inconsistency between contracts involves some form of incompatibility or a conflict between terms. *See* BLACK'S LAW DICTIONARY, Inconsistent (11th ed. 2019) (defining "inconsistency" as "[a] part of something that is incompatible with another part of the whole thing" or "[a] conflict between two things or different parts of one thing").

[56] SAC, Doc. 50 ¶¶ 23-25.

11

determination, as to trigger section 1133(1) or section 2560.503-1(g).[57] Defendants' right to seek reimbursement from McWilliams has nothing to do with the adequacy of her claim for benefits. Indeed, all of the cases McWilliams relies upon involve an insurance plan denying a claimant benefits.[58] Without saying as much, McWilliams invites the Court to extend those benefit-denial cases to the reimbursement provisions relevant here. The Court declines her invitation. If Congress wished its comprehensive benefit-denial procedures to also apply to reimbursement claims, it would have said so explicitly.

Having addressed all of McWilliams' arguments, the Court concludes that summary judgment is appropriate on Count VII.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion is granted.

An appropriate Order follows.

---

[57] *See Frietas*, 2022 WL 16964006, at *10.

[58] *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) ("[The plaintiffs] brought suit in federal court over the termination of their benefits, and many years of litigation ensued.") (cited in Opp. Br., Doc. 88 at 14); *Mirza v. Insurance Administrator of America*, 800 F.3d 129 (3d Cir. 2015) ("[The defendant] first denied the claim on June 2, 2010, explaining that supporting documentation was missing.") (cited in Opp. Br., Doc. 88 at 12); *Schreibeis v. Ret. Plan for Employees of Duquesne Light Co.*, 2005 WL 3447919, at *5 (W.D. Pa. Dec. 15, 2005) ("The primary issue before me with respect to Count I of [the] [p]laintiff's [c]omplaint is whether the [defendant's] decision to deny [her] benefits was arbitrary and capricious.") (cited in Opp. Br., Doc. 88 at 12); *Skretvedt v. E.I. DuPont de Nemours and Co.*, 268 F.3d 167, 172 (3d Cir. 2001), *abrogated on other grounds by Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) ("[The plaintiff] alleged that [the defendant] . . . violated ERISA by arbitrarily and capriciously denying him disability benefits, by acting in bad faith, and by operating under a conflict of interest.") (cited in Opp. Br., Doc. 88 at 12-13); *U. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 841 (6th Cir. 2000) ("In the ruling now on appeal, the District Court found that the [defendant] did not act arbitrarily or capriciously in denying a claim for health care benefits made by [the plaintiff].") (cited in Opp. Br., Doc. 88 at 13).

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge